**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BERISH BERGER,** | **CIVIL ACTION** |
| **KILBRIDE INVESTMENTS LIMITED,** | |
| **BUSYSTORE LIMITED IN** | |
| **LIQUIDATION,** | |
| **TOWERSTATES LIMITED,** | |
| **BERGFELD CO. LIMITED, and** | **NO.  13-5195** |
| **ARDENLINK LIMITED,** | |
|         **Plaintiffs,** | |
| | |
|      **v.** | |
| | |
| **CUSHMAN & WAKEFIELD OF** | |
| **PENNSYLVANIA, INC.,** | |
| **BLANK ROME LLP, and** | |
| **COZEN O'CONNOR, P.C., ,** | |
|         **Defendants.** | |

**<u>MEMORANDUM</u>**

**DuBois, J.**                                                                    **June 25, 2014**

## I.  INTRODUCTION

This is a fraud case in which Berish Berger ("Berger"), Kilbride Investments Ltd.,

Busystore Limited in Liquidiation, Towerstates Ltd., Bergfeld Co. Ltd., and Ardenlink Ltd.

(collectively, "plaintiffs"), allege that defendants, Cushman & Wakefield of Pennsylvania, Inc.

("C&W"), Blank Rome LLP ("Blank Rome"), and Cozen O'Conner, P.C. ("Cozen"), induced

them into investing at least $27 million in a real-estate development project called "River City,"

in Philadelphia, Pennsylvania, by fraudulently misrepresenting the nature of that project.

Plaintiffs' Amended Complaint alleges one count against defendant C&W — a count for

fraudulent misrepresentation.  Before the Court is C&W's Motion to Dismiss Plaintiffs'

Amended Complaint as to that fraudulent misrepresentation count.  For the reasons that follow,

C&W's Motion is denied.

## II.     BACKGROUND[1]

River City is an 8.2-acre stretch of land along JFK Boulevard that is divided into five parcels.  It was marketed to plaintiffs as a 12-million-square-foot mixed-use development, featuring several 600-foot skyscrapers.  Am. Compl. ¶¶ 1, 21, 40.  In actuality, zoning regulations limited the height of buildings on the property to 125 feet, and permitted only a small fraction of the advertised square footage.  Am. Compl. ¶ 2.

In early 2006, non-party Ravinder Chawla and non-party Richard Zeghibe allegedly developed a plan to purchase and flip the River City site.  Am. Complaint ¶ 22.  In May 2006, Chawla and Zeghibe contracted to purchase River City for $32.5 million through a special purchase entity.  Am. Compl. ¶ 23.  Non-party Charles M. Naselsky, initially a partner at Cozen, and later at Blank Rome, negotiated the contract on behalf of Zeghibe.  Am. Compl. ¶¶ 23, 24.  Later, Chawla executed a "sham" contract with Zeghibe to purchase the same property for $50 million, artificially inflating the property's apparent value.  Am. Compl. ¶ 25.

In September 2006, Zeghibe and Chawla contracted to sell the site to non-party Eli Weinstein for $62.5 million.  Am. Compl. ¶ 27.  Weinstein, Chawla, and other associates then solicited Berger as an investor in River City.  Am. Compl. ¶ 28.  Berger alleges that, as a result of fraudulent misrepresentations regarding zoning restrictions, the proposal's feasibility, and the real estate's valuation, he, and various corporate entities with which he is affiliated, invested at least $27 million in River City from December 2006 to January 2007.  Am. Compl. ¶ 28.

Naselsky commissioned defendant C&W to complete an appraisal of the River City project, which was critical to Berger's decision to invest in the project.  Am. Compl. ¶ 29.  The

---

[1]  These factual allegations are taken from the Amended Complaint.  They are presumed true for the purpose of evaluating C&W's Motion.  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

appraisal was prepared by C&W's state-certified appraisers who had decades of experience and familiarity with the Uniform Standards of Professional Appraisal Practice ("USPAP") — the generally accepted standards for professional appraisal practice in North America.  Am. Compl. ¶ 31.  Plaintiffs contend that C&W's appraisal included false statements and profoundly diverged from USPAP, leading to a grossly inflated valuation of the property.

