## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BERISH BERGER,**<br>**KILBRIDE INVESTMENTS LIMITED,**<br>**BUSYSTORE LIMITED IN**<br>**LIQUIDATION,**<br>**TOWERSTATES LIMITED,**<br>**BERGFELD CO. LIMITED, and**<br>**ARDENLINK LIMITED,**<br>    Plaintiffs,<br><br>            v.<br><br>**CUSHMAN & WAKEFIELD OF**<br>**PENNSYLVANIA, INC.,**<br>**BLANK ROME LLP, and**<br>**COZEN O'CONNOR, P.C.,**<br>    Defendants,<br><br>        and<br><br>**CUSHMAN & WAKEFIELD OF**<br>**PENNSYLVANIA, INC.,**<br>    Third Party Plaintiff,<br><br>            v.<br><br>**CHAIM ZEV LEIFER,**<br>**HASKEL KISH and**<br>**JFK BLVD. ACQUISITION G.P., LLC,**<br>    Third Party Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  13-5195 |

**M E M O R A N D U M**

**DuBois, J.**                                                                                                    **March 10, 2016**

### I.    INTRODUCTION

This is a fraud case in which plaintiffs Berish Berger, Kilbride Investments Ltd.,

Busystore Limited in Liquidation, Towerstates Ltd., Bergfeld Co. Ltd., and Ardenlink Ltd.,

allege that defendants, Cushman & Wakefield of Pennsylvania, Inc. ("C&W"), Blank Rome LLP

("Blank Rome"), and Cozen O'Conner, P.C. ("Cozen"), induced them to invest at least $27

million in a real-estate development project called "River City," in Philadelphia, Pennsylvania, by fraudulently misrepresenting the nature of that project. Plaintiffs' Amended Complaint asserts one claim against defendant C&W for fraudulent misrepresentation. C&W filed a Third-Party Complaint in which it asserts one claim against third-party defendants Chaim Zev Leifer and Heskel Kish for contribution, and one claim against third-party defendant JFK Blvd. Acquisition G.P., LLC ("JFK") for contractual indemnification. Presently before the Court is JFK's Motion to Dismiss the Third-Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court denies the Motion.

## II. BACKGROUND[1]

River City is an 8.2-acre stretch of land along JFK Boulevard that is divided into five parcels. It was marketed to plaintiffs as a 12-million-square-foot mixed-use development project, featuring several 600-foot skyscrapers. In actuality, zoning regulations limited the height of buildings on the property to 125 feet, and permitted only a small fraction of the advertised square footage to be constructed.

In early 2006, non-parties Ravinder Chawla and Richard Zeghibe allegedly developed a plan to purchase and "flip"—or quickly re-sell—the River City site. In May 2006, Chawla and Zeghibe contracted to purchase River City for $32.5 million through a special purchase entity, third-party defendant JFK. Non-party Charles M. Naselsky, initially a partner at Cozen, and later at Blank Rome, negotiated the contract on behalf of Zeghibe. Later, Chawla executed a contract

---

[1] These factual allegations are taken from the Amended Complaint and Third-Party Complaint. They are presumed true for the purpose of evaluating JFK's Motion. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). For more detail on plaintiffs' claims, see the Memorandum and Order dated June 26, 2014 denying C&W's Motion to Dismiss Plaintiffs' Amended Complaint, *Berger, et al. v. Cushman & Wakefield of Pennsylvania, Inc., et al.*, Civil Action No. 13-5195, 2014 WL 2892408 (E.D. Pa. June 26, 2014).

with Zeghibe to purchase the same property for $50 million, thereby artificially inflating the property's apparent value.

