# EXHIBIT 11

CHARLES M. NASELSKY

Page 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
- - -

| | |
|---|---|
| BERISH BERGER, : | CIVIL ACTION NO. |
| KILBRIDE INVESTMENTS : | 2:13-CV-05195-JD |
| LIMITED, BUSYSTORE : | |
| LIMITED IN : | |
| LIQUIDATION, : | |
| TOWERSTATES LIMITED, : | |
| BERGFELD CO. LIMITED : | |
| and ARDENLINK : | |
| LIMITED : | |
| : | |
| vs. : | |
| : | |
| CUSHMAN & WAKEFIELD : | |
| OF PENNSYLVANIA, : | |
| INC., BLANK ROME LLP : | |
| and COZEN O'CONNOR, : | |
| P.C. : | |
| : | |
| vs. : | |
| : | |
| CHAIM ZEV LEIFER, : | |
| CHESKY FIESKEL KISH, : | |
| and JFK BLVD : | |
| ACQUISITION GP, LLC : | |

- - -
WEDNESDAY, JULY 27, 2016
- - -

VIDEOTAPE DEPOSITION OF
CHARLES M. NASELSKY, taken pursuant to
notice, was held at the law offices of Blank
Rome LLP, The Chrysler Building, 405
Lexington Avenue, New York, NY 10174,
commencing at 9:58 a.m., before Kimberly S.
Gordon, a Registered Professional Reporter,
Certified Court Reporter and Notary Public.


- - -
ELITE LITIGATION SOLUTIONS, LLC
1518 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19102
www.elitelsllc.com ~ (215) 563-3703

CHARLES M. NASELSKY

Page 2

```
 1   APPEARANCES:

 2

 3          BROWN MCGARRY NIMEROFF LLC
            BY:  MARY KAY BROWN, ESQUIRE
 4               RAYMOND MCGARRY, ESQUIRE
            Two Commerce Square
 5          2001 Market Street, Suite 3420
            Philadelphia, Pennsylvania 19103
 6          267.861.5331
            mkbrown@bmnlawyers.com
 7          rmcgarry@bmnlawyers.com
            Representing the Plaintiffs

 8

 9          DLA PIPER LLP
            BY:  JAYNE RISK, ESQUIRE
10               NATHAN HELLER, ESQUIRE
            One Liberty Place, Suite 4900
11          1650 Market Street
            Philadelphia, Pennsylvania 19103
12          215.656.3328
            215.656.3372
13          jayne.risk@dlapiper.com
            nathan.heller@dlapiper.com
14          Representing the Defendant,
            Cushman & Wakefield
15          of Pennsylvania, Inc.

16

            HARKINS CUNNINGHAM LLP
17          BY:  DAWN M. SIGYARTO, ESQUIRE
                 JOHN G. HARKINS, JR., ESQUIRE
18          4000 Two Commerce Square
            2001 Market Street
19          Philadelphia, Pennsylvania 19103
            215.851.6708
20          dsigyarto@harkinscunningham.com
            jharkins@harkinscunningham.com
21          Representing the Defendant,
            Blank Rome LLP

22

23

24
```

ELITE LITIGATION SOLUTIONS, LLC

CHARLES M. NASELSKY

Page 3

```
 1    APPEARANCES (continued):

 2

 3            KLEHR HARRISON HARVEY BRANZBURG LLP
              BY:  WILLIAM A. HARVEY, ESQUIRE
 4            1835 Market Street
              Philadelphia, Pennsylvania 19103
 5            215.569.3003
              wharvey@klehr.com
 6            Representing the Defendant,
              Cozen O'Connor, P.C.
 7

 8            LAW OFFICES OF ANDREW TEITELMAN P.C.
              BY:  ANDREW TEITELMAN, ESQUIRE
 9            380 Red Lion Road, Suite 103
              Huntingdon Valley, PA 19006
10            267.255.6864
              ateitelman@teitelaw.com
11            Representing the Defendant,
              JFK BLVD Acquisition GP, LLC
12

13            WELSH & RECKER P.C.
              BY:  ROBERT E. WELSH, ESQUIRE
14            2000 Market Street, Suite 2903
              Philadelphia, Pennsylvania 19103
15            215.972.6430
              rewelsh@welshrecker.com
16            Representing the Witness

17

              ALSO PRESENT:
18            H. ROBERT FIEBACH, ESQUIRE
              JEREMY A. RIST, ESQUIRE
19            SCOTT PERLOFF, VIDEOGRAPHER

20

21

22

23

24
```

CHARLES M. NASELSKY

Page 62

1    Q.    113 and 114.

2    A.    Okay.

3    Q.    That's it.

4    A.    All right, 113.  Okay, 113 is another

5    draft of the agreement.  No handwriting, but

6    it's blacklined.

