## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BERISH BERGER,** | **CIVIL ACTION** |
| **KILBRIDE INVESTMENTS LIMITED,** | |
| **BUSYSTORE LIMITED IN** | |
| **LIQUIDATION,** | |
| **TOWERSTATES LIMITED,** | |
| **BERGFELD CO. LIMITED, and** | **NO. 13-5195** |
| **ARDENLINK LIMITED,** | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| **CUSHMAN & WAKEFIELD OF** | |
| **PENNSYLVANIA, INC.,** | |
| **BLANK ROME LLP, and** | |
| **COZEN O'CONNOR, P.C.,** | |
| Defendants, | |
| | |
| and | |
| | |
| **CUSHMAN & WAKEFIELD OF** | |
| **PENNSYLVANIA, INC.,** | |
| Third Party Plaintiff, | |
| | |
| v. | |
| | |
| **CHAIM ZEV LEIFER,** | |
| **HASKEL KISH and** | |
| **JFK BLVD. ACQUISITION G.P., LLC,** | |
| Third Party Defendants. | |

**DuBois, J.**                                                                 **August 18, 2017**

### M E M O R A N D U M

## I.      INTRODUCTION

This is a fraud case in which Berish Berger ("Berger"), Kilbride Investments Ltd.

("Kilbride"), Busystore Limited in Liquidation ("Busystore"), Towerstates Ltd., Bergfeld Co.

Ltd., and Ardenlink Ltd. (collectively, "plaintiffs"), allege that defendants, Cushman &

Wakefield of Pennsylvania, Inc. ("C & W"), Blank Rome LLP ("Blank Rome"), and Cozen

O'Conner, P.C. ("Cozen"), (collectively, "defendants") induced them into investing at least $27 million in a real-estate development project called "River City," in Philadelphia, Pennsylvania, by fraudulently misrepresenting the applicable zoning restrictions, the feasibility of the project, and the valuation of the real estate. The Amended Complaint alleges three counts. Count I is for fraudulent misrepresentation against defendant C & W. This claim arises from alleged misrepresentations in an appraisal of the River City property by C & W which plaintiffs claim they relied on in investing in the property. Count II, conspiracy to defraud, and Count III, aiding and abetting fraud, are asserted against defendants Blank Rome and Cozen under the theory of *respondeat superior*. These two claims are based on the conduct of a former partner at both firms, non-party Charles Naselsky, who provided legal services during several stages of the failed River City development project.

Before the Court are five Motions for Summary Judgment filed by defendants and five *Daubert* Motions filed by plaintiffs and defendants. This Memorandum addresses two Joint Motions for Summary Judgment filed by all defendants with respect to the statute of limitations and standing. For the reasons that follow, defendants' Joint Motion for Summary Judgment with respect to the statute of limitations is denied, and defendants' Joint Motion for Summary Judgment with respect to standing is granted.

## II.    BACKGROUND[1]

The following facts are undisputed unless otherwise noted and are limited to those facts relevant to defendants' Joint Motions based on the statute of limitations and standing. River

---

[1] Defendants objected to plaintiffs' counterstatements of material fact in their entireties, on three primary grounds (Document No. 166, filed June 14, 2017). The Court has not considered any inadmissible evidence in deciding these Motions, and defendants may raise appropriate evidentiary objections at trial.

City, the proposed real estate development from which this case arises,[2] is a stretch of land along JFK Boulevard in Philadelphia that is divided into five parcels. Defs.' Statement of Undisputed Material Fact in Supp. Jt. Mot. Summ. J. Pursuant to Stat. of Limitations ("Limitations SOF") ¶ 5; Pls.' Resp. to Limitations SOF ("Resp. Limitations SOF") (Document No. 137, filed May 25, 2017) ¶ 5; Defs.' Statement of Undisputed Material Fact in Supp. Jt. Mot. Summ. J. for Lack of Standing ("Standing SOF") (Document No. 112, filed April 13, 2017) ¶ 13; Pls.' Resp. to Standing SOF ("Resp. Standing SOF") (Document No. 142, filed May 24, 2017) ¶ 13. In May 2006, third-party JFK Blvd Acquisition GP LLC ("JFK GP"), a Delaware limited liability company of which non-party Ravinder Chawla ("Chawla" or "Ravinder Chawla") and non-party Richard Zeghibe were the principals, contracted to purchase River City for $32.5 million from its owner, R&F Penn Center Associates L.P. ("R&F Penn"). Limitations SOF ¶ 6. JFK GP then retained architect James Rappoport to design a development concept for the property. *Id.* at ¶ 7. The resulting design featured multiple high-rise buildings built over the regional railroad right-of-way on the River City properties. *Id.*

On September 26, 2006, JFK GP approved a nominee agreement (the "September 2006 Nominee Agreement") involving JFK GP, non-party Eliyahu Weinstein and World Acquisition Partners Corporation ("WAPC"), a Pennsylvania corporation controlled by Chawla. Limitations SOF ¶ 8; Resp. Limitations SOF ¶ 8; Limitations SOF, Ex. D-2[3] at 1. The September 2006 Nominee Agreement provided for the purchase of the River City property from R&F Penn by JFK GP, the assignment of the property from JFK GP to WAPC, and, after Weinstein paid the required deposit and fulfilled other conditions, the transfer of the property from WAPC to

---

[2] The parties dispute whether an additional parcel of land, the 2040 Market Street property, is part of the claims in this litigation.
[3] All exhibits cited in the Memorandum are named using the exhibit numbers utilized by the parties in their Motions for Summary Judgment, *Daubert* Motions, and Responses.

Weinstein. Limitations SOF, Ex. D-2 at 1. The September 2006 Nominee Agreement was later replaced with another nominee agreement on December 19, 2006 (the "December 2006 Nominee Agreement"), which contained similar terms but replaced WAPC with non-party JFK Blvd Acquisition Partners L.P. ("JFK LP"), a Pennsylvania limited partnership,[4] as the nominee. Limitations SOF ¶ 8; Resp. Limitations SOF ¶ 8; Limitations SOF, Ex. D-6 at 1.

Weinstein began soliciting potential investors in the River City property and development project. Limitations SOF ¶ 9; Resp. Limitations SOF ¶ 9. While doing so, Weinstein was introduced to plaintiff Berger through third-party defendant Chaim Leifer,[5] whom Weinstein had retained to find investors for the River City development. Limitations SOF ¶¶ 10-11; Resp. Limitations SOF ¶¶ 10-11.[6] Berger is a foreign national and a resident of the United Kingdom. Standing SOF ¶ 1; Pls.' Counterstatement of Material Facts in Opp. Jt. Mot. Summ. J. Pursuant to Stat. of Limitations ("PCSF Limitations") ¶ 6.

After meeting with Leifer and Weinstein in London in November 2006, Berger attended a presentation on the River City development project at architect Rappoport's office in Philadelphia, Pennsylvania, in December 2006. Limitations SOF ¶ 13; Resp. Limitations SOF ¶ 13. Berger agreed to partner with Weinstein to purchase the River City property and another property known as 2040 Market Street.[7] Limitations SOF ¶ 14; Resp. Limitations SOF ¶ 14.

