IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUSYSTORE LIMITED IN LIQUIDATION, and BERGFELD CO. LIMITED, Plaintiffs, | CIVIL ACTION |
| v. | NO. 13-5195 |
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., and COZEN O'CONNOR, P.C., Defendants, | |
| and | |
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., Third Party Plaintiff, | |
| v. | |
| CHAIM ZEV LEIFER, HASKEL KISH and JFK BLVD. ACQUISITION G.P., LLC, Third Party Defendants. | |

DuBois, J.                                                                                       May 23, 2018

## **M E M O R A N D U M**

### I.  INTRODUCTION

This is a fraud case in which Busystore Limited and Bergfeld Co. Limited (collectively, "plaintiffs"), allege that defendants, Cushman & Wakefield of Pennsylvania, Inc. ("C & W"), Blank Rome LLP ("Blank Rome"),[1] and Cozen O'Connor, P.C. ("Cozen"), induced them into investing at least $27 million in a real-estate development project, the River City Property

---

[1] By Order dated May 17, 2018, the Court granted Plaintiffs' Motion to Voluntarily Dismiss Defendant Blank Rome, LLP. Cushman & Wakefield of Pennsylvania, Inc. and Cozen O'Connor, P.C. remain as defendants.

1

("River City" or "the Property"), in Philadelphia, Pennsylvania, by fraudulently misrepresenting applicable zoning restrictions, the feasibility of the project, and the valuation of the real estate.

The facts of this case are set forth in detail in the Court's Memoranda dated February 16, 2018 (Document No. 185) and April 25, 2018 (Document No. 205) and the Court will not repeat the factual history here. C&W seeks to introduce the testimony of Professor Chaim Saiman, a professor of law at Villanova University School of Law and an expert in Jewish Law. The parties have stipulated that Saiman may testify concerning, *inter alia*, the cultural norms and business practices found in the ultra-Orthodox Jewish community. The parties have also stipulated that Saiman may not testify as to, *inter alia*, Mr. Berger's state of mind and the cause of plaintiffs' loss.[2]

Following a telephone conference on May 9, 2018, the parties asked the Court to resolve three outstanding issues with respect to Saiman's testimony. On May 11, 2018, plaintiffs and C&W submitted a joint letter to the Court with respect to Saiman's testimony, setting forth their positions on the three issues upon which they could not agree. This Memorandum resolves those remaining issues not covered by the stipulation.

## II. APPLICABLE LAW

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), this gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other

---
[2] The Stipulation is attached to this Order.

specialized" knowledge. Using the *Kumho* analysis, a court must determine whether an expert "employs in the courtroom the same level of intellection rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Rule 702 has "a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). As such, the "rejection of expert testimony is the exception and not the rule." FED. R. EVID. 702, advisory committee's note. "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).

III. DISCUSSION

   A) Testimony regarding whether the conduct of Berish Berger was consistent with business practices and customs found within the ultra-Orthodox Jewish community

Plaintiffs argue that Saiman should be precluded from testifying that Berger acted consistent with business practices and customs within the ultra-Orthodox Jewish in investing in the Property. Specifically, plaintiffs assert that Saiman's opinion with respect to this issue is unreliable, because Saiman's testimony relies on stereotypes that Saiman acknowledged at his deposition do not characterize Berger, who is an "exceptional member" of his religious community. C&W argues that Saiman should be permitted to testify—using Berger's own testimony and facts of record—regarding the extent to which Berger acted consistently with the business practices and customs of the ultra-Orthodox Jewish community to assist the jury in understanding Berger's conduct in the broader context of that community.

The Court agrees with C&W. Samain's testimony relies on statements made by Berger himself and applies those statements to his own area of expertise—ultra-Orthodox customs and

3

business practices. Saiman may testify, in sum, that the informal nature of the River City transaction, coupled with reliance on co-religionists, is consistent with those customs and business practices. That Saiman acknowledged that Berger himself was a leader in his community and thus an "exceptional" member of that community may be appropriately addressed on cross-examination. *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("As long as an expert's . . . testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process . . . .") (internal citations omitted)).

