IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KILBRIDE INVESTMENTS LIMITED, BUSYSTORE LIMITED IN LIQUIDATION, and BERGFELD CO. LIMITED,**<br>Plaintiffs,<br><br>v.<br><br>**CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., and COZEN O'CONNOR, P.C.,**<br>Defendants,<br><br>and<br><br>**CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.,**<br>Third Party Plaintiff,<br><br>v.<br><br>**CHAIM ZEV LEIFER, HASKEL KISH and JFK BLVD. ACQUISITION G.P., LLC,**<br>Third Party Defendants. | CIVIL ACTION<br><br>NO. 13-5195 |

**DuBois, J.**                                                                                                                                                                                                         August 5, 2019

**M E M O R A N D U M**

**I. INTRODUCTION**

This is a fraud case in which Kilbride Investments Limited, Busystore Limited in Liquidation, and Bergfeld Co. Limited (collectively, "plaintiffs"), allege that defendants, Cushman & Wakefield of Pennsylvania, Inc. ("C&W"), Blank Rome LLP ("Blank Rome"),[1] and Cozen O'Connor, P.C. ("Cozen"), induced them into investing at least $27 million in a real-estate development project, the River City Property ("River City" or "the Property"), in

---
[1] By Order dated May 17, 2018, the Court granted Plaintiffs' Motion to Voluntarily Dismiss Defendant Blank Rome, LLP.

1

Philadelphia, Pennsylvania, by fraudulently misrepresenting applicable zoning restrictions, the feasibility of the project, and the valuation of the real estate. Plaintiffs' Amended Complaint asserts one count against defendant C&W—a count for fraudulent misrepresentation—and two counts against Blank Rome and Cozen—counts for civil conspiracy to commit fraud and aiding and abetting fraud brought under a theory of *respondeat superior* based on the conduct of Charles Naselsky, an attorney who worked sequentially at Cozen and Blank Rome. Am. Compl. 28–31. Naselsky is not a party to this case.

The facts are set forth in detail in the Court's Memoranda dated February 16, 2018, (Document No. 185) and April 25, 2018, (Document No. 205). The Court will not repeat the factual history in this memorandum except as necessary to explain its decision.

On May 17, 2018, upon settlement of plaintiffs' claims against Blank Rome, Blank Rome was dismissed from this action with prejudice. C&W and Cozen remain as defendants. The Order dismissing Blank Rome was the product of language negotiated by counsel for all parties. (Document No. 210). Now, plaintiffs and Cozen have entered into a Settlement Agreement and Mutual Release ("Settlement Agreement"). According to plaintiffs, "the language of the release between Plaintiffs and Cozen differ[s] from that between Plaintiffs and Blank Rome in that it does not concede joint tortfeasor status." Pl. Mot. 5.

Presently before the Court is Plaintiffs' Motion to Voluntary Dismiss Defendant Cozen O'Connor, P.C. Pursuant to Rule 41(a)(2) and For Entry of Final Judgment Pursuant to Rule 54(b) (Document No. 241, filed May 17, 2019). Plaintiffs' motion seeks Cozen's dismissal with prejudice. Pl. Mot. 1. Cozen joined plaintiffs' motion and requests that the Court rule as a matter of law that Cozen is not a joint tortfeasor with C&W (Document No. 243, filed May 24, 2019). C&W responded in partial opposition to the motion and Cozen's joinder, arguing that

2

C&W is "entitled to an offset for the amount of Cozen's settlement against any verdict rendered against it" (Document No. 244, filed June 7, 2019). C&W Partial Opp. 3. Blank Rome filed a response and plaintiffs, Cozen, and C&W filed replies and a surreply, respectively (Document Nos. 245, 246, 247, 252, filed on June 14, 17, & 25, 2019). Plaintiffs' motion is now ripe for decision.

II. APPLICABLE LAW

Rule 41 of the Federal Rules of Civil Procedure governs voluntary and involuntary dismissals. For voluntary dismissals, a plaintiff is permitted to dismiss an opposing party either before an answer or a summary judgment motion is served or on the stipulation of all parties. *See* Fed. R. Civ. P. 41(a); *Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 24 (M.D. Pa. 1988). In this case, because plaintiffs' motion to voluntarily dismiss was filed after the completion of discovery, the "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974). "The purpose of the grant of discretion under Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions to avoid such prejudice." *Carroll v. E-One, Inc.*, No. 15-0562, 2016 WL 4702145, at *2 (E.D. Pa. Sept. 8, 2016). "The courts have adopted a 'liberal policy' with respect to Rule 41 motions for voluntary dismissal. Ordinarily, such motions 'should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.'" *Exeter Twp. v. Franckowiak*, No. 17-2709, 2018 WL 1010626, at *2 (E.D. Pa. Feb. 22, 2018) (quoting *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990)).