Specifically, plaintiffs allege that C&W's appraisal contained three fraudulent misrepresentations.  First, plaintiffs allege that the appraisal lists the River City site as not being subject to any height restrictions.  Am. Compl. ¶¶ 75, 152.  In fact, the River City site was subject to a pending zoning ordinance that limited the height of any building on the site to 125 feet.  Am. Compl. ¶¶ 73-79.

Second, plaintiffs allege that the appraisal fraudulently misrepresented that it complied with USPAP, when, in reality, the appraisal violated USPAP in several respects.  Am. Compl. ¶¶ 31, 32.  For instance, C&W's decision to recognize the River City proposal as the "highest and best use" for the property was based on a variety of assumptions, the truth of which C&W failed to investigate in the manner required by USPAP.  Am. Compl. ¶ 58.  Such assumptions included: (1) the assumption that River City would comply with published zoning criteria even though it exceeded the permissible square footage ratio by 25.84%, *see* Am. Compl. ¶ 66, (2) the assumption that the project could achieve the maximum allowable levels of square footage, *see* Am. Compl. ¶¶ 37, 67, 69, (3) the assumption that the load-bearing capacity of the soil was sufficient to support the project, *see* Am. Compl. ¶ 96, (4) the assumption that the project could be built despite the fact that 80-85% of the property is situated on a flood plain, *see* Am. Compl. ¶ 97, and (5) the assumption that the project could be constructed over an existing SEPTA railway, *see* Am. Compl. ¶¶ 98, 104.

Moreover, in order to compensate for their lack of investigation, and in further contravention of USPAP, C&W assumed these facts without identifying them as "extraordinary assumptions" or "hypothetical conditions."[2]  Am. Compl. ¶ 39.

Plaintiffs further claim that C&W violated USPAP when it failed to competently analyze the sales history of the River City site, and, as a result, considered the $50-million "sham" sale in its valuation.[3]  Am. Compl. ¶¶ 42-43.  Had C&W conducted diligent investigation, as required under USPAP, it would have discovered that the owner of the River City site at the time of the "sham" sale was not a party to the $50-million sale contract, and that the last legitimate sale of the site was for only $32.5 million.  Am. Compl. ¶¶ 43, 44.  It is plaintiffs' position that C&W's failure to verify the legitimacy of the $50-million contract contributed to an inflated $77-million valuation of the site.  Am. Compl. ¶¶ 43, 79.

Plaintiffs' third and final alleged misrepresentation is C&W's statement that the River City project was worth $77 million.  That was fraudulent, plaintiffs allege, because C&W made that valuation with reckless disregard as to whether it was supported by sufficient facts.  Am. Compl. ¶¶ 163-64.  In advancing this argument, plaintiffs point to the several violations of USPAP listed above.  Moreover, as further evidence of C&W's recklessness, plaintiffs allege

---

[2] Under USPAP, an "extraordinary assumption" is defined as "an assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. . . . Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal or economic characteristics of the subject property."  Am. Compl. ¶ 35.

A "hypothetical condition" is defined as "that which is contrary to what exists but is supposed for the purpose of analysis. . . . Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property."  Am. Compl. ¶ 36.

The USPAP requires every appraisal to "clearly and conspicuously: state all extraordinary assumptions and hypothetical conditions; and state that their use might have affected the assignment results."  Am. Compl. ¶ 37.

[3] USPAP required C&W to "analyze all agreements of sale, options, or listings of the subject property current as of the effective date of the appraisal."  Am. Compl. ¶ 42.

that C&W prepared an appraisal for the River City parcels in 2004.  In the 2004 appraisal, C&W

concluded that two of the five parcels could not be reliably valued due to SEPTA's air rights.

Am. Compl. ¶ 104.  The 2006 appraisal, however, expressed no such reservations regarding

SEPTA's air rights.  Am. Compl. ¶ 105.  Furthermore, the 2004 appraisal valued the remaining

three parcels at $51 per square foot, or $13.8 million.  Am. Compl. ¶ 52.  In contrast, the 2006

appraisal valued the property at $216 per square foot — an increase of more than 300 percent in

two and a half years.  Am. Compl. ¶¶ 49, 53.  "Comparator properties" that C&W used to

appraise River City's value only appreciated 5% in value over the same time period.  Am.