Naselsky commissioned defendant and third-party plaintiff C&W to complete an appraisal of the River City project on behalf of his client, JFK, and memorialized this agreement in two documents: the Terms of Engagement and the Conditions of Engagement (together, the "Engagement Letter").  Pursuant to the terms of the Engagement Letter, JFK agreed not to provide "a copy of the appraisal, or permit reliance thereon by, any person or entity not authorized by C&W in writing to use or rely thereon," and agreed to "indemnify and hold C&W. . . harmless from and against all damages, expenses, claims and costs, including attorney's fees, incurred in investigating and defending any claim arising from or in any way connected to the use of, or reliance upon, the appraisal by any such unauthorized person or entity."  The appraisal was completed on or about June 23, 2006, and valued the River City site at $77 million.

JFK, through Zeghibe and Chawla, then forwarded the appraisal to third-party defendants Leifer and Kish and non-party Eli Weinstein.  In September 2006, Zeghibe and Chawla contracted to sell the site to Weinstein for $62.5 million.

Leifer, Kish, and Weinstein then solicited plaintiff Berger as an investor in River City, and provided Berger with a copy of the C&W appraisal.  From December 2006 to January 2007, Berger invested approximately $27 million in River City.  Berger alleges that misrepresentations made by Leifer and Kish and misrepresentations in C&W's appraisal concerning zoning restrictions, the feasibility of the project, and the real estate's valuation, were critical to his decision to invest in River City.

On April 15, 2015, C&W filed a Motion for Leave to File a Third-Party Complaint against Leifer, Kish, and JFK. By Order dated June 18, 2015, the Court granted C&W's Motion. The Third-Party Complaint asserts a claim for contractual indemnification against JFK under the terms of the Engagement Letter. On September 30, 2015, JFK filed its Motion to Dismiss the Third-Party Complaint.

### III. LEGAL STANDARD

JFK argues that C&W's claim is not ripe pursuant to Federal Rule of Civil Procedure 12(b)(1) and that the Third-Party Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6).

"In evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts." *McCurdy v. Esmonde*, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003). "A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations." *Id.* (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1990)). In contrast, an "in fact" challenge under Rule 12(b)(1) disputes "the existence of certain jurisdictional facts alleged by the plaintiffs." *Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

"A challenge to the ripeness of an action for adjudication is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction." *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)). Because a ripeness challenge is a facial attack, *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 n.7 (3d Cir. 1993), "the court may rely on documents referenced in the complaint and attached thereto, but must

view them in the light most favorable to the nonmoving party." *Sharawneh v. Gonzales*, No. 07 Civ. 683, 2007 WL 2684250, at *1 (E.D. Pa. Sept. 10, 2007) (DuBois, J.) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents, if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Documents referenced in the complaint must also be considered where a plaintiff's claims are based on such documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002).

## IV. DISCUSSION

JFK argues that C&W's contractual indemnification claim should be dismissed for three reasons: (1) C&W's claim is not ripe because it will not accrue until C&W makes a payment on plaintiffs' underlying claims; (2) C&W is legally barred from seeking indemnification for its own allegedly fraudulent or negligent conduct; and (3) JFK's duty to indemnify C&W was not triggered because JFK did not breach the Engagement Letter. The Court rejects these arguments.

### A. Ripeness of C&W's Contractual Indemnification Claim

JFK argues that C&W's contractual indemnification claim is not ripe under Pennsylvania law and therefore must be dismissed. Specifically, JFK relies on *Invensys Inc. v. Am. Mfg. Corp.*, No. 04 Civ. 3744, 2005 WL 600297, at *3 (E.D. Pa. March 15, 2005), in which the court dismissed a first-party plaintiff's breach of contract claim in part on the ground that the first-party defendant's duty to indemnify had not yet arisen and thus the claim was premature. *Id.* (explaining that claims for contractual indemnification under Pennsylvania law "arise only when the party seeking indemnity has made a payment on the underlying claim"). C&W responds that the ripeness of first-party indemnification claims under state law is no obstacle to Federal Rule of Civil Procedure Rule 14, which permits a defendant to implead a third-party "who is or *may be* liable to [the defendant] for all or part of the claim against it." Fed. R. Civ. P. 14(a) (emphasis added). The Court agrees with C&W that the ripeness doctrine does not bar its third-party claim.