7          114, okay, 114 is a, it's -- it looks

8    like it's a clean version with markup.  I

9    don't know -- I don't think it's mine.  This

10   writing is not mine.

11   Q.    Okay.

12   A.    There's writing here that's not my

13   handwriting.  This is not my handwriting.

14   Q.    Fair enough.

15   A.    Okay.  This is signed also.

16   Q.    By -- on 114, on the first page of

17   that, the purchasing entity appears to be

18   JFK BLVD Acquisition GP, LLC as Buyer,

19   correct?

20   A.    Yes.  Yes.

21   Q.    Did you take steps to form that

22   entity?

23   A.    I believe we did, yes.

24                      -  -  -

CHARLES M. NASELSKY

Page 63

1        (P-115 marked for identification.)

2                    -   -   -

3    BY MS. BROWN:

4    Q.    If you could look at P-115?

5    A.    Okay.

6    Q.    A string of e-mails between

7    Mr. Kennedy from Cozen, Jenna Lampe.  Who is

8    Jenna Lampe?

9    A.    She was a paralegal at Cozen at the

10   time.

11   Q.    And at the top, she's reporting that

12   she had formed JFK BLVD Acquisition GP, LLC,

13   correct?

14   A.    Yes.

15   Q.    Now, at this time, March of 2006, --

16   A.    March.

17   Q.    -- who owned JFK BLVD Acquisition GP,

18   LLC?

19   A.    Who owned it?  I don't know if we had

20   actually identified an owner.  It's probably

21   just the, it's probably just the party that

22   formed the enterprise, but I don't think

23   there's been an operating agreement prepared

24   that would identify an owner yet.

CHARLES M. NASELSKY

Page 64

1    Q.    Who was the party that formed the

2    enterprise?

3    A.    Oh.  Cozen O'Connor formed it on

4    behalf of the clients.  That's standard

5    operating --

6    Q.    Who did you understand to own that

7    entity when it was formed?

8    A.    Oh.  Oh.  It would be Richard Zeghibe

9    affiliates.  There would be a tax planning

10   involved in choosing who owns it and how it's

11   owned, et cetera, at some point before we

12   close.

13   Q.    But it would be totally owned by

14   Richard Zeghibe ultimately?

15   A.    That would be decided by Richard when

16   the time comes.  It's not my decision.

17   Q.    What did you understand the

18   relationship to be between Ravi and Richard

19   with respect to JFK BLVD Acquisition GP, LLC

20   in March of 2006?

21   A.    My understanding was that they both

22   were considering the project and decided that

23   Richard would be the buyer of the project.

24   And I was representing the entity to --

CHARLES M. NASELSKY

Page 65

1   excuse me.  Cozen O'Connor was representing a

2   Richard Zeghibe entity to acquire the

3   property.

4                 MS. BROWN:  Could you read that

5          answer back for me, Kim?  Thanks.

6                     -   -   -

7   (The court reporter read the pertinent part

8                  of the record.)

9                     -   -   -

10  BY MS. BROWN:

11    Q.    Did you say "concerned"?  Both were

12  "concerned" with the project?

13    A.    I don't think I used the word

14  "concerned".

15    Q.    Did you say "considered"?

16    A.    Yes.

17                 THE COURT REPORTER:  Thank you.

18                 THE WITNESS:  I think, I think

19          they both considered participating in

20          the project.

21                 THE COURT REPORTER:  Thank you.

22          That's why you have to speak a little

23          louder.

24                 THE WITNESS:  "Concerned" is

CHARLES M. NASELSKY

Page 71

1    A.    I don't know what those terms mean at

2    the time.  I just -- I don't remember why we,

3    I wrote that.

4    Q.    There seems to be a line that leads

5    down to another thought "issue of

6    condemnation".  Is that a greater-than sign?

7    "Material is the only issue".

8    A.    Yes.  But that greater-than sign, the

9    way I write is that's not designed to be

10   "greater than".  That's just a subnote sign.

11   Q.    Okay.

12   A.    Okay.  It's not mathematical.  It's

13   intention.

14   Q.    Understood.  Do you have any

15   recollection of why you were sort of --

16   strike that.

17          Do you have any recollection of what

18   those notes mean, "over with value" and

19   "nominal value"?

20   A.    No, ma'am.

21   Q.    Okay.  You closed this transaction

22   ultimately?

23   A.    The contract buyer acquired the

24   property, yes.  Yes.