---

[4] JFK LP was formed December 11, 2006, to hold title to River City. The parties dispute the underlying motivation for creating JFK LP.

[5] C & W filed a Third-Party Complaint against third-party defendants Leifer, Haskel Kish, and JFK GP (Document No. 46, filed April 15, 2015). By Order dated August 25, 2016, judgment was entered in favor of defendant/third-party plaintiff C & W and against third-party defendants Leifer and Kish pursuant to Federal Rule of Civil Procedure 54(b).

[6] The parties dispute the specific nature of the relationship between Weinstein and Leifer. Limitations SOF ¶ 9; Resp. Limitations SOF ¶ 9.

[7] The parties dispute whether the 2040 Market Street property is at issue in this litigation.

According to Berger, "he believed he was entering into a consortium" with Weinstein and others "to invest in the entities that were acquiring the properties." Resp. Limitations SOF ¶ 14.

With respect to plaintiffs' investments in River City, the first funds were sent by plaintiff Kilbride at the instruction of Berger on December 18, 2006. Limitations SOF ¶ 16; Resp. Limitations SOF ¶ 16. Kilbride, an entity incorporated under the laws of Gibraltar, is owned by a discretionary family trust established by Berger's father, now-deceased. Standing SOF ¶ 2; PCSF Limitations ¶ 11. Berger is a potential beneficiary of the trust. The parties dispute whether Berger has any other legal relationship with Kilbride, although they agree that Berger is not a director of Kilbride. Standing SOF ¶ 2; Resp. Standing SOF ¶ 2.

Kilbride sent $12 million to Montgomery Abstract, a title company which held funds used by JFK LP to purchase of the River City property. Limitations SOF ¶ 17; Resp. Limitations SOF ¶ 17; Limitations SOF, Ex. D-40. The $12 million was used to purchase the River City property from R&F Penn, together with funds from other sources.[8] *Id.*

Weinstein then falsely represented to Berger that additional funds were needed to pay off a pre-existing mortgage on the property, and pay closing costs that were higher than expected. Limitations SOF ¶ 16; Resp. Limitations SOF ¶ 18. At Berger's instruction, Ardenlink, Towerstates, and Bergfeld, sent additional funds to Pine Projects LLC, an entity that was, unbeknownst to Berger, controlled by Weinstein. Limitations SOF ¶¶ 19-20; Resp. Limitations SOF ¶¶ 19-20.

On January 8, 2007, plaintiff Ardenlink sent $6 million and plaintiff Towerstates sent $4 million by wire transfer to Pine Projects LLC. Limitations SOF ¶¶ 19-20; Resp. Limitations

---

[8] The parties dispute whether JFK GP or JFK LP closed on the purchase of River City from R&F Penn. Limitations SOF ¶ 17; Resp. Limitations SOF ¶ 17.

SOF ¶¶ 19-20; Limitations SOF, Ex. D-52, D-57. Ardenlink is a United Kingdom corporation created by Berger. Standing SOF ¶ 4; Resp. Standing SOF ¶ 4. Berger, his wife Pessie Berger, and their son Getzel Berger are Ardenlink's directors. *Id.* The parties dispute whether Ardenlink was "operated for charitable purposes" or is a for-profit company whose "profits are subsequently used for charitable purposes." *Id.* Towerstates is a United Kingdom corporation started by Berger and Pessie Berger to conduct real estate business in the United Kingdom. Standing SOF ¶ 5. Berger, Pessie Berger, and Getzel Berger are Towerstates' directors. *Id.*

Both Ardenlink and Towerstates sent the funds "on behalf" of plaintiff Busystore. Reply Standing Mot., Ex. D-49. Busystore is a United Kingdom company formed by Berger and his wife Pessie Berger to conduct real estate business. Standing SOF ¶ 3. Berger, Pessie Berger, and their son, Getzel Berger, are the directors of Busystore. *Id.* Busystore is currently in liquidation. *Id.*

On January 19, 2007, plaintiff Bergfeld sent $5 million to Pine Projects LLC. Limitations SOF, Ex. D-62. Bergfeld is United Kingdom company that conducts real estate business in the United Kingdom. Standing SOF ¶ 6. Berger is one of nine directors of Bergfeld. *Id.* The other directors are several of his brothers, sisters, and siblings-in-law. *Id.*

Berger discovered in February 2007 that the money sent by Kilbride to Montgomery Abstract had been used in a manner other than that represented by Weinstein to Berger, and that Weinstein had misappropriated the funds sent to Pine Projects by Ardenlink, Towerstates, and Bergfeld. Limitations SOF ¶ 21; Resp. Limitations SOF ¶ 21. In May 2007, Weinstein defaulted under the December 2006 Nominee Agreements. Limitations SOF ¶ 22.

### III.    PROCEDURAL HISTORY

This case is the fourth civil action filed by Berger and/or the entity plaintiffs arising from the failed River City development project. On March 13, 2007, Berger filed Civil Action No. 07-994 ("*Berger I*") in the United States District Court for the Eastern District of Pennsylvania against Weinstein, Chawla, Anthony Agiripoulos,[9] 2040 Market Associates LP, JFK, UBS Real Estate Securities, Inc., Mark Sahaya, Pine Projects, Montgomery Abstract, and WAPC. On June 20, 2008, during litigation in *Berger I*, the entity plaintiffs assigned their claims to Berger. *Berger I,* Mem. & Order dated Aug. 6, 2008 (*Berger I*, Document No. 330) at 7 n.4; Pls.' Statement of Material Fact in Opp. Mot. Summ. J. Standing ("PCSF Standing"), Ex. STAX 13 at 1, 3, 5. The language of the assignment states that each plaintiff corporation:

> assign[ed] Berger the entirety of whatever claims and causes of action it may have against any and all of the defendants in the Litigation arising from the facts and circumstances alleged in the Second Amended Complaint served by Berger in the Litigation on May 16, 2008, including without limitation, the right to compromise, settle or abandon such claims and causes of action.

*Id.* Each assignment defines "the Litigation" as *Berger I*. *Id.*

By Memorandum and Order dated August 6, 2008, the Court granted the *Berger I* defendants' Motions for Summary Judgment with respect to Berger's claims on the ground that Berger lacked Article III standing. The *Berger I* court rejected Berger's argument that he suffered an injury-in-fact because the funds sent by the companies were loans "for which he was personally liable." *Berger I*, Mem. & Order dated Aug. 6, 2008, at 6. With respect to the existence of the loans, the Court concluded that Berger "has not met his burden of proving that such loans exists or, even if those loans did exist, that repayment was required with any imminence," and discussed the lack of evidence with respect to the nature of the funds, beyond

---

[9] Anthony Agiripoulos was Weinstein's attorney. Standing SOF, Ex. 19 ¶¶ 17, 19.