B) <u>The extent to which Professor Saiman may testify regarding religious affinity fraud committed by Mr. Weinstein</u>

Plaintiffs also seek to exclude Saiman's testimony with respect to Weinstein's criminal prosecution regarding a different fraud scheme, which Saiman concludes is similar to the fraud against plaintiffs.[3] Plaintiffs assert that Saiman has no expertise in criminal law and that his testimony with respect to Weinstein's criminal prosecution simply restates information obtained from the criminal docket and statements made by Judge Joel Pisano, the sentencing judge. C&W argues that testimony regarding Weinstein's religious affinity fraud is highly probative of Berger's justifiable reliance.

The Court agrees with plaintiffs that Saiman should not be permitted to testify regarding Weinstein's criminal prosecution. "An expert must testify about matters requiring scientific, technical or specialized knowledge." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244. Saiman's proposed testimony as to Weinstein's criminal prosecution does not involve any specialized knowledge; instead, Saiman's Report simply quotes from Weinstein's criminal indictment and Judge Pisano's statements at Weinstein's sentencing. Saiman Report at 23; *see also United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) ("An expert who parrots an out-of-court

---

[3] Specifically, Weinstein was charged and convicted of using the norms of Orthodox business practices to perpetrate frauds against numerous victims.

statement is not giving expert testimony . . . ."). Accordingly, Saiman may not testify as to Weinstein's criminal conduct involving religious affinity fraud.

C) <u>Translation and interpretation of letter from Chaim Leifer to Berish Berger on December 17, 2006</u>

Finally, plaintiffs and C&W were unable to reach agreement with respect to whether Saiman may testify as to his translation of a letter written from Chaim Leifer to Berger. Plaintiffs contend that Saiman improperly opines on Leifer's state of mind.[4] C&W argues that Saiman's testimony is admissible because he translates the letter and "explain[s] allusions to Biblical and Talmudic sources referenced in the letter that would not be apparent to a lay juror."

Saiman's translation includes annotations pointing out allusions to Biblical or Talmudic source, which are explained in Saiman's Report. For example, Saiman states that the letter addresses Berger in "the reverential second person plural—much as one would address a great Torah sage . . . and Weinstein is likewise adorned with rabbinic honorifics. . . ." Saiman Report at 14. He further concludes that Leifer's letter alludes to Biblical passages in an appeal to Berger. The Court concludes that Saiman's translation testimony, including an explanation of such allusions, is admissible. The Court agrees with plaintiffs, however, that certain statements in Saiman's Report inappropriately opine on Leifer's state of mind. For example Samain characterizes Leifer's state of mind when he uses language such as, "Leifer displays considerable anxiety . . . ," "Leifer expresses frustration . . . ," and "Leifer further fears. . . ." Saiman Report at 14, 15. As another example, Saiman states that the letter "underscore[s] that Leifer saw himself as personally responsible for securing Berger's funds . . . ." Saiman Report at 15. Such

---

[4] Plaintiffs also argue that Saiman's failure to provide a certified translation of the letter renders his translation testimony inadmissible. The Court rejects this argument. Federal Rule of Evidence 604 states that "an interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed.R.Evid. 604. Plaintiffs do not challenge Saiman's qualifications with respect to the translation and Saiman testified during his deposition as to the accuracy of his translation.

5

testimony inappropriately opines on Leifer's intent and state of mind and should be excluded. *In re Flonase Antitrust Litig.*, 884 F. Supp. 2d 184, 193 (E.D. Pa. 2012)("Generally, expert witnesses are not permitted to testify regarding 'intent, motive, or state of mind . . .'")(quoting *In re Rosuvastatin Calcium Patent Litig.*, 2009 WL 4800702, at *8 (D.Del. Dec. 11, 2009)).

Accordingly, the Court concludes that Saiman may translate Leifer's letter and may testify as to Biblical and Talmudic references contained in that letter and annotated in Saiman's translation. Saiman may not testify as to Leifer's underlying intent and state of mind.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Exclude the Proposed Expert Testimony of Chaim Saiman is granted in part and denied in part.[5]  Professor Saiman may testify as to whether Berger's conduct was consistent with the business practices and customs within the ultra-Orthodox Jewish Community.  Professor Saiman may not testify regarding Eli Weinstein's larger scheme of religious affinity fraud.  Finally, Professor Saiman may translate the letter from Leifer to Berger and may testify as to Biblical and Talmudic references contained in that letter.  Saiman may not testify as to Leifer's underlying intent and state of mind.

---

[5] The parties' Stipulation is unaffected by this Order.