3

## III. DISCUSSION

C&W opposes, in part, plaintiffs' motion for voluntary dismissal, with prejudice, of defendant Cozen. Although C&W "does not oppose Cozen's dismissal from this action or the entry of the dismissal as a separate judgment," C&W argues that it will be legally prejudiced by Cozen's dismissal if they are precluded from receiving a pro rata reduction of any verdict against them based on Cozen's settlement pursuant to the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act ("UCATA") 42 Pa. Cons. Stat. §§ 8321–27.[2] C&W Partial Opp. 3. C&W argues that they are entitled to UCATA's pro-rata reduction because Cozen and C&W are "joint tortfeasors" under the Act. *Id.*

Plaintiffs and Cozen argue that Cozen cannot be considered a joint tortfeasor with C&W because (1) Cozen, allegedly a vicariously liable party, cannot be considered a joint tortfeasor with C&W, allegedly a primarily liable party, and an intentional tortfeasor; (2) even if Cozen and C&W could be considered joint tortfeasors as a matter of law, the evidence in this case does not support a finding of joint tortfeasor status; and (3) C&W has waived its right to pursue a claim of contribution against Cozen under UCATA by failing to file a cross-claim in this action and/or by failing to join Naselsky as a third party defendant. Pl. Mot. 8–24. The Court considers each argument in turn.

---

[2] In case involving joint tortfeasors, UCATA provides for pro-rata reduction where one joint tortfeasor reaches a settlement with the plaintiff while the other remains in the case:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa. Cons. Stat. § 8326.

**A. Can an Intentional Tortfeasor and a Vicariously Liable Party be Joint Tortfeasors under UCATA?**

Plaintiffs and Cozen argue that the present issue is "novel" because (1) C&W is allegedly an intentional tortfeasor, and (2) C&W is allegedly a primarily liable party while Cozen is allegedly secondarily liable under a theory of *respondeat superior*. Pl. Mot. 16. The Court concludes that neither factor bars joint tortfeasor status.

*1. Can an Intentional Tortfeasor Seek Contribution under Pennsylvania Law?*

UCATA defines joint tortfeasors broadly as "two or more persons jointly or severally liable in tort for the same injury to persons or property." *See* 42 Pa. Cons. Stat. § 8322. Although intentional tortfeasors were not entitled to contribution at common law, a number of recent cases have concluded that UCATA's broad language presents no such restriction. *Compare Britt v. May Dep't Stores Co.*, No. 94-3112, 1994 WL 585930, at *3 (E.D. Pa. Oct. 14, 1994), *with Euro Motorcars Germantown Inc. v. Manheim Remarketing, Inc.*, No. 13-7614, 2015 WL 798969, at *10 (E.D. Pa. Feb. 25, 2015).

In *Euro Motorcars Germantown Inc. v. Manheim Remarketing Inc.*, after conducting a thorough analysis of UCATA and its interpretation in Pennsylvania courts, the court concluded that "[g]iven [UCATA's] language and history, . . . Pennsylvania appellate courts would . . . hold that the contribution statute permits a contribution remedy for intentional tortfeasors." 2015 WL 798969, at *10. The *Euro Motorcars* court based its holding, in part, on a Pennsylvania Superior Court strict liability case, *Svetz for Svetz v. Land Tool Co.*, 513 A.2d 403 (Pa. Super. Ct. 1986). In *Svetz* the Superior Court determined that a strictly liable party could recover from a negligent tortfeasor because "[t]he statutory language does not limit the right of contribution to tortfeasors who have been guilty of negligence. Contribution is available whenever two or more persons are

jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed." *Euro Motorcars*, 2015 WL 798969, at *8 (citing *Svetz*, 513 A.2d 403).

The holding in *Euro Motorcars* was subsequently endorsed by *Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. 16-1343, 2017 WL 2840352, at *10 (E.D. Pa. June 30, 2017) ("[W]e need look no further than the plain language of the statute, which neither 'expressly limit[s] its applicability to torts based on negligence' nor in any other way constrains the statute's reach." (quoting *Alexander v. Hargrove*, No. 93-5510, 1994 WL 444728, at *4 (E.D. Pa. Aug. 16, 1994)). The Court agrees with the reasoning in *Euro Motorcars* and concludes that C&W's claimed status as an intentional tortfeasor is not a bar to contribution.