Compl. ¶ 54.  The 2004 appraisal, unlike the 2006 appraisal, was intended only for its client, and

not for use by investors.  Am. Compl. ¶ 51.  The 2006 appraisal did not mention the 2004

appraisal.  Am. Compl. ¶ 55.  In March 2010, the River City site was sold for $3 million,

approximately 4% of C&W's valuation of the site in 2006-07.  Am. Compl. ¶ 110.

On December 18, 2012, plaintiffs filed suit in the Southern District of New York.

Defendants filed a Motion to Change Venue on January 31, 2013.  On February 25, 2013,

plaintiffs filed an Amended Complaint.  On August 28, 2013, Judge Oetken granted the Motion

to Change Venue and transferred the case to the Eastern District of Pennsylvania.  On September

19, 2013, C&W filed the instant Motion to Dismiss the Amended Complaint.

### III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a

complaint, a defense of "failure to state a claim upon which relief can be granted" may be raised

by motion to dismiss.  To survive a motion to dismiss brought under Rule 12(b)(6), a civil

plaintiff must allege facts that "raise a right to relief above the speculative level."  *Victaulic Co.

v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Because this is a fraud action, plaintiffs must allege "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Conditions of a person's mind, however, such as malice, intent, or knowledge, may be alleged generally.  *Id.*

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

## IV.    DISCUSSION

To state a claim for fraudulent misrepresentation in Pennsylvania,[4] plaintiffs must allege: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  *David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.*, 816 A.2d 1164, 1171 (Pa. Super. Ct. 2003).

C&W makes three arguments in its Motion.  First, C&W argues that its representation that there were no height restrictions on the River City property was true at the time it was made. Second, C&W argues that plaintiffs have not plausibly alleged that it acted with reckless

---

[4] Because this action was transferred from the Southern District of New York to this District, the Court applies New York choice-of-law principles. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (federal courts apply choice-of-law principles of the transferor state following transfer of venue).  The parties agree, and the Court concludes, that, pursuant to New York choice-of-law principles, Pennsylvania law governs this action due to the fact that the locus of the tort is in Philadelphia and that prohibitions on fraud are conduct-regulating. *See* C&W Br. 12-13; Pl.'s Br. 9.

disregard as to the truth of its appraisal.  Finally, C&W argues that plaintiffs have not alleged sufficient facts showing that Berger justifiably relied on the appraisal.  The Court addresses each argument in turn.

### A.    No Misrepresentation as to Height Restriction

The appraisal states that there were no building height restrictions applicable to the River City property.  That was false, plaintiffs argue, pursuant to Pennsylvania's "pending ordinance doctrine."  Under that doctrine, zoning ordinances that are pending before the City Council are treated as law even if they are not yet adopted.  *See Casey v. Zoning Hearing Bd. of Warwick Tp.*, 328 A.2d 464, 467 (Pa. 1974) ("When there has been a 'sufficient public declaration' of an intent to amend the existing zoning ordinance, . . . the pending amendment governs the issuance of such permits." (citing *Lhormer v. Bowen*, 188 A. 2d 747 (Pa. 1963))).  An ordinance is "pending" when the City Council "has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning."  *Id.* (quoting *Boron Oil Co. v. Kimple*, 284 A.2d 744, 747 (Pa. 1971)).

C&W contends that the pending-ordinance doctrine does not apply in this case because, at the time it issued the appraisal,[5] the Philadelphia City Council had not yet advertised its intention to hold public hearings on the ordinance.  Thus, C&W argues, the ordinance was not yet "pending" before the Philadelphia City Council.

---

[5] The parties disagree about the relevant date of the appraisal.  While both parties agree the original appraisal was issued on June 23, 2006, plaintiffs argue that the appraisal's valuation date — August 1, 2006 — is the relevant date for determining the truth of C&W's representations. Furthermore, plaintiffs argue that the appraisal was re-issued on or about November 17, 2006, Pl.'s Br. 14, and again in late February 2007.  Am. Compl. ¶ 87.  This is a non-issue at this stage of the litigation because, as will be discussed, plaintiffs allege that the hearing notice was published on May 10, 2006 — prior to C&W's proffered date of June 23, 2006.