JFK's argument fails for two reasons. First, the ripeness doctrine is "a federal issue to be determined only by federal law" because it is derived from Article III's "basic justiciability requirement that each case decided by the federal courts be a 'case or controversy.'" *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 350, 352 (3d Cir. 1986). Second, JFK's reliance on

*Invensys* is misplaced because that case concerned a first-party indemnification claim to which Federal Rule of Civil Procedure 14 is inapplicable.

The purpose of Rule 14 is "to promote judicial efficiency" by "avoid[ing] the situation that arises when a defendant has been held liable to plaintiff and then finds it necessary to bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1442 (3d ed. 2010); *see also Punch v. Dollar Tree Stores, Inc.*, No. 12 Civ. 154, 2014 WL 7157331, at *5 (W.D. Pa. Dec. 15, 2014). A claim asserted in a Rule 14 third-party complaint must be one of secondary or derivative liability. *Tulpehocken Spring Water, Inc. v. Obrist Americas, Inc.*, No. 09 Civ. 2189, 2010 WL 5093101, at *3-5 (M.D. Pa. Dec. 8, 2010) (explaining that indemnification and contribution are secondary liability claims).

While JFK is correct that indemnification claims under Pennsylvania law do not accrue until the indemnitee has been found liable or made a payment, *Invensys*, 2005 WL 600297, at *3, Rule 14 "allows for the assertion of third party claims or counterclaims that might be too contingent to stand on their own." *Mills v. Hausmann-McNally, S.C.*, No. 13 Civ. 44, 2014 WL 129276, at *4-5 (S.D. Ind. Jan. 14, 2014). "The very nature of third-party practice subjects it to contingencies. . . . Refusing to allow a third-party plaintiff to join a third-party defendant who may be liable to him would wholly obviate the purposes of third party practice, resulting in [] multiple successor indemnity actions that fly in the face of judicial efficiency and the goals of Rule 14." *State College Area Sch. Dist. v. Royal Bank of Can.*, 825 F. Supp. 2d 573, 583 (M.D. Pa. 2011). For this reason, many federal courts have denied motions to dismiss third-party indemnification claims based on the same ripeness argument asserted by JFK. *See, e.g., Punch*, 2014 WL 7157331, at *5 (denying motion to dismiss third-party indemnification claim on

ripeness grounds because it "would defeat the underlying purpose of Rule 14"); *State College Area Sch. Dist.*, 825 F. Supp. 2d at 583 (same); *Tulpehocken*, 2010 WL 5093101, at *3-5 (denying motion to dismiss third-party indemnification claim because it was properly pled under Rule 14).  JFK has failed to cite any contrary authority involving third-party claims under Rule 14.

The fact that C&W's liability to the Berger plaintiffs has not yet been determined conclusively does not prohibit C&W from impleading JFK under Rule 14.  Accordingly, the Court denies JFK's Motion to Dismiss the Third-Party Complaint based on JFK's ripeness argument.

   **B.**  **Enforceability of Indemnification Clause**

JFK next argues that the Third-Party Complaint should be dismissed because an indemnitee cannot recover from an indemnitor losses caused by its own negligence unless the applicable indemnification provision explicitly provides for indemnification against the indemnitee's negligence.  Specifically, JFK argues that C&W seeks indemnification for the consequences of negligently preparing the appraisal, which is barred under Pennsylvania law.  JFK appears to be relying on the so-called "*Perry-Ruzzi* rule," which provides that if a party seeks to indemnify itself against its own negligence, the language of the indemnification provision must be clear and unequivocal to that effect.  *See Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1 (Pa. 1991); *Perry v. Payne*, 66 A. 553 (Pa. 1907).  C&W responds that the *Perry-Ruzzi* rule does not apply before the indemnitee's liability has been adjudicated, including at the pleading stage.  The Court agrees with C&W and denies JFK's Motion to Dismiss the Third-Party Complaint on this ground.