Berger's self-serving statements that the funds were loans. *Berger I*, Mem. & Order dated Aug. 6, 2008, at 6-10. The *Berger I* court also ruled that the assignments by the entity plaintiffs could not confer standing in that case on the ground that "standing must exist from the commencement of litigation." *Id.* at 7 n.4 (citation and quotation marks omitted). In so ruling, Court also noted that the statute of limitations with respect to the claims alleged in *Berger I* had not yet expired. *Id.* at 11.

On October 9, 2009, the United States Court of Appeals for the Third Circuit affirmed the District Court's decision in *Berger I*. *Berger v. Weinstein,* 348 Fed. App'x 751, 754 (3d Cir. 2009). In doing so, the Third Circuit noted that the District Court did not consider a statement made by James Levy, who represented Kilbride at the time of the $12 million transfer, that the $12 million was a loan from Kilbride to Berger. *Id.* at 754 n.2. Levy's statement appeared to be received by the District Court on the same day that the Order was entered; however, "Berger did not move for reconsideration in light of the new evidence, and therefore Levy's statement was not properly part of the record in the District Court." *Id.*

On August 20, 2008, Berger, as assignee of the entity plaintiffs, and the entity plaintiffs, with the exception of Towerstates, filed Civil Action No. 08-4059 ("*Berger II*") in this Court against Weinstein, Chawla, Sahaya, 2040 Market Associates, JFK, Pine Projects, and WAPC. By Memorandum and Order dated November 10, 2008, the Court stayed *Berger II* until the Third Circuit decided Berger's appeal of the Court's summary judgment ruling in *Berger I*. In deciding to stay the case and denying the defendants' motions to dismiss the case pending the appeal, the *Berger II* court "agree[d] with Plaintiffs that it would be manifestly unjust to dismiss *Berger II*" on the ground that if the Third Circuit affirmed the District Court's decision in *Berger I* and the Pennsylvania statute of limitations had run, "the Corporate Plaintiffs will be precluded

from bringing any claims based on Defendants' fraud . . . ." *Berger II*, Mem. & Order dated Nov. 10, 2008, at 7.

On December 18, 2008, Berger and the entity plaintiffs filed Civil Action No. 08-5861 ("*Berger III*") in this Court against Richard Zeghibe, Patriot Parking, Inc., James Rappoport, DDI Architects, P.C., Daroff Designs, Inc., Daroff Designs Inc. + DDI Architects, PC, and Jatinder Chawla.  By Order dated October 26, 2009, *Berger II* was consolidated with *Berger III* (post-consolidation, "*Berger II/III*").  On June 7, 2010, the defendants named in *Berger III* filed motions for summary judgment, and argued, *inter alia*, that Berger lacked standing on the ground that the assignments of the entity plaintiffs' claims in *Berger I* did not include claims against defendants who were not named in *Berger I*.  *Berger III*, Document No. 124, at 3-32; *Berger III*, Document No. 130, at 8-11.  The Court denied those Motions without opinion by Orders dated July 2, 2010 (*Berger III*, Documents Nos. 184, 189).

A jury trial was held in *Berger II/III* from July 16-30, 2010.  The jury returned a verdict on July 30, 2010.  In relevant part, the jury found Weinstein and Pine Projects liable for fraud and conspiracy to defraud, Sahaya liable for fraud and conspiracy to defraud, and Ravinder Chawla and WAPC liable for conspiracy to defraud, and assessed compensatory damages of $33 million.  Limitations SOF, Ex. CW-3 at 1-2, 6.  The remaining defendants were found not liable. *Id.* at 2, 4, 6.  The compensatory damage award was apportioned 70% to Weinstein, 20% to Pine Projects LLC, 5% to Chawla, and 5% to JFK LP.  *Id.* at 6. The jury also awarded punitive damages of $1million against Weinstein, $50,000 against Pine Projects, and $100,000 against Sahaya. *Id.* at 7.

The *Berger II/III* court denied the defendants' post-trial motions.  Ravinder Chawla and WAPC appealed the denial of their motion for judgment as a matter of law with respect to the

civil conspiracy claim. *Berger III*, Mem. & Order dated October 13, at 7. On January 12, 2012, the United States Court of Appeals for the Third Circuit affirmed the District Court's rulings in *Berger II/III*. *Berger v. Zeghibe,* 465 F. App'x 174 (3d Cir. 2012).

On December 18, 2012, plaintiffs filed the original Complaint in this case ("*Berger IV*") in the United States District Court for the Southern District of New York (*Berger IV*, Document No. 1-1, filed Sept. 5, 2013). On February 25, 2014, plaintiffs filed an Amended Complaint, which alleges that, as a result of fraudulent misrepresentations regarding zoning restrictions, the proposal's feasibility, and the real estate's valuation, plaintiffs invested approximately $27 million in River City from December 2006 to January 2007. Am. Compl. ¶ 28. By Order dated August 28, 2013, the District Court for the Southern District of New York granted defendants' Motion to Transfer this case from the Southern District of New York to this Court, pursuant to 28 U.S.C. § 1404(a).

On September 19, 2013, C & W filed a Motion to Dismiss (*Berger IV*, Document No. 5) on the ground that the Amended Complaint failed to state a claim of fraudulent misrepresentation against C & W. In their Response, plaintiffs stated that they "agree[d] with C & W that the substantive law of Pennsylvania governs Plaintiffs' claims and that the elements of fraud are set forth in *Gibbs v. Ernst*," 647 A.2d 882, 889 (1994). Resp. C & W Mot. Dismiss at 9 (*Berger IV*, Document No. 22, filed Oct. 7, 2013). By Memorandum and Order dated June 25, 2014, this Court denied C & W's Motion. In discussing the elements of a claim for fraudulent misrepresentation, the Court noted that "[t]he parties agree, and the Court concludes, that, pursuant to New York choice-of-law principles, Pennsylvania law governs this action due to the fact that the locus of the tort is in Philadelphia and that prohibitions on fraud are conduct-regulating." *Berger IV*, Mem. & Order dated June 25, 2014, at 6 n.4.

Presently before the Court are defendants' Joint Motions for Summary Judgment, filed on April 17, 2017. Plaintiffs filed their Responses on May 24, 2017. The Joint Motions are thus ripe for review.

## IV.    APPLICABLE LAW

A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## V.    DISCUSSION

### A.    Defendants' Joint Motion for Summary Judgment on All Claims Pursuant to the Statute of Limitations

Defendants seek summary judgment against all plaintiffs on the grounds that their claims are untimely under Pennsylvania's two-year statute of limitations for fraud claims. 42 Pa. Stat. and Stat. Cons. Ann. § 5524(7) (West). For the reasons, discussed below, defendants' Joint

Motion for Summary Judgment on All Claims Pursuant to the Threshold Issue of the Statute of Limitations is denied.

### 1. Applicable Law

In cases where the defendant has transferred a case under 28 U.S.C. § 1404(a), "the transferee court [is] obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 641 (1964). The parties agree that the choice-of-law rules of New York apply to this case. Limitations Mot. at 2; *see Stuart v. Am. Cyanamid Co.*, 158 F. 3d 622, 626 (2d Cir. 1998) ("Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations.").