   2. *Can a Primarily Liable Party Seek Contribution From a Secondarily Liable Party Under Pennsylvania Law?*

In an effort to distinguish *Euro Motorcars* from the present case, plaintiffs argue that Cozen's status as an alleged vicariously liable party makes this case unique and raises issues of equity. Pl. Mot. 18. Plaintiffs argue that in *Euro Motorcars* and its progeny "at issue was either a negligent party seeking contribution from an intentional tortfeasor or an intentional tortfeasor seeking contribution from an intentional tortfeasor."[3] *Id.* In contrast, the present case involves an alleged intentional tortfeasor seeking a pro-rata reduction in any verdict rendered against it, based on plaintiffs' settlement with an alleged vicariously liable party. Plaintiffs note that they "have found no case in Pennsylvania [in] which the Court permitted an intentional tortfeasor to seek contribution [from] a vicariously liable party." *Id.* at 19.

Plaintiffs' argument is unpersuasive. Although the Court has not found any cases considering the precise factual scenario at issue in this case, Pennsylvania courts have broadly

---

[3] Plaintiffs acknowledge that one case, *Rich v. Brandywine Ins. Advisors, LLC*, No. 16-3965, 2017 WL 961002, at *6 (E.D. Pa. Mar. 10, 2017), allowed a defendant alleged to have committed both negligence and an intentional tort to seek contribution from an alleged negligent tortfeasor. Pl. Mot. 19.

6

stated that "[c]ontribution is available whenever two or more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed." *Svetz for Svetz v. Land Tool Co.*, 513 A.2d 403 (Pa. Super. Ct. 1986).

Next, in its joinder motion, Cozen argues that "[a] party alleged to be liable only on the basis of vicarious liability for the tort of its agent is not itself a tortfeasor" and, therefore, cannot be held liable as a joint tortfeasor. Cozen Joinder 4. In support of that position Cozen cites *Mamalis v. Atlas Van Lines, Inc.*, in which the Pennsylvania Supreme Court concluded that no joint tortfeasor relationship exists between a principal and its agent, stating, "absent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal." 560 A.2d 1380, 1383 (Pa. 1989).

*Mamalis* is distinguishable from the present case involving a party claimed to be vicariously liable party and a defendant claimed to be primarily liable who acted independently. *Mamalis* "was directed to a simple fact pattern involving a single principal, a single agent, a single event, and consequences of the release of the party bearing primary liability upon settlement. . . The Court simply did not consider the extension of the rule to complex factual scenarios such as the present one." *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485 (Pa. 2009) (limiting the principles of *Mamalis* to cases involving similar factual circumstances). Furthermore, prior to *Mamalis*, courts applying Pennsylvania law regularly held that two vicariously liable parties may be joint tortfeasors. *Rutherford v. Gray Line, Inc.*, 615 F.2d 944, 948 (2d Cir. 1980).

The Court notes that at least one federal case post-*Mamalis* extended the reasoning in *Mamalis* to bar joint tortfeasor status between two vicariously liable parties. *See Abercrombie &*

*Kent International v. Carlson Marketing Group, Inc.*, No. 88-7889, 1990 WL 20213, at *4 (E.D. Pa. Feb. 28, 1990) ("Even though *Mamalis* did not specifically address the issue of two vicariously liable parties, its reasoning supports the proposition that the Act covers contribution only between directly liable parties."). *Abercrombie*, however, has not been cited in any cases and was decided prior to *Maloney*, in which the Supreme Court of Pennsylvania limited the holding in *Mamalis* to cases involving similar factual circumstances. Therefore, the Court declines to follow *Abercrombie*.

Cozen also relies on *Terwilliger v. Kitchen* in support of the proposition that a vicariously liable party that "[does] not act with other tortfeasors to injure another . . . is, therefore, not subject to joint tortfeasor liability." 781 A.2d 1201, 1208 (Pa. Super Ct. 2001). *Terwilliger* considered whether Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. § 1574, providing that a car owner who entrusts a vehicle to an unlicensed driver is jointly and severally liable for any injuries caused, applied to a mother who loaned her vehicle to her unlicensed son. *Id.* In that case the mother was not found liable for negligent entrustment under the statute because her conduct was not a substantial factor in causing the injuries at issue. *Id.* Specifically, that court concluded "she did not know or have reason to know her son would operate her vehicle while intoxicated." *Id.* Based on those facts, the *Terwilliger* court determined that joint and several liability under Pa. Cons. Stat. § 1574 was inapplicable, stating "one who is jointly liable is directly liable since the acts of a joint tortfeasor contributed to the plaintiff's injuries." *Id.* at 1207–08.