In support of its argument, C&W asks the Court to take judicial notice of two notices published in two different newspapers, dated May 12, 2006 and November 10, 2006.  The May 12, 2006 notice announces that an ordinance "providing for additional height controls in the vicinity of the Benjamin Franklin Parkway" had been reported from a committee; the November 10, 2006 notice announces a public hearing on the bill.  C&W Br. 15-16.  C&W argues that the notices prove that the announcement of a public hearing *did not* occur until November 10, 2006 — after C&W issued the appraisal.

The Court rejects this argument.  As plaintiffs correctly point out, this Court may take judicial notice of the newspaper articles only to show what information *was* in the public realm. *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006).  This Court may not take judicial notice of the articles in order to make an inference about what was *not* in the public realm, which is precisely what C&W asks this Court to do.  Plaintiffs allege that hearing notices for the bill were published on May 10, 2006.  Am. Compl. ¶ 75.  That is sufficient, on a motion to dismiss, to show that a public hearing on the ordinance was in fact advertised on that date.

C&W next contends that, even if the regulation were subject to the pending-ordinance doctrine, the ordinance did not cover the River City site because, at the time of the appraisal, the proposed ordinance applied only to "the vicinity of the Benjamin Franklin Parkway."  C&W Br. 15.  In support, C&W again offers a notice from a newspaper as evidence of the scope of the proposed bill.  As before, C&W asks this Court to make improper inferences from material outside the Amended Complaint.  The Court may not, on the basis of the article, infer the content

of the actual bill, or, as C&W wishes, infer the meaning of the bill's language.[6]  *PG Pub. Co. v. Aichele*, 902 F. Supp. 2d 724, 735 (W.D. Pa. 2012) ("There is an obvious difference between accepting the *fact* of an article's existence and accepting the *truth* of the statements contained therein."), *aff'd*, 705 F.3d 91 (3d Cir.), *cert. denied*, 133 S. Ct. 2771 (2013).  Accordingly, the Court reject's C&W's argument on this issue.

**B.    Recklessness**

C&W argues that disclaimers in the appraisal show that C&W's representations were not made in reckless disregard for the truth.  To support this contention, C&W attached as an exhibit a copy of what it represents to be the appraisal that plaintiffs considered when investing in the River City project.  The Court concludes that it cannot consider C&W's exhibit.  Furthermore, even if C&W's exhibit were considered, the Court is of the opinion that plaintiffs have stated a claim upon which relief may be granted.

**1.    Consideration of Defendant's Exhibit**

When ruling on a motion to dismiss, a court may consider — without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment—*undisputedly authentic* documents essential to a plaintiff's complaint that are attached to a defendant's motion.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) (emphasis added).

---

[6] Furthermore, the Court notes that the description of the proposed bill does not undermine plaintiffs' allegations: there is nothing implausible about the River City site being considered "in the vicinity of Benjamin Franklin Parkway."  In fact, C&W's own briefing illustrates the plausibility of this contention.  Specifically, C&W's Memorandum in Support of its Motion states that the proposed restriction was later amended to include the River City site.  C&W Br. 16; *see also* Am. Compl. ¶ 76.  Whether this was an amendment to extend the proposed restriction or to clarify the bill's originally contemplated scope matters little at this juncture.  The question itself underscores the plausibility of plaintiffs' contention that the River City site was subject to the proposed bill under the pending ordinance doctrine.

In this case, however, the appraisal is not undisputedly authentic.  Plaintiffs argue that the version of the appraisal submitted by C&W is not the same version they received prior to investing in the project.  In support, they cite the fact that defendants' version is "addressed to Mr. Naselsky at *Blank Rome*, and contrary to C&W's assertion, it could not have been issued on June 23, 2006 because Mr. Naselsky was a member at *Cozen* until July 28, 2006."  Pl.'s Br. 5 n.4.  This is sufficient to place the document outside the category of "undisputedly authentic." *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("'Undisputed' in this context means that the authenticity of the document is not challenged."); *Stanford v. Foamex L.P.*, No. 07-cv-4225, 2008 WL 3874823, at *3 (E.D. Pa. Aug. 20, 2008) (same).  Accordingly, although the 2006 appraisal is essential to plaintiffs' claims, C&W's exhibit may not be considered in deciding the Motion to Dismiss because its authenticity is in dispute.