C&W correctly relies on *Mace v. Atlantic Refining Marketing Corp.*, 785A.2d 491 (Pa. 2001), in which the Supreme Court of Pennsylvania held that the *Perry-Ruzzi* rule did not prevent a party, who was adjudicated non-negligent by a jury in the first-party action, from seeking indemnification for the attorneys' fees and costs incurred in successfully defending itself. *Id.* at 495-96. The court specifically rejected the indemnitor's argument that the *Perry-Ruzzi* rule should bar any indemnitee charged with negligence from asserting a claim, reasoning that such an interpretation would "unfairly preclude innocent indemnitees from obtaining indemnification under standard indemnity language. . . . In effect, expanding the *Perry-Ruzzi* rule to encompass situations where a party is merely alleged to have been negligent would render indemnification meaningless, as even a completely frivolous negligence action filed against an indemnitee would automatically eradicate an otherwise valid indemnification provision." *Id.* at 496.

In light of the Supreme Court of Pennsylvania's opinion in *Mace*, the Court concludes it is premature to apply the *Perry-Ruzzi* rule at the pleading stage, before the indemnitee's alleged negligence has been resolved by a trier of fact. *See also Great Atlantic & Pacific Tea Co. v. Adelco Sales & Serv., Inc.*, No. 94 Civ. 2828, 1994 WL 702873, at *4 (E.D. Pa. Dec. 12, 1994) (concluding that the *Perry-Ruzzi* rule could not be applied until after indemnitee's alleged underlying negligence was adjudicated). The mere allegation that C&W acted negligently does not require dismissal of C&W's claim for indemnification under the *Perry-Ruzzi* rule. *See Mace*, 785A.2d at 496.

Indeed, this case could be resolved in the same manner as *Mace*, in which the indemnitee was adjudicated non-negligent and permitted to recover attorneys' fees and costs. The indemnification provision in the Engagement Letter provides, in relevant part:

9

> In the event the Client [JFK] provides a copy of this appraisal to, or permits reliance thereon by, any person or entity not authorized by C&W in writing to use or rely thereon, Client [JFK] hereby agrees to indemnify and hold C&W. . . harmless from and against all. . . *expenses, claims and costs, including attorney's fees, incurred in investigating and defending any claim arising from or in any way connected to the use of, or reliance upon, the appraisal by any such unauthorized person or entity.*

(emphasis added). If the factfinder in this case ultimately determines that C&W did not negligently prepare the appraisal, and if JFK is found to have provided the appraisal to unauthorized persons, the indemnification provision in the Engagement Letter would permit C&W to recover from JFK attorneys' fees and costs incurred in defending the action. Therefore, dismissal of C&W's contractual indemnification claim at this stage would be premature.

Accordingly, the Court denies JFK's Motion to dismiss the Third-Party Complaint on this ground, without prejudice to JFK's right to raise the same argument by motion for summary judgment and/or trial. *See Greer v. City of Philadelphia*, 568 Pa. 244, 249-250 (2002) (concluding, after a jury trial in the first-party action, that the indemnitee's claim was barred by the *Perry-Ruzzi* rule because the indemnification provision did not explicitly include damages due to the indemnitee's negligence).

### C. JFK's Alleged Breach

JFK finally argues that C&W's claim for contractual indemnification must be dismissed because JFK did not breach the Engagement Letter. Specifically, JFK relies on a section of the Engagement Letter that provides:

> The appraisal will be prepared for JFK ACQUISITION GP, LLP and is intended only for its specified use. Client [JFK], together with its professionals, investors and potential lenders may consider the appraisal without further permission. It may not be distributed to or relied upon by other persons or entities without written permission of [C&W].