New York's statute of limitations for claims based on fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8) (McKinney 2004). "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." *Stuart,* 158 F.3d at 627. However, this general rule

> is subject to a traditional statutory exception, New York's 'borrowing' statute, C.P.L.R. § 202. Under C.P.L.R. § 202, when a nonresident sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued.

*Id.*

It is undisputed that plaintiffs are not residents of New York and that their causes of action arose outside of New York. With respect to "where the cause of action accrued" under C.P.L.R § 202, the New York Court of Appeals has stated that, in tort cases "[w]hen an alleged

12

injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp. v. Triarc Corp.*, 715 N.E. 2d 479, 482 (N.Y. 1999).

Plaintiffs argue that their causes of action accrued in England and/or Gibraltar, where the plaintiffs reside. Like New York, England and Gibraltar have six year statute of limitations for tort claims, including fraud. *Compare* N.Y. C.P.L.R. § 213(8) (New York), *with* Limitation Act 1980, c. 58 §§ 2, 32(1) (Eng.), *and* Limitation Act 1960 c.42 pt. I §§ 4(1)(a), 32(1) (Gibraltar). Defendants argue that Pennsylvania's statute of limitations applies because: (1) plaintiffs are judicially estopped from arguing for a statute of limitations other than that of Pennsylvania, (2) plaintiffs may not rely on the law of England or Gibraltar because they have not given reasonable notice under Federal Rule of Civil Procedure 44.1, and (3) plaintiff Kilbride's injury accrued in Pennsylvania. The Court addresses each of defendants' arguments in turn.

### 2. *Judicial Estoppel*

Defendants first argue that plaintiffs are judicially estopped from arguing that any statute of limitations other than that of Pennsylvania is applicable to this case. Judicial estoppel requires that (1) "the party to be estopped has taken two positions that are irreconcilably inconsistent," (2) that party "changed his or her position in bad faith," and (3) "no lesser sanction would adequately remedy the damages done by the litigant's misconduct." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010).

With respect to the first requirement—irreconcilably inconsistent positions—defendants contend that plaintiffs (1) argued in *Berger II* that the Pennsylvania statute of limitations applied to their claims, and (2) agreed in their Response to C & W's Motion to Dismiss in this case that the substantive law of Pennsylvania governs their claims. Defendants also argue that this Court

already concluded that Pennsylvania law "govern[ed] the action." *Berger IV*, Mem. & Order dated June 25, 2014, at 6 n.4. The Court rejects these arguments.

First, plaintiffs' position with respect to the statute of limitations in *Berger II* is different than their position in this case, but that is explained on the basis of the different law applicable to each case. The difference is not irreconcilable. *Berger II* was a diversity case filed in this Court. A federal court sitting in diversity "applies the choice-of-law rules of the state in which it sits." *Frankentek Residential Systems, LLC v. Buerger*, 15 F. Supp. 3d 574, 580 (E.D. Pa. 2014) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945)). Under Pennsylvania choice-of-law rules, the Pennsylvania statute of limitations applies unless the claim accrued in a foreign jurisdiction. *Id.* (citing *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 n.3 (3d Cir. 1985)). For a claim that accrued in a foreign jurisdiction, Pennsylvania's borrowing statute provides that "the limitations period . . . is either the limitations period of the jurisdiction where the claim accrued or the Pennsylvania limitations period," whichever is shorter. *Id.* (citing 42 Pa. Stat. and Cons. Stat. Ann. § 5521(b)). In *Berger II*, Pennsylvania's two-year statute of limitations was deemed to be applicable. In contrast, this case is a diversity case filed in the Southern District of New York and transferred to this Court. As a transferee court, this Court must apply the "state law that would have been applied if there had been no change of venue." *Van Dusen*, 376 U.S. at 641. That rule requires the Court to apply New York's six-year statute of limitations for fraud claims in this case. *See infra* part V(A)(3).

Second, plaintiffs' agreement that Pennsylvania substantive law applies to their claims in this case, and this Court's ruling to that effect, is not inconsistent with plaintiffs' argument that England and/or Gibraltar's six-year statute of limitations applies to their claims in this case. In responding to defendant C & W's Motion to Dismiss for failure to state a claim, plaintiffs agreed

14

that Pennsylvania substantive law governed their claims in this case. Resp. C & W Mot. Dismiss

at 9. Neither C & W nor plaintiffs provided any briefing or argument on the applicable statute of

limitations at that stage of the proceedings. The Court's statement that "Pennsylvania law

governs the claims in this case due to the fact that the locus of the tort is in Philadelphia and that

prohibitions on fraud are conduct-regulating" applies to the substantive law governing the case,

not the statute of limitations. *Berger IV*, Mem. & Order dated June 25, 2016, at 6 n.4.

Importantly, New York's statute of limitations analysis differs from its substantive conflict-of-

law determination.[10] The "interest analysis" analysis applied to the substantive conflict-of-law

determination is irrelevant to the statute of limitations determination. *See Bank Brussels*

*Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 CIV. 6876(LMM), 2001 WL 492363, at *

(S.D.N.Y. May 9, 2001) (citing *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (N.Y. Ct.

App. 1999).

 Furthermore, contrary to defendants' assertion, plaintiffs' agreement that Pennsylvania

substantive law applies to the case does not cover the law applicable to the statute of limitations.

*See* Standing Mot. at 13. Defendants argue that "substantive law includes the statute of

---

[10] New York uses an "interest analysis" test for substantive choice-of-law determinations for tort claims, including fraud. *San Diego Cty. Employees Retirement Ass'n v. Maounis*, 749 F. Supp. 2d 104, 124 (S.D.N.Y. 2010). The interest analysis gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Id.* Generally, "when the law is one which regulates conduct, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* This differs from the determination of "accrual" for statute of limitations purposes. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d at 528-30. While the locus of fraud claim for the purposes of the interest analysis is usually where the plaintiff is located, as it is for the statute of limitations analysis, in cases where the injury "has occurred in locations with only limited connection to the conduct at issue [and] a substantial portion of the fraudulent conduct has occurred in another locus . . . . the plaintiffs' location is not a dispositive factor, and other occurrences and contacts within each jurisdiction that relate to the conflict of law are appropriately considered." *Maounis*, 749 F. Supp. 2d at 125 (concluding that forum with the most occurrences and contacts to the torts at issue had "the greatest interest in applying its law . . . to serve as a check against such misconduct"). In this case, plaintiffs reside in England and Gibraltar, but the majority of the allegedly tortious conduct occurred in Pennsylvania.

limitations," on the ground that "[o]therwise, a federal court sitting in diversity would not be required to apply those rules." *Id.* (citing *In re TMI Litig.*, 89 F.3d 1106, 1112 (3d Cir. 1997); *Jawarorwski v. Ciasulli Eyeglasses*, 490 F. 3d 331 (citing *Erie RR. Co. v. Tompkins*, 304 U.S. 64 (1938)). However, "what is substantive under the *Erie* doctrine and what is substantive for the purposes of conflict of laws" between states are not equivalent. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988) (citing *Guaranty Trust*, 326 U.S. at 108)). The Supreme Court has held that, with respect to conflict of laws between two states, a state may consider its statute of limitations procedural and apply it even where the substantive law of another state governs the claims. *Id.* Thus, while the statute of limitations is "substantive" for purposes of *Erie*, that rule is inapplicable to the conflict of laws issue presented with respect to a determination of which statute of limitations to apply.