*Terwilliger* does not consider the precise issue presented in this case—whether a directly liable party can seek a pro-rata reduction from a vicariously liable party under UCATA. Furthermore, similar to *Mamalis, Terwilliger* addressed "a simple fact pattern involving a single

8

principal, a single agent, a single event." *Maloney*, 984 A.2d 478, 485 (Pa. 2009). For those reasons, the Court does not believe that Pennsylvania courts would find *Terwilliger* controlling precedent on the issue presently before this Court and rejects Cozen's argument that, as a matter of law, there are no circumstances in which a vicariously liable party can be considered a joint tortfeasor.

The Court therefore concludes that neither C&W's claimed intentional tortfeasor status nor Cozen's claimed secondary liability bar the application of UCATA.

### B. Could a Jury find Cozen and C&W to be Joint Tortfeasors?

As discussed above, UCATA defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property." *See* 42 Pa. C.S. § 8322. "If the tortious conduct of two or more persons causes a single harm which cannot be apportioned, the actors are joint tortfeasors even though they may have acted independently." *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1028 (Pa. Super. Ct. 2005). "The determination of whether to allow apportionment is entirely a practical inquiry into the circumstances of each case."[4] *Glomb v. Glomb*, 530 A.2d 1362, 1366 (Pa. Super. Ct. 1987).

Although the claims brought against C&W and Cozen are distinct, the evidence shows that Cozen, through Naselsky's actions, and C&W's conduct united to cause a single harm that cannot be apportioned. Prior to leaving his employment with Cozen on July 28, 2006, Naselsky engaged C&W to appraise the River City Property at issue, edited C&W's engagement letter, reviewed a draft appraisal of the property, contacted and met with appraisers at C&W in an effort to increase a draft appraisal's valuation of the property. *Kilbride Investments Ltd. v. Cushman &*

---

[4] In *Voyles v. Corwin*, the Pennsylvania Superior Court identified seven factors that are often used in considering whether liability is apportionable. 441 A.2d 381, 383 (Pa. Super. Ct. 1982). "The *Voyles* court, however, did not intend to establish a single, cumulative 'test' of apportionability." *Glomb v. Glomb*, 530 A.2d 1362, 1366 (Pa. Super. Ct. 1987) (noting that courts need not rely on the *Voyles* factors where the court finds "no logical, reasonable, or practical" basis with which to apportion liability).

9

*Wakefield of Pennsylvania, Inc.*, 294 F. Supp. 3d 369, 375 (E.D. Pa. 2018). Furthermore, there is evidence that Naselsky provided C&W's appraisers with a $50 million "Agreement of Sale" "to increase valuations based on agreements of sale that were never intended to close." *Id.* at 375. According to plaintiffs, the allegedly inaccurate information contained in C&W's appraisal of the property, some of which Naselsky provided during his employment with Cozen, caused the financial loss at issue in the current litigation. This harm cannot be apportioned between defendants since the harm was the byproduct of the alleged fraudulent conduct of both Naselsky and C&W.

Plaintiffs next argue that the Court should find that Cozen and C&W cannot be joint tortfeasors as a matter of fairness. Pl. Mot. 22–24. They state that there is little reason "from a fairness perspective . . . to find that Cozen, a vicariously liable party with none of its own claimed wrongful conduct, is a joint tortfeasor with intentional tortfeasor C&W." *Id.* at 24. Plaintiffs argue that a vicariously liable party should not have to pay for conduct that was not their own—a proposition that goes against the doctrine of vicarious liability itself. *See Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998).

The Court has already considered the appropriateness of subjecting Cozen to liability for the conduct of its former employee, Naselsky. After analyzing the issue in its February 16, 2018 Memorandum, the Court concluded that Cozen can be held liable on a theory of *respondeat superior* for conspiracy to commit fraud and for aiding and abetting fraud based on Naselsky's conduct.

> Pennsylvania courts long imposed liability on employers through *respondeat superior* where there is no evidence that the employer had knowledge of, or authorized, the tortious conduct . . . . A contrary holding would "permit the person who held out his agent as worthy of trust and confidence to escape liability for his agent's deceits and frauds, while at the same time reaping the fruits of his agent's fraud, all at the expense of an innocent third party."