**2.   C&W's Disclosures Do Not Undermine Plaintiffs' Allegations**

Even if the Court were to consider the appraisal attached to the Motion to Dismiss, it does not warrant dismissal of the Amended Complaint.  Evaluating recklessness requires an inquiry into the defendant's state of mind — a quintessential question of fact.  Accordingly, Federal Rule of Civil Procedure 9(b) requires only that a defendant's state of mind be alleged generally, in accord with the general pleading standard in Rule 8.  *Iqbal*, 566 U.S. at 686 ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.").  Thus, the Amended Complaint need only allege facts sufficient to raise a plausible inference of recklessness when viewed in the light most favorable to plaintiffs.

The Court concludes that plaintiffs have sufficiently alleged that C&W acted with reckless disregard for the truth of its: (1) $77 million valuation, (2) statement that River City was

not subject to building-height restrictions, and (3) USPAP certification.  According to the Amended Complaint, C&W used inconspicuous disclaimers that were contrary to USPAP in order to assume critical facts about the project's feasibility, such as the load-bearing capacity of the soil, the ability to build in a flood plain, the ability to build over an existing SEPTA railway, and the ability to achieve maximum allowable levels of square footage.  Plaintiffs allege blatant oversights, such as the failure to notice that the $50 million sale of the River City property did not include the then-owner of the property as a party to the deal.  Plaintiffs further claim that when C&W valued the property for its client in 2004, it refused to price two of the parcels due to an active SEPTA rail line, determining that the "speculative nature of the timing and cost of developing these sites," rendered its valuation impossible.  Am. Compl. ¶ 104.  Just two years later, in valuing the property for investors, C&W priced the parcels notwithstanding the SEPTA rail line.  Finally, plaintiffs contend that C&W stated that there were no building-height restrictions on the property at a time when the Philadelphia City Council had already announced a hearing on a bill enacting such restrictions.  These alleged facts, if proven, are sufficient to show reckless disregard on behalf of C&W.

C&W makes two arguments in response, neither of which is meritorious.  First, C&W argues that plaintiffs were on notice of C&W's assumptions because they were stated in disclaimers in the 2006 appraisal.  Specifically, C&W contends that the following disclaimers immunize it from any inference of recklessness:

> This Report assumes . . . (b) there are no hidden or unapparent conditions of the Property, subsoil or structures that render the Property more or less valuable . . . (c) full compliance with all applicable federal, state, and local zoning and environmental regulations and laws[.]
>
> . . .

> The "Value As Is" opinion is an opinion as of the effective date of the appraisal . . . [which] excludes all assumptions concerning . . . possible rezoning.
>
> . . .
>
> We did not review a soil report.  However, we assume that the load-bearing capacity of the soil is sufficient to support the existing structures as envisioned.

C&W Br. 7-8; C&W Reply 8-9; 2006 Appraisal 111-113.

C&W's reliance on the above assumptions is unavailing for several reasons.  First, none of C&W's assumptions are listed as hypothetical conditions or extraordinary assumptions, which plaintiffs have adequately alleged USPAP required.  Am. Compl. ¶¶ 35-37.  Thus, the assumptions do nothing to lessen the recklessness of C&W's certification that its appraisal complied with USPAP.  Second, the appraisal assumes full compliance with zoning laws yet elsewhere affirmatively represents that the project was not subject to any height restrictions.  2006 Appraisal 92 (ECF No. 5).  The Court is unpersuaded by C&W's argument that it can make representations in one part of the appraisal but then disclaim liability by stating that it is assuming that representation is correct in another part.  Third, C&W's disclaimers do not address the site's location in a flood plain or over an operating railway.  The assumption in the appraisal applies only to "hidden or unapparent conditions of the Property, subsoil, or structures that render the Property more or less valuable."  2006 Appraisal 29.  Thus, C&W has failed to show that the appraisal disclaimed all of the alleged deficiencies raised by plaintiffs.