According to JFK, this provision permitted JFK to share the appraisal with Leifer, Kish, and Weinstein because those individuals—and, by extension, the Berger plaintiffs in the first-party

10

action—were JFK's investors.  Therefore, JFK argues that it did not distribute the appraisal to "any person or entity not authorized by C&W in writing to use or rely thereon," and thus its duty to indemnify C&W was not triggered.  C&W contends to the contrary that Berger was not a JFK investor and that the Third-Party Complaint alleges facts that, taken as true, establish that JFK shared the appraisal with unauthorized persons.  The Court rejects JFK's argument because the Third-Party Complaint adequately alleges that JFK breached the terms of the Engagement Letter under which JFK was prohibited from sharing the appraisal with unauthorized persons.

"Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d at 215-16.  In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 176 (3d Cir. 2015).  For example, whether one party's actions constitute a breach of a contract is a question of fact that typically cannot be resolved on a motion to dismiss.  *See Hopkins v. GNC Franchising, Inc.*, 288 F. App'x 871, 874 (3d Cir. 2008); *Graboff v. The Collern Firm*, No. 10 Civ. 1710, 2010 WL 4456923, at *4 (E.D. Pa. Nov. 8, 2010).

First, the Third-Party Complaint states facts that, if true, establish that JFK shared the appraisal with unauthorized persons and thus triggered its obligation to indemnify C&W under the Engagement Letter.  Specifically, the Third-Party Complaint alleges that Weinstein was "a potential counterparty to" JFK's "flip" or re-sale of River City, Third Party Compl. at ¶ 14, and that JFK provided the appraisal to Weinstein, Leifer, and Kish, who were "unauthorized users," *id.* at ¶ 34.  The Third-Party Complaint also avers that these unauthorized users "provided a copy

11

[of the appraisal] to Berger, who was also not authorized to use or rely on the appraisal," *id.*, because he was also a counterparty to the "sale" of River City from JFK, *id.* at ¶ 22. Berger "now claims to have relied" on the copy of the appraisal that he received from Weinstein, Leifer, and Kish, "to his and the other plaintiffs' detriment." *Id.* at ¶ 34. The Third-Party Complaint finally states that "[b]y distributing the appraisal, JFK GP breached the Conditions of Engagement and must contractually indemnify C&W for its losses related to this lawsuit as set forth in the" Engagement Letter. *Id.* at ¶ 35. These allegations adequately aver that JFK breached the Engagement Letter, which triggered its duty to indemnify C&W for Berger's claims.

JFK's argument that Weinstein, Leifer, Kish, and ultimately Berger, were intended to be considered "investors" under the Engagement Letter does not present an issue of law which can be decided in ruling on a motion to dismiss. To the contrary, the argument is merely a means of disputing the facts alleged in the Third-Party Complaint.[2] Whether JFK's sharing of the appraisal constituted a breach of the Engagement Letter is question of fact. These disputes are not appropriate for disposition by a motion to dismiss. *See Flora*, 776 F.3d at 176. Accordingly, the Court denies JFK's Motion to Dismiss the Third-Party Complaint on these grounds, without prejudice to JFK's right to raise the argument that it did not breach the Engagement Letter by motion for summary judgment and/or at trial.

---

[2] JFK attached a Nominee Agreement between it and Weinstein as an exhibit to its Motion, and relies on the Agreement to establish that Weinstein was its "investor." The Agreement was Chawla and Zeghibe's means of "flipping" River City to Weinstein. The Agreement provides that JFK Blvd. Acquisition Partners, L.P. (in which JFK is the general partner) will take ownership of River City as Weinstein's agent, and that ownership of JFK and JFK Blvd. Acquisition Partners, L.P. will be transferred to Weinstein after he fulfills certain obligations. C&W argues that the Nominee Agreement made Weinstein a counterparty to a transaction with JFK, not an investor. The Court concludes that the Agreement cannot be considered in ruling upon JFK's Motion to Dismiss because the Agreement is not the basis for C&W's claims. *See Pension Benefit*, 998 F.2d at 1196 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss *if the plaintiff's claims are based on the document*." (emphasis added)).

## V. CONCLUSION

For the foregoing reasons, JFK's Motion to Dismiss the Third-Party Complaint is denied.

An appropriate order follows.