The Court concludes that plaintiffs have not taken "irreconcilably inconsistent positions" with respect to this issue. Thus, the Court does not address defendants' arguments with respect to the other elements of judicial estoppel.

### 3. Federal Rule of Civil Procedure 44.1

Defendants next argue that plaintiffs cannot rely on the law of England and/or Gibraltar with respect to the statute of limitations because plaintiffs did not give notice of their intent to rely on foreign law as required by Federal Rule of Civil Procedure 44.1. In relevant part, Rule 44.1 provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Rule 44.1 does not require that the notice be given in the pleadings and "does not attempt to set any definite limit on the party's time for giving notice of an issue of foreign law," but requires that the "notice is reasonable." Fed. R. Civ. P. 44.1, advisory committee notes. If a district court concludes that plaintiffs did not provide reasonable

notice of their intent to rely on foreign law, it typically applies the law of the forum. *Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981) (approving district court's use of New York law where parties gave no notice of intent to assert applicable foreign law); *see also Bel-Ray Co., Inc. v. Chemrite (PTY) Ltd.*, 181 F.3d 435 (3d Cir. 1999).

In this case, the Court concludes that New York's six-year statute of limitations applies. Thus, the Court need not determine whether plaintiffs provided reasonable notice pursuant to Rule 44.1. As set forth *supra* in part V(A)(1), the applicable statute of limitations is determined by applying the law of New York because this action was initiated in New York. Under New York law, the statute of limitations for a non-resident's cause of action that arose outside of New York is New York's statute of limitations or the statute of limitations of the place where the cause of action accrued, whichever is shorter. *Stuart,* 158 F.3d at 627. The place of accrual for an economic injury is where "the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp.*, 715 N.E. 2d at 482. In this case, plaintiffs reside in England and Gibraltar, and the statutes of limitations for fraud claims in England and Gibraltar are six years. Because the statutes of limitations of England and Gibraltar are not shorter than New York's statute of limitations, the Court determines that New York's six-year statute of limitations applies.

### 4. *Plaintiff Kilbride's Place of Injury*

Defendants' final argument with respect to the statute of limitations is that plaintiff Kilbride's injury accrued in Pennsylvania and is barred by Pennsylvania's two-year statute of limitations. Defendants argue that Kilbride's injury did not occur when Kilbride sent funds to Weinstein, as plaintiffs allege, because Weinstein used the $12 million to purchase an option to acquire title to the River City property. Reply Limitations Mot. at 14-15. Rather, defendants contend, Kilbride was injured when it lost its interest in the River City property as a result of

Weinstein's failure to make the required payments under the Nominee Agreement on May 15, 2007. *Id.* at 15. Continuing, defendants argue that, under New York law, "claims deriving from a failure to make payments required by a contract accrue 'when payments are not made at the contractually agreed upon location,'" and that location was in Pennsylvania. *Id.* at 16 (citing *Bank of Boston Int'l of Miami v. Tefel*, 626 F. Supp. 314, 317 (E.D.N.Y 1986), and *Snyder v. Madera Broad., Inc.*, 872 F. Supp. 1191, 1196-97 (E.D.N.Y. 1995)).

The Court rejects this argument. Kilbride's claims sound in tort and in fraud, not in contract. Plaintiffs assert that, had C & W not fraudulently misrepresented the value of the River City development and/or had Blank Rome's and Cozen's employee not conspired to defraud or aided and abetted the fraud, they would not have invested in the River City development project. As stated above, for the purposes of New York's borrowing statute, the place of accrual for an economic injury is where "the plaintiff resides and sustains the economic impact of the loss." *Global Fin. Corp.*, 715 N.E. 2d at 482. Therefore, Kilbride's place of injury was Gibraltar, its place of incorporation. Further, the cases cited by defendants are inapposite—they involve two parties to a contract with claims arising from one party's failure to pay the other party. *See Snyder,* 872 F. Supp. at 1193; *Tefel*, 626 F. Supp. at 315. That is not the issue presented in this case.

### 5. Conclusion – Statute of Limitations

For all of the foregoing reasons, defendants' Join Motion for Summary Judgment on All Claims Pursuant to the Statute of Limitations is denied. The Court determines that the six-year statute of limitations of New York applies to this case.

Defendants' Joint Motion for Summary Judgment as to the Claims of
         Plaintiffs Berish Berger, Ardenlink Limited, and Towerstates Limited for
         Lack of Subject-Matter Jurisdiction Based Upon Want of Standing

Defendants seek summary judgment against Berger, Ardenlink, and Towerstates on the

grounds that there is no evidence that these three plaintiffs personally suffered a harm or loss and

accordingly, they lack standing under Article III.  For the reasons discussed below, defendants'

Joint Motion for Summary Judgment as to the Claims of Berish Berger, Ardenlink Limited, and

Towerstates Limited for Lack of Subject-Matter Jurisdiction Based Upon Want of Standing is

granted.

### 1.  Applicable Law

In order for a federal court to have jurisdiction over a claim, the plaintiff must have

standing under Article III of the United States Constitution.  *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560 (1992).  Constitutional standing requires that (1) the plaintiff suffered "an 'injury

in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and

(b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection

between the injury and the conduct complained of," i.e. "the injury must be fairly traceable to the

challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision."  *Id.* at 560-61 (citations and quotation

marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing" each element of

standing "in the same way as any other matter on which the plaintiff bears the burden of proof,

i.e., with the manner and degree of evidence required at the successive stages of the litigation."

*Id.* at 561.  Thus, at summary judgment, "the plaintiff must raise a genuine issue of material fact

as to whether the requisite standing elements are satisfied."  *Access 4 All, Inc. v. Boardwalk*

*Regency Corp.*, Civil Action Nos. 08-3817 (RMB/JS), 08-4679 (RMB/JS), 2010 WL 4860565, at *3 (D.N.J. Nov. 23, 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Defendants argue that Berger, Ardenlink, and Towerstates did not own any of the funds at issue that were ultimately misappropriated by Weinstein. The Court agrees, and thus concludes that they lack standing.

### 2. *Berger*

With respect to Berger, defendants argue that he did not own any of the funds at issue that were ultimately misappropriated by Weinstein. First, they argue that Berger is collaterally estopped from arguing that $12 million sent by Kilbride to Montgomery Abstract was a loan to him and that there is no evidence that this money was a loan. Second, they argue that entity plaintiffs did not assign to Berger their claims against defendants in this case.