*Kilbride Investments Ltd.*, 294 F. Supp. 3d at 378 (internal citations omitted). The Court sees no reason to revisit its determination that Cozen can be held liable under a theory of *respondeat superior* for Naselsky's conduct simply because it is now C&W, and not plaintiffs, seeking financial recompense. Thus, the Court rejects plaintiffs' fairness argument.

For the reasons stated above, and given the novel factual circumstances of this case, the Court concludes that a reasonable jury could find Cozen and C&W to be joint tortfeasors under Pennsylvania law. As a result, the Court denies that portion of plaintiffs' motion to voluntarily dismiss Cozen, and Cozen's joinder in that part of the motion, which seeks a ruling that Cozen and C&W are not joint tortfeasors.

### C. Has C&W Waived Its Right to Pursue a Contribution Claim Against Cozen?

Plaintiffs and Cozen assert that C&W waived the issue of joint-tortfeasor status by (1) not asserting any cross-claims, and (2) by not joining Naselsky.

In support of their first argument, plaintiffs rely on *Protocomm Corp. v. Novell Advanced Services, Inc.*, 171 F. Supp. 2d 459 (E.D. Pa. 2001). In *Protocomm* the court held that a non-settling defendant had waived the issue of joint tortfeasor liability because that defendant had "never filed a cross-claim, . . . asserted any [such] affirmative defense in their answer" and "the complaint [did] not allege that defendants [were] joint[ly] and severally liable." *Id.* at 472. Plaintiffs argue that, similar to *Protocomm*, C&W did not raise the issue of joint tortfeasor status with Cozen in any cross claim or affirmative defense, and thus waived its right to seek contribution. Pl. Mot. 12.

*Protocomm*, however, is distinguishable from the present case. The *Protocomm* Court stated, "[t]he glaring problem with the objections raised by the non-settling defendants is that they have failed until now to raise the issue of joint tortfeasor status." *Protocomm*, 171 F. Supp.

11

2d at 472.  In this case, in contrast, joint tortfeasor status has been an actively debated issue for well over a year.  In April of 2018, in response to disagreements between the parties on that issue, the Court ordered briefing on the narrow issue of joint tortfeasor status between the then-remaining defendants.  (Document No. 204).  Moreover, as C&W points out, the issue of joint tortfeasor status was arguably evident on the face of the Amended Complaint, which states "Plaintiffs seek to recover from C&W, Cozen and Blank Rome for . . . losses Plaintiffs have sustained because of C&W's fraudulent appraisal, and because of Naselsky's role in the River City conspiracy."  Am. Compl. ¶ 9; C&W Partial Opp. 20.  These circumstances are notably different than those in *Protocomm*.

Furthermore, in *Koppers Co. v. Aetna Cas. & Sur. Co.* the Third Circuit held "there is no functional difference between a cross-claim for contribution and a subsequent contribution action" and, a party "does not 'waive' a contribution claim by failing to bring a cross-claim because the claim does not accrue until money is actually paid out."  *See Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1453 n.14 (3d Cir. 1996).  The analysis in *Protocomm*, fails to acknowledge or distinguish *Koppers* or the long line of cases holding that a contribution claim does not arise until after a judgment has been rendered against a defendant for more than his or her share of liability.  *See e.g. Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171 (3d Cir. 1989); *Nat'l Liberty Life Ins. Co. v. Kling P'ship*, 504 A.2d 1273, 1277 (Pa. Super. Ct. 1986).

Recent cases in this District support C&W's position that a contribution claim is not waived by the failure to assert a cross-claim or affirmative defense.  *See Nat'l Specialty Ins. Co. v. Tunkhannock Auto Mart, Inc.*, 2018 U.S. Dist. LEXIS 82268, at *8 (M.D. Pa. May 16, 2018) (stating that "[a] joint tortfeasor's right to contribution is distinct from the original action"); *United States v. Sunoco, Inc.*, 644 F. Supp. 2d 566, 575–76 (E.D. Pa. 2009) ("The rights of

a contribution action 'flow not from the tort, but from the judgment or settlement itself.'"). For the reasons stated above, the Court concludes that C&W has not waived its right to seek contribution through a pro-rata reduction by not raising the issue in a cross-claim or affirmative defense.