Likewise, the Court rejects C&W's next argument that, even if the disclaimers departed from USPAP standards, such violations are insufficient to plead recklessness as a matter of law because violating professional standards does not constitute recklessness.  While the Court agrees with C&W's axiomatic statement that "professional negligence is not an allegation of fraud," C&W Reply 9, in this case plaintiffs allege facts supporting more than mere negligent

violations of professional standards.  As discussed previously, plaintiffs allege that, in 2004, when C&W completed an appraisal of the River City property for use by its *client*, C&W refused to assume compliance with zoning laws, instead concluding that it could not reliably value two parcels of the property due to SEPTA's air rights.  Yet when C&W appraised the same property in 2006 for use by its client's *investors*, it was willing to assume away the problem of SEPTA's air rights.  Furthermore, plaintiffs allege that C&W stated there were no applicable building height restrictions at one point in the appraisal, but some 20 pages later stated that it assumed full compliance with zoning regulations.  2006 Appraisal 92, 112.  Finally, plaintiffs allege that this appraisal was completed by experienced appraisers, with familiarity with USPAP, who certified compliance with USPAP.  Am. Compl. ¶ 31.  These allegations, in addition to those previously mentioned, support an inference of more than mere negligent violations of professional standards; they support the conclusion that C&W acted "knowingly, or in conscious ignorance of the truth, or recklessly without caring whether [its representations were] true or false." *Delahanty v. First Pa. Bank*, 464 A. 2d 1243, 1252 (1983).

### C.     Plaintiffs Sufficiently Plead Justifiable Reliance[7]

C&W argues that plaintiffs did not justifiably rely on the appraisal because (1) plaintiffs failed to investigate the River City proposal despite their duty as sophisticated investors to do so; and (2) the appraisal's disclaimers put plaintiffs on notice that further investigation was warranted.

These arguments of C&W also fail.  Plaintiffs were not under a duty to investigate. Generally speaking, under Pennsylvania law, "the recipient of an allegedly fraudulent

---

[7] Defendant's justifiable reliance argument is based on the appraisal attached to defendant's Motion.  The discussion in this section assumes *arguendo* that the exhibit is properly before the Court.

misrepresentation is under no duty to investigate its falsity in order to justifiably rely." *Toy v. Merto. Life. Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007).  However, a party is unjustified in relying on a misrepresentation if it "knows [the representation is] false or if its falsity is obvious." *Id.* C&W relies on *Binns v. Copper Range Co.*, 6 A. 2d 895, 898 (Pa. 1939), for the proposition that parties with an equal opportunity to ascertain facts affecting the value of the thing to be sold have a duty to independently investigate.  In *Binns*, the defendant business owner offered to purchase stock in a corporation from the plaintiff for $10 per share.  When the plaintiff attempted to negotiate, the defendant refused to increase his offer, stating that he did not believe the stock was worth more than $10 per share.  *Id.* at 897.  Plaintiff sold the stock for $10 a share, and thereafter learned the stock was worth $76.40 per share.  *Id.* at 896.  The Court concluded that the defendants offer was "trade talk" — a "mere assertion of value" that amounted to a "matter of opinion" with "no warranty [] intended."  *Id.* at 898-99.  Accordingly, the *Binns* Court ruled that the plaintiff was not justified in relying on the defendant's statement of value.

*Binns* is inapposite for several reasons.  First, it addresses "mere assertions of value"— not comprehensive appraisals.  *Id.* at 266.  Second, *Binns* involved statements made by one party of a transaction to another party of a transaction.  In this case, C&W was hired for the purpose of providing an independent valuation of the project.  Finally, C&W's representations regarding height restrictions and USPAP compliance were factual assertions, not opinions.  *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 769 (S.D.N.Y. 2012) ("[T]he conclusion that a house is worth $500,000 may be a statement of subjective opinion, but the assurance that the $500,000 figure was reached in accordance with a body of professional appraisal standards is a statement of verifiable fact.").  *Binns*, therefore, is inapposite.

The Court also rejects C&W's argument that its broad disclaimers in the appraisal put plaintiffs on notice that further investigation was required.  As previously stated, plaintiffs were under no duty to investigate.  While a party is unjustified in its reliance if it "knows [the representation is] false or if its falsity is obvious," the Court cannot conclude, on the present state of the record, that plaintiffs knew C&W's representations were false or that their falsity was obvious.  Accordingly, plaintiffs have alleged justifiable reliance on the appraisal.

## V.      CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is denied.  An appropriate order follows.