In their Response, plaintiffs raise four theories of standing with respect to Berger: (a) Berger is not estopped from arguing that the money sent by Kilbride was a loan to him and he has produced evidence that it was a loan, (b) Berger has standing as an implied agent of the entity plaintiffs, (c) Berger has standing as a member of a joint venture with the entity plaintiffs, and (d) the assignments to Berger by the entity plaintiffs during *Berger I* included their claims against the defendants in this case. The Court addresses each of plaintiffs' arguments with respect to Berger's standing in turn.

### a. Issue Preclusion

In an effort to show that Berger has standing, plaintiffs first argue that Berger suffered an injury-in-fact because the $12 million sent by Kilbride to Montgomery Abstract was a loan for which Berger was personally liable to Kilbride. Defendants respond that plaintiffs are precluded from arguing that the funds sent by Kilbride were a loan to Berger because the *Berger I* court

determined that the funds were not a loan.  This Court must now determine whether that ruling

by the *Berger I* court should be given preclusive effect in this case.

The preclusive effect of a final judgment is determined by the law applicable to the court

which entered the judgment.  Under both Pennsylvania law and federal law,[11] the party seeking

to apply issue preclusion has the burden to show that:

> (1) the identical issue was decided in prior adjudication; (2) there was a final judgment on
> the merits; (3) the party against whom the bar is asserted was a party or in privity with a
> party to the prior adjudication; and (4) the party against whom the bar is asserted had a
> full and fair opportunity to litigate the issue in question.

*Alevras v. Tacopina*, 226 F. App'x 222, 227-28 (3d Cir. 2007) (citing *Bd. of Trs. of Trucking*

*Emp. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992); *see also*

*Office of Disciplinary Counsel v. Kiesewetter*, 899 A.2d 47, 50-51 (Pa. 2005).  The issue must

have been "actually raised, considered, and decided in a manner necessary to the prior

judgment."  *Id.* (citing *McCord v. Bailey*, 636 F.2d 606, 609 (D.C. Cir. 1980)); *see also*

*Kiesewetter*, 899 A.2d at 51 (listing as fifth requirement for preclusion that the determination be

"essential to the judgment").  The claims in the two separate actions need not be identical;

"rather, identical factual or legal issues may be material to both actions, even if the claims they

support are somewhat different."  *Id.* at 228 (citing *Witkowski v. Welch*, 173 F.3d 192, 203 (3d

Cir. 1999)).

---

[11] The parties did not brief whether the standard for the preclusive effect of a final judgment by a federal
court sitting in diversity applying Article III standing requirements differs from the standard for the
preclusive effect of a prior judgment by a federal court applying substantive state law, which is
determined by "the law that would be applied by state courts in the State in which the federal diversity
court sits."  *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  The preclusive effect
of a prior final judgment by federal court ruling on a federal question is determined by federal law.
*Alevras*, 226 F. App'x at 227 (citing *Purdy v. Zeldes*, 337 F.3d 253, 258 n.5 (2d Cir. 2003); *see also*
Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4472 (2d ed. 2002)).

In *Berger I*, the Court granted defendants' motion for summary judgment after concluding that Berger, the sole plaintiff, did not have standing on the ground Berger did not provide sufficient evidence that the funds provided by the corporations, including Kilbride, were loans to him, and, "even if those loans did exist, that repayment was required with any imminence." *Berger I*, Mem. & Order dated Aug. 6, 2008, at 6-7. Plaintiffs argue that collateral estoppel is inapplicable because there are additional facts in evidence in this case that were not considered in *Berger I;* specifically, testimony from James Levy, a representative of Kilbride, that the funds sent by Kilbride were a loan to Berger, Resp. Standing at 20 (citing PCSF Standing ¶¶ 1-10), an affidavit from a representative of Cheam Directors, the company that served as Kilbride's directors, stating the same thing, *id.* (citing PCSF Standing, Ex. STAX-16), and defendants' purported admission, through counsel, during this litigation that the funds sent by Kilbride were a loan to Berger, *id.* (citing PCSF Standing, Ex. STAX-3).

This Court concludes that issue preclusion applies and plaintiffs are precluded from arguing that the money sent by Kilbride was a loan to Berger. Each element of collateral estoppel is met. With respect to the first element, the issue in this case is identical to the issue decided in *Berger I*—whether the funds sent to Montgomery Abstract and Pine Projects by the entity plaintiffs, including Kilbride, were loans to Berger. Second, there was a final judgment on the merits of this issue in *Berger I*. The *Berger I* court dismissed Berger's claims on the ground that Berger had not produced sufficient evidence for a reasonable jury to conclude that the money provided by Kilbride was a loan. Berger appealed that decision, and the Third Circuit affirmed the granting of the motion for summary judgment on the ground that the money was not loaned to Berger and Berger did not have standing. Third, Berger, the party against whom the bar is asserted, was a party in *Berger I*. Finally, Berger had a full and fair opportunity to litigate

this issue—it was raised, briefed, considered by the Court, and essential to granting summary judgment in *Berger I*. *Berger I*, Mem. & Order dated Aug. 6, 2008, at 1 ("Because the issue of standing is dispositive, the Court will not address Defendants' arguments as to the merits of Plaintiff's claims.").

The Court rejects plaintiffs' arguments in opposition to the application of issue preclusion. Plaintiffs' argument that there is additional evidence in this case from which a reasonable jury could conclude that a loan existed is unavailing. With respect to Levy's and other testimonial evidence regarding the loan, plaintiff correctly asserts that this evidence was not considered by the Court in *Berger I*. However, as the Third Circuit noted in *Weinstein*, "Berger did not move for reconsideration in light of the new evidence, and therefore Levy's statement was not properly part of the record in the District Court." 348 F. App'x at 754 n.2. Berger's unexplained failure to present sufficient evidence in *Berger I* with respect to the nature of the loans or seek reconsideration of that determination does not mean that he may now relitigate that issue in this case—he had a full and fair opportunity to present evidence that the money was a loan in *Berger I* but did not do so.

The Court also rejects plaintiffs' related argument that the defendants may not argue that issue preclusion bars Berger's standing argument based on a loan from Kilbride. Plaintiffs' position is based on the *Berger II/III* court's denial of the *Berger II/III* defendants' motions for summary judgment which included, *inter alia*, arguments that Berger was precluded from relitigating the *Berger I* court's determination that he lacked standing. Resp. Standing Mot. at 22-23. But the requirements for giving that determination in *Berger II/II* preclusive effect in this case are not met—defendants in this case were not parties, and are not in privity with the parties, in *Berger II/III*. In addition, the Court notes that, while the *Berger II/III* court did not issue an

opinion at the summary judgment stage, the *Berger II/III* court later stated, in denying a motion for judgment as a matter of law, that "Berger's standing derives solely from these assignments." *Berger III*, Mem. & Order dated October 13, at 6. The Court discusses and rejects plaintiffs' assignment argument below.

Because the Court concludes that issue preclusion applies to the issue of whether the funds sent by Kilbride were a loan to Berger, the Court does not address the parties' argument with the respect to the sufficiency of the evidence presented on this issue.