Next plaintiffs argue that C&W waived any right it may have had to pursue a claim of contribution against Cozen by failing to join Naselsky. Pl. Mot. 14. Again, the Court disagrees. Just as plaintiff was not required to sue Naselsky in order to pursue a claim of vicarious liability against Cozen, C&W was not required to join Naselsky to pursue a contribution claim against Cozen based on a theory of vicarious liability for Naselsky's conduct. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). The Court thus concludes that C&W has not waived its right to seek contribution or a pro-rata reduction by failing to join Naselsky.

For the reasons stated above, the Court concludes that Cozen and C&W can be joint tortfeasors in the event a jury finds them liable for the conduct alleged by plaintiffs, and that UCATA applies to the case.

**D. Voluntary Dismissal Under Rule 41(a)(2)**

Plaintiffs and Cozen ask this Court to voluntarily dismiss Cozen with prejudice pursuant to Rule 41(a)(2). As discussed above, a motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974). "The purpose of the grant of discretion under Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions to avoid such prejudice." *Carroll v. E-One, Inc.*, No. 15-0562, 2016 WL 4702145, at *2 (E.D. Pa. Sept. 8, 2016).

13

Based on the Court's determination *supra* that, as a matter of law, Cozen and C&W can be joint tortfeasors under Pennsylvania law, a jury must evaluate Cozen's liability at trial in order to trigger a pro-rata reduction under UCATA. In contrast to the release agreement entered into by plaintiffs and Blank Rome, plaintiffs and Cozen have not conceded joint tortfeasor status or agreed to an automatic reduction.[5] As a result, C&W has the right to require Cozen to remain in the case through trial for the purpose of determining liability and the amount of any pro rata reduction in any verdict for plaintiffs. *See Carr v. Am. Red Cross*, 17 F.3d 671, 683 (3d Cir. 1994) (citing *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956)). For that reason, the Court denies plaintiffs' motion to voluntarily dismiss Cozen from the case.

### E. Verdict Sheet and Disclosure of Settlement Amount

Cozen argues that, in the event that the Court determines that UCATA applies, and it has done so, the Court should "enter an order directing that Cozen be placed on the verdict sheet at any trial of this action for a determination of Cozen's pro-rata responsibility." Cozen Joinder 4. C&W's partial opposition to plaintiffs' and Cozen's motions similarly requests that Cozen "be included on the verdict sheet at trial for the purpose of apportionment of liability" "upon proofs sufficient to establish a prima facie case of its liability." C&W Partial Opp. 25.

Based on the Court's analysis *supra* concluding that Cozen and C&W can be joint tortfeasors under Pennsylvania law, C&W may be entitled to a pro rata reduction as provided under UCATA. Accordingly, Cozen shall be included on the verdict sheet for determination of liability and the amount of any pro rata reduction in any verdict for plaintiffs.

---

[5] At the time of Blank Rome's dismissal, Blank Rome and plaintiffs had entered into a settlement agreement and mutual release that conceded joint tortfeasor liability. Pl. Mot. 5. Based on that release, "any judgment obtain[ed] in [plaintiffs'] favor . . . will be automatically reduced by the pro rata share of liability attributable to Blank Rome at trial" and, even if the factfinder attributes little or no liability to Blank Rome, "the amount of the automatic reduction will be no less than the amount of the settlement paid by Blank Rome." Pls' Mot. Voluntarily Dismiss Blank Rome 7–8.

Similarly, C&W requests that the Court instruct plaintiffs and Cozen to produce a copy of their settlement agreement or otherwise disclose the settlement amount. C&W Partial Opp. 24. Because the terms of the settlement between plaintiffs and Cozen are relevant to both ongoing settlement negotiations and any pro rata reduction upon a finding of liability, the Court directs plaintiffs and Cozen to produce a copy of the settlement agreement.

### F. Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b)

Plaintiffs and Cozen move for entry of final judgment under Rule 54(b) in the event the motion for voluntary dismissal is granted. Pl. Mot. 25. In relevant part, Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). Because the Court has denied the motion for voluntary dismissal, it does not reach the Rule 54(b) issue.

## IV. CONCLUSION

For the foregoing reasons Plaintiffs' Motion to Voluntary Dismiss Defendant Cozen O'Connor, P.C. Pursuant to Rule 41(a)(2) and For Entry of Final Judgment Pursuant to Rule 54(b) is denied. To that end Cozen shall be included on the verdict sheet. The Court further directs that plaintiffs and Cozen shall provide Cushman &Wakefield with a copy of their settlement agreement.