### b. Implied Agency

Second, plaintiffs argue that the Berger acted as an implied agent for the entity plaintiffs and has standing under agency principles. Under Pennsylvania law, "the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). "An agency relationship may be created by . . . : (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." *Walton v. Johnson,* 66 A.3d 782, 786 (Pa. Super. 2013). Under the Restatement (Second) of Agency, an agent may assert a claim against third parties "on his own account" where the third party has committed a tort upon the agent or has "acted for the purpose of harming the agent's interest" when "tortiously harm[ing] the principal or destroy[ing] his business." Restatement (Second) of Agency § 374 (1), (2) (1957).[12]

Plaintiffs argue that Berger has standing because he acted as an implied agent and that the defendants "committed a tort upon him or acted for the purpose of harming his interest." Resp. Standing Mot. at 28. It is plaintiffs' position that the Court should consider the Third Circuit

---

[12] The parties did not brief whether Pennsylvania has adopted the Restatement (Second) of Agency § 374.

opinion in *Berger II/III*, quoted below, "persuasive authority" with respect to Berger's status as an agent. *Id.* at 27. In rejecting Ravinder Chawla and WAPC's argument that they were entitled to judgment as a matter of law with respect to the malice element of the civil conspiracy, the Third Circuit stated that

> On the record here, the jury could fairly conclude that the Chawla Appellants acted "solely to injure" Berger and his funding sources, because—as the Chawla Appellants acknowledge—the evidence was sufficient to show they intended to injure Berger, who appeared at the River City meeting as a representative of the Berger Entities. Indeed, the Chawla Appellants were aware that the River City meeting would be conducted with an investor group of which Berger was a member, and Berger testified that "it [was] understood" he was there on "behalf of…[his] companies" because it was "normal in real estate situations" to "invest [ ] on behalf of corporations." That testimony was entirely credible, since Chawla and Weinstein were themselves acting through surrogate business entities.

465 F. App'x at 181 (citations omitted). Finally, plaintiffs contend that "[d]efendants committed the same torts as to Berger as were committed upon the Plaintiff Entities." *Id.*

The Court rejects this argument. Regardless of whether Berger was an agent—express, implied, or otherwise—for the entity plaintiffs, status as an agent does not confer standing unless the agent suffers a personal harm. As stated by plaintiffs, "[a]lthough § 374(1) explicitly 'does not prevent the agent from maintaining an action against the other on his own account,' the contemplated defendant's act must be 'otherwise a tort upon [the] agent.'" *Matschke v. Zachritz*, Nos. 252928, 25448, 2005 WL 1314203, at *2 (Mich. Ct. App. June 2, 2005) (*quoting Restatement (Second) of Agency* § 374(1)). To the extent that plaintiffs rely on the cited portions of the Third Circuit holding in *Berger II/III* to argue that Berger suffered an injury, this reliance is misplaced. Although the Third Circuit concluded that there was sufficient evidence in *Berger II/III* that Ravinder Chawla and WAPC intended to harm Berger, this is not evidence that Berger personally suffered any injury as a result of the alleged tortious conduct in this case.

Because the Court concludes that Berger does not have standing as an agent on the ground that there is no evidence that he suffered an injury-in-fact as a result of defendants' allegedly tortious conduct, it does not address defendants' remaining arguments with respect to this issue.[13]

### c. Joint Venture

Plaintiffs' third argument with respect to Berger's standing is that Berger has standing as a member of a joint venture with the entity plaintiffs.

Under Pennsylvania law, "[t]he existence or non-existence of a joint venture depends upon what the parties intended in associating together." *McRoberts v. Phelps*, 138 A.2d 439, 443 (Pa. 1958). "It must arise from a contractual basis," but the contract "may be implied from the acts and conduct of the parties." *Id.* Whether a joint venture exists "depends on the facts and the circumstances of each particular case and no fixed nor fast rule can be promulgated to apply generally to all situations." *Id.* at 444. However, "certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction." *Id.* at 443-44.

Plaintiffs argue that three of the above factors weigh in favor of finding a joint venture and the fourth, mutual control, is neutral. Resp. Standing Mot. at 30. The Court rejects this argument and concludes that plaintiffs have not shown a genuine dispute of material fact with

---

[13] In addition to arguing that status as an agent does not confer standing, defendants argue that plaintiffs should not be able to rest on a new theory not included in the Second Amended Complaint, as they would have conducted discovery differently if they knew the issue of agency was going to be raised. Reply Standing Mot. at 13-14.

respect to the existence of a joint venture. There is no evidence of an agreement as to profit-sharing or of a joint proprietary interest in the subject matter of the alleged venture. With respect to profit-sharing, plaintiffs argue that there is evidence that Berger "wanted to purchase the River City property and then sell it for a short-term or long-term profit" and that the entity plaintiffs also sought to make a profit because Berger described the River City project as a "lucrative deal." Resp. Standing Mot. at 31 (citing PCSF Standing ¶¶ 40, 41). This is evidence of the parties' interest in making a profit; it is not evidence of a profit-sharing agreement. Regarding joint proprietary interest and mutual control, plaintiffs admit that there is insufficient evidence from which to determine whether there was joint proprietary interest or mutual control over the subject matter of the alleged joint venture. *Id.* ("[I]t is, as yet, unclear as to whether Berger and the Plaintiff Entities had a joint proprietary interest or a right to mutual control over the joint venture."). Under Pennsylvania law, "the law is clear that in order for a joint venture to come into existence, there must be a showing of a joint proprietary interest and a right of mutual control of the subject matter of the enterprise." *Wilkins v. Heebner*, 480 A.2d 1141, 1144 (Pa. Super. 1984) (emphasis omitted) (collecting cases)). Therefore, plaintiffs have not met their burden of producing evidence from which a reasonable jury could find that there was a joint venture.

Because the Court concludes that plaintiffs have not met their burden of producing evidence that Berger has standing as a member of a joint venture, it does not address defendants' remaining arguments with respect to this issue.[14]

---

[14] In addition to arguing that Berger has not produced evidence of a joint venture, defendants argue that Berger should not be able to rest on new theories, such as joint venture, not included in the Second Amended Complaint, as they would have conducted discovery differently if they knew Berger would attempt to rely on a joint venture theory with respect to standing. Reply Standing Mot. at 13-14.

d.  Assignment

Plaintiffs' fourth argument with respect to Berger's standing is that the assignments from all entity plaintiffs during *Berger I* includes the entity plaintiffs' claims against the defendants in this case.  Defendants argue that the plain language of the assignment does not include entity plaintiffs' claims in this case.

Each assignment states that entity plaintiffs:

> assign[ed] Berger the entirety of whatever claims and causes of action it may have against any and all of the defendants in the Litigation arising from the facts and circumstances alleged in the Second Amended Complaint . . . .

PCSF Standing, Ex. STAX-13 at 1, 3, 5.  Each assignment defines "the Litigation" as *Berger I*. *Id.*

Plaintiffs contend that the assignments should be interpreted based on the parties' intent, and that "the Assignments (when read as a whole) reflect a much broader intent . . . ." Resp. Standing Mot. at 33.  Continuing, plaintiffs argue that "[g]iven the enormity of the River City fraud, there is no way the Plaintiff Entities could have contemplated every single action and every possible defendant, when assigning their claims to Berger." *Id.*  Finally, plaintiffs argue that the *Berger II/III* court denied the motions for summary judgment in *Berger II/III* that included the same argument.  *Id.*  On this issue, defendants argue that the *Berger II/III* court's determination of standing with respect to the assignments "should be given no precedential or preclusive effect" because it was decided without opinion by the Court.  Reply Standing Mot. at 7 n.8.

Under Pennsylvania law, "[a]n assignment will ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the

execution of the assignment document." *Empl'rs Ins. of Wausau v. Commw. of Pa., Dep't of Transp.*, 865 A.2d 825, 831 (Pa. 2005). Under Pennsylvania law,

> [c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*In re Old Summit Mfg., LLC v. Pennsummit Tubular, LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (citing *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped,* 886 A.2d 706, 711 (Pa. Cmmw. Ct. 2005)).

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact.

*Id.* (citing *Hutchison v. Sunbeam Coal Corp.,* 519 A.2d 385, 390 (Pa. 1986)).

The Court concludes that the assignments do not confer standing on Berger with respect to the claims against defendants in this case. The language of the assignments is clear and unambiguous: the plaintiff corporations assigned to Berger "the entirety of whatever claim and causes of action it may have *against any and all of the defendants in the Litigation* arising from the facts and circumstances alleged" in the Second Amended Complaint in *Berger I*. PCSF Standing, Ex. STAX-13 at 1, 3, 5 (emphasis added). The assignments also clearly define "the Litigation" as *Berger I*. *Id.* The defendants in this case were not involved in *Berger I*, and thus the assignments do not cover the claims asserted in this case.

With respect to the *Berger II/III* court's orders denying motions for summary judgment, these orders do not result in issue preclusion because defendants in this case were not parties in *Berger II/III* or in privity with the parties in those cases.

29

e.  Conclusion

For these reasons, defendants' Joint Motion for Summary Judgment for Lack of Subject-Matter Jurisdiction Based Upon Want of Standing is granted with respect to plaintiff Berger.

*3.  Ardenlink and Towerstates*

The Court next addresses the question whether plaintiffs Ardenlink and Towerstates have standing.  Defendants argue that Ardenlink and Towerstates did not own any of the funds at issue that were ultimately misappropriated by Weinstein because (1) the $6 million sent by Ardenlink belonged to Busystore and (2) the $4 million sent by Towerstates was a loan to Busystore.  Standing Mot. at 13; Reply Standing Mot. 14-16.  It is plaintiffs' position that Ardenlink and Towerstates have standing on the ground that the plaintiff corporations are "integral parts of the same business, operated for the benefit of the Berger family," and that defendants are "hair-splitting over who owned the money and who sent it."  Resp. Standing Mot. at 34.  Plaintiffs provide no legal basis for this position and cite to no evidence to support their assertion that the plaintiff corporations are not separate entities but are "the same business."

With respect to Ardenlink, the Court concludes that there is no evidence from which a reasonable jury could conclude that the $6 million sent by Ardenlink was Ardenlink's money.  All the evidence cited by the parties supports finding that the money sent by Ardenlink was provided by Busystore.  Busystore's accounts disclose that the money was sent by Ardenlink on behalf of Busystore.  Standing SOF, Ex. 28.  Ardenlink accounted for the money as sent on behalf of Busystore.  Reply Standing Mot., Ex. D-49.  Berger, as Ardenlink's representative and as Busystore's representative, stated that the money sent by Ardenlink was Busystore's money.  Standing SOF, Ex. 12, at 18:20-20:3, 34:10-15, 36:2-14; Ex. 15, at 61:7-62:10, 71:5-72:8, 78:16-79:20, 88:3-13.  In short, there is no evidence, and plaintiffs do not argue, that the money sent by

Ardenlink was Ardenlink's money. Rather, plaintiffs rest their standing argument for Ardenlink on the ground that the Court need not "split hairs" over which plaintiffs have suffered an injury-in-fact. The Court rejects this argument. The Court does not have jurisdiction over plaintiffs' claims unless they have standing under Article III, *Lujan*, 504 U.S. at 560; "standing is perhaps the most important of the jurisdictional doctrines," *United States v. Hayes*, 515 U.S. 737, 742 (1995).

With respect to Towerstates, the court concludes that there is no evidence from which a reasonable jury could conclude that money sent by Towerstates was anything other than a loan to Busystore. The only evidence provided by the parties on this issue is as follows: Towerstates recorded the $4 million it provided as a loan to Busystore, Reply Standing Mot., Ex. D-49; Busystore accounted for the money sent by Towerstates as sent "on behalf" of Busystore, Standing SOF, Ex. 28, D-46; and Berger testified, as Towerstates' representative and Busystore's representative, that the money sent by Towerstates was a loan to Busystore, Standing SOF, Ex. 14, at 19:20-20:2, 32:18-33:2; Ex. 15, at 61:7-62:10, 64:6-15, 77:20-78:15, 87:12-88:2. Plaintiffs do not contend that this money was not a loan, and instead rely on their argument, unsupported by legal authority, that the relationship between the entity plaintiffs is such that the Court need not determine whether each individual entity has standing. Standing Mot. Resp. at 34. While there is no other evidence with respect to this loan, such as its terms or due date, plaintiffs have the burden to show that there is a genuine dispute of material fact with respect to whether Towerstates has suffered an injury-in-fact. *Lujan*, 504 U.S. at 561. Plaintiffs have presented no evidence that the money sent by Towerstates was anything other than a loan to Busystore, and have presented no legal authority for the proposition that Towerstates has standing as Busystore's creditor to sue for its debtor's injury.

Because the Court concludes that neither Ardenlink or Towerstates suffered an injury-in-fact, Ardenlink and Towerstates do not have standing. Accordingly, defendant's Joint Motion for Summary Judgment for Lack of Subject-Matter Jurisdiction Based Upon Want of Standing is granted with respect to plaintiffs Ardenlink and Towerstates.

## VI.    CONCLUSION

For the foregoing reasons, the Joint Motion of Defendants, Cushman & Wakefield of Pennsylvania, Inc., Blank Rome LLP, and Cozen O'Connor P.C., for Summary Judgment on All Claims Pursuant to the Threshold Issue of the Statute of Limitations is denied. The Motion By Defendants, Blank Rome LLP, Cozen O'Connor, P.C., and Cushman & Wakefield of Pennsylvania, Inc., for Summary Judgment as to the Claims of Plaintiffs Berish Berger, Ardenlink Limited, and Towerstates Limited for Lack of Subject-Matter Jurisdiction Based Upon Want of Standing is granted.

An appropriate order follows.