**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BUSYSTORE LIMITED IN LIQUIDATION, and BERGFELD CO. LIMITED, | Civil Action No.:  2:13-CV-05195 |
| Plaintiffs, | |
| v. | |
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., BLANK ROME LLP, | |
| Defendants. | |
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| CHAIM ZEV LEIFER, HESKEL KISH, and JFK BLVD. ACQUISITION G.P., LLC, | |
| Third-Party Defendants. | |

## AMENDED PRETRIAL MEMORANDUM OF DEFENDANT/THIRD-PARTY PLAINTIFF CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.

Defendant/Third-Party Plaintiff Cushman & Wakefield of Pennsylvania, Inc. ("C&W")

submits the following pretrial memorandum, outlining both its defenses to Plaintiffs' claims and

the bases for the claims it has asserted over Third-Party Defendants, Chaim Zev Leifer, Heskel

Kish, and JFK Blvd. Acquisition G.P., LLC.

A-1

I.     **STATEMENT OF THE NATURE OF THE ACTION AND BASIS FOR JURISDICTION**

Plaintiffs state a single claim for fraudulent misrepresentation against C&W.  Although Plaintiffs' Amended Pretrial Memorandum describes alleged efforts to defraud them by Ravinder Chawla ("Chawla"), Charles Naselsky ("Naselsky"), Eliyahu Weinstein ("Weinstein"), James Rappoport ("Rappoport"), and others, Plaintiffs do not allege claims for either conspiracy or aiding and abetting conspiracy against C&W,[1] nor do they claim that C&W conspired with any of those individuals or knew of their efforts to conceal material facts related to the River City transaction.  Many of those very same people concealed from and misrepresented  the very same facts to C&W as Plaintiffs claim were withheld from them.  Notably,  Plaintiffs' losses are entirely caused by the actions of one individual—Weinstein—who stole the funds that Plaintiffs now seek to recover from C&W.  That single and independent act of theft (and only that act of theft) directly resulted in Plaintiffs not having the funds they sent for the purchase of two Philadelphia properties[2] or the properties themselves.  That act of theft was a separate and independent act unforeseeable to anyone involved, including to Plaintiffs themselves.  The theft was least of all foreseeable to C&W, whose contact with the River City Property was limited to the preparation of a single appraisal (the "Appraisal") of the property for the internal use of its client, Third-Party Defendant JFK BLVD Acquisition GP, LLC ("JFK").  C&W had no relationship with nor knowledge of Weinstein, Berish Berger or any of the Plaintiffs in this action, and none were intended users of the Appraisal.

---

[1] Plaintiffs' original complaint included a claim for aiding and abetting against C&W, but they voluntarily withdrew that claim in response to C&W's motion to dismiss.

[2] The two projects for which plaintiffs sent funds are the River City Property and a second property located at 2040 Market Street.  Plaintiffs do not assert any claim against C&W for the funds they lost in connection with the 2040 Market deal.

But for the single and individual theft of their funds, Plaintiffs would have had exactly what they bargained for—an interest in the properties, including the River City Property.  C&W is therefore not liable on Plaintiffs' fraudulent misrepresentation claim.  The Court has diversity jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a).

As a third-party plaintiff, C&W asserts a claim for indemnification against JFK pursuant to the terms of the engagement letter under which JFK retained C&W to prepare an appraisal of the property that is at issue in this case.  That contract prohibited JFK from sharing the Appraisal with third parties such as Plaintiffs, and provides for indemnification for any damages arising out of a breach.  C&W also asserts claims for contribution against Third Party Defendants Chaim Zev Leifer ("Leifer") and Heskel Kish ("Kish"), who participated with Weinstein in the fraud perpetrated against Plaintiffs.  The contribution claim alleges that, if C&W is found liable, then Leifer and Kish are likewise liable for all or part of Plaintiffs' damages.  The Court possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over each of C&W's third-party claims because they form part of the same case or controversy set forth in the Amended Complaint.

II.      **STATEMENT OF THE FACTS OF THE CASE**

Responsibility for the losses alleged in the Amended Complaint rests on the shoulders of one man: Eli Weinstein.  Without Weinstein, former Plaintiff Berish Berger never would have been introduced to the River City Property.  Without relying on Weinstein, Berger never would have directed Plaintiffs to send money to or for the River City Property.  And without Weinstein's theft of Plaintiffs' money, Berger would have received precisely what Plaintiffs contracted for all along—shared ownership of the River City Property, with Plaintiffs owning 80% of the Property and Weinstein owning the remaining 20%.  The only reason that Plaintiffs suffered any loss at all was because Weinstein stole their funds and breached an agreement under

3

which he was to acquire the River City Property on behalf of both himself and the Plaintiffs. Simply put, Plaintiffs' case starts and ends with Weinstein.

Plaintiffs' own words and actions throughout past 13 years and five lawsuits confirm that version of events.  Plaintiffs have repeatedly acknowledged that they relied on Weinstein to the exclusion of other, independent sources of information, that they now recognize that Weinstein was a "thief," (*see* MSJ Ex. CW-46, 5-19-2006 Ardenlink Dep., at 29:23-30:1), and that they sent money into a "big black hole" that he operated, (*see* MSJ Ex. CW-8, 5-18-2016 Busystore Dep., at 81:10-14).  In the years immediately following Weinstein's fraud, Plaintiffs pursued litigation against Weinstein and the individuals with whom either Weinstein or Berger interacted. Plaintiffs never brought C&W into those proceedings.  In fact, Plaintiffs expressly stated in that litigation that they "[were] not planning to seek any redress whatsoever from C&W in [their] Philadelphia fraud case[,]" and they asked C&W "to help [them]" prosecute those claims.  (*See* Ex. CW-220, Email from R. Seltzer to B. Corcoran (Apr. 22, 2008).)  C&W did just that, and voluntarily provided Plaintiffs with access to and the trial testimony of its appraisers, the very same individuals whom Plaintiffs now claim defrauded them.

What is more, to the extent that the C&W Appraisal contains any factually inaccurate statement, it does so only because the same individuals and entities that Plaintiffs claim conspired to defraud them withheld information from C&W.[3]  Naselsky, the Cozen O'Connor lawyer retained by Chawla, never provided C&W with the agreement of sale governing the River City acquisition, even though C&W repeatedly asked for it.  Nor did Naselsky disclose to C&W the internal transaction between Chawla and his business partner, Richard Zeghibe ("Zeghibe"),

---

[3] As Plaintiffs themselves acknowledge, Naselsky "deceiv[ed] C&W" in a number of ways, including by "ignor[ing] all requests from McNeil for a copy of the R&F Penn Agreement of Sale" and "provid[ing him with] even more false information" regarding the nature of the transaction.  (*See* Pltfs' Opp'n to Cozen MSJ (ECF 156), at 40, 52.)

on which Plaintiffs now place so much emphasis.  Moreover, neither Rappoport nor Naselsky nor any of his colleagues at either Blank Rome or Cozen O'Connor disclosed the existence of the proposed height limitation, even though all of them plainly knew about it well before C&W issued its final, signed Appraisal.  In short, C&W was every bit as much misled as Plaintiffs.

Plaintiffs ultimately obtained a $33 million judgment—90% against Weinstein and his company, Pine Projects LLC, for fraud and conspiracy, and 10% against Ravinder Chawla and his company, World Acquisition Partners Corp. ("World Acquisition"), for conspiracy only. Most notably, the jury found Weinstein liable for $1 million in punitive damages.  It was not until Plaintiffs encountered difficulty collecting on that judgment that they levied a fraudulent misrepresentation claim against C&W (and Cozen O'Connor and Blank Rome, the two law firms with whom Naselsky was a partner).[4]  This case is little more than an effort to find a deep pocket to pay for a fraud that is properly the responsibility of Weinstein.  The Court should not require C&W to pay for the independent acts of Weinstein, the criminal who actually defrauded Plaintiffs.

**A.**   **The River City Property presented a once-in-a-lifetime opportunity to develop a world-class site in Center City Philadelphia.**

The River City project involved converting an 8-acre tract of land in Center City Philadelphia into a world-class development on the order of New York's World Trade Center or London's Canary Wharf.  The site consists of five contiguous tax parcels along JFK Boulevard and the Schuylkill River.  SEPTA, the regional rail authority, owns a right-of-way over four of the parcels, which is used to carry SEPTA rail lines from Amtrak's 30th Street Station into

---

[4] Weinstein was later indicted and convicted on federal fraud charges.  He is currently serving a decades-long prison sentence.  During the criminal case, it came to light that Weinstein had squandered the vast majority of money stolen from Plaintiffs and more than a dozen other victims.

5

central Philadelphia.  The project was unique in that it involved an air rights development over

the SEPTA rail line and the city streets that separate the parcels, thereby converting five distinct

tracts into a single, continuous mixed-use development spanning several blocks between Center

City and the river.

> 1. **Richard Zeghibe and Ravinder Chawla lay the groundwork to convert the River City Property from parking lots into a generational development project.**

In early 2006, three of the River City parcels were being used as surface parking lots.

The remaining two parcels were almost entirely covered by the SEPTA right-of-way.  Zeghibe, a

Philadelphia businessman who operated a chain of parking facilities, discovered that the owner

of the Property, R&F Penn Center Associates L.P. ("R&F Penn"), was interested in selling it,

and he entered into negotiations to acquire it with the intent to continue using it as a parking

facility.  Zeghibe retained attorney Naselsky, then a partner at Cozen O'Connor P.C. ("Cozen"),

to negotiate the transaction on his behalf.  Naselsky formed Third-Party Defendant JFK as a

special-purpose entity for the acquisition,[5] and, on May 12, 2006, JFK entered into a contract

with R&F Penn to purchase the River City Property for $32.5 million ("the R&F Penn Contract")

on a future date ("the JFK purchase").

Around that time, Naselsky introduced Zeghibe to another of Naselsky's clients, real

estate developer Chawla, for the purpose of exploring whether the Property might be put to more

lucrative use.  Zeghibe and Chawla ultimately reached an agreement under which they would

acquire the Property pursuant to the R&F Penn Contract, create a development design for the

property, conduct the initial due diligence necessary for the development, and sell both the

Property and the development design at a profit.  In 2006, the Philadelphia real estate market was

---

[5] Zeghibe was the only principal of JFK.

6

at the height of its pre-Great Recession performance.  Around that time, just blocks away, the Cira Center was developed directly across the Schuylkill River, and the Comcast Center was developed off of 17th Street.  Zeghibe and Chawla anticipated that the Property—the largest undeveloped tract of land in Center City Philadelphia—could fetch upwards of $100 million when coupled with a world-class development design, and in fact they ultimately received multiple letters of interest for amounts of $100 million and more.

Zeghibe and Chawla retained architect James Rappoport, a partner at Daroff Design, Inc., to design the   development plan.  Rappoport prepared a mixed-use residential and commercial development plan consisting of ten high-rise skyscrapers of between 50-60 stories, several of which would be built above the SEPTA rail lines.  The plan included condominiums, office space, hotel space, and a retail mall, and it also featured public amenities, such as an open promenade spanning the entire complex, a movie theater, a winter garden, access to a waterfront park along the Schuylkill River, and a pedestrian walkway spanning the River and connecting the complex with 30th Street Station.  It was a project designed to change the Center City landscape.  Indeed, the years since 2006 have seen an influx of young professionals and baby boomers returning to major urban centers in record numbers, and, had the River City Project been completed, it would have been perfectly poised to take advantage of those trends.

### 2.    JFK retains C&W to prepare an Appraisal of the Property in connection with the purchase from R&F Penn.

JFK retained several professional firms in connection with the development project, including an environmental consulting firm, a design firm, a civil engineering firm (which also provided surveying services and performed a traffic study), a firm to conduct a utility study, and a law firm (*i.e.*, Cozen, by virtue of their relationship with Naselsky).  Naselsky, on behalf of his

client JFK, also retained C&W to prepare the Appraisal. Naselsky was responsible for retaining C&W on behalf of JFK, which, at the time, was still controlled exclusively by Zeghibe.

On May 18, 2006, C&W Appraiser Gerald McNamara sent Naselsky a copy of C&W's standard retention letter, which provided that the Appraisal would be "prepared for COZEN O'CONNOR and [was] intended only for its specified use." (*See* Ex. CW-20, Proposed Engagement Letter). Naselsky, however, knew that the appraisal was actually being requested by JFK in connection with its purchase of the River City Property under the R&F Penn Contract. He therefore changed the engagement letter to indicate that the appraisal would be prepared for C&W's "Client," which the engagement letter defines as JFK, and JFK's "professionals, investors, and potential lenders," who were permitted to "consider the appraisal without further permission from C&W." (*See* Ex. CW-25, Naselsky Engagement Letter Mark-up.) Those terms were incorporated into the final engagement between C&W and JFK. (*See* Ex. CW-30, Executed Engagement Letter.) The intended use of the Appraisal was expressly limited to "[i]nternal review by the Client, and the engagement letter provided that JFK would "indemnify and hold C&W … harmless" in the event that JFK shared the Appraisal with anyone other than JFK's "professionals, investors, and potential lenders." (*Id.*) The fee for C&W's appraisal services was $15,000.

C&W then set to work. McNamara assigned C&W appraiser Dan McNeil to prepare the first draft of the Appraisal, and McNeil conducted considerable due diligence in connection with that assignment. He met with architect Rappoport to gain a better understanding of the development plan and obtained copies of Rappoport's plans and zoning analysis. Rappoport provided McNeil with a lengthy memorandum outlining the zoning applicable to the project, showing how Rappoport proposed to satisfy all zoning requirements, and addressing all tax

abatement opportunities.  McNeil reviewed the online version of the Philadelphia Code to confirm the zoning applicable to the property.  He also obtained survey drawings prepared by the civil engineering firm that Zeghibe and Chawla had retained, and he conducted in-depth research regarding market trends in Center City Philadelphia and the surrounding area to determine whether the market was likely to support the River City project.  However, McNeil had difficulty obtaining documentation from Naselsky.  Most significantly, despite McNeil's requests, Naselsky never provided McNeil a copy of the R&F Penn Contract.  Because that agreement was not publicly recorded, there was no alternative source from which McNeil could obtain it.

McNeil prepared a draft of the Appraisal, which he sent to Naselsky on June 23, 2006. McNeil testified—and one of Plaintiffs' appraisal experts has confirmed—that it is common practice in the appraisal industry to transmit a draft appraisal to a client because doing so provides an opportunity for the appraiser to solicit additional documents from the client and for the client to provide additional information that the appraiser may not yet have.  C&W's draft appraisal included a preliminary property valuation of $57 million.  That preliminary figure, according to McNeil, was intentionally conservative because he anticipated that the draft Appraisal would be revised once Naselsky had reviewed it and had the opportunity to provide C&W with additional information.

Naselsky sent the draft appraisal to Rappoport, Chawla, and Zeghibe for their review. Unbeknownst at the time to either McNamara or McNeil, Rappoport expressed concern about the valuation, noting that the draft appraisal "ha[d] not taken into consideration the unique nature of the zoning and planning entitlements of this assembled parcel of land."  (Ex. CW-39, Email from Rappoport to Chawla (June 27, 2006).)  The amount of square footage permitted to be built is determined by formulas in the zoning code.  Those formulas tie buildable square footage to the

amount of property area and street frontage that a property has.  Generally speaking, more square footage can be built on properties with greater property area and more linear street frontage.  By treating the five River City parcels as a single assemblage, Rappoport's design took advantage of greater area and linear frontage than any of the parcels would have had individually.   In Rappoport's opinion, that aspect of the plan increased the property value beyond the $57 million in the draft C&W appraisal.   Zeghibe questioned whether C&W had selected the most appropriate comparable sales, and identified for Naselsky several recent sales in Center City with substantially higher per-square-foot prices than the ones on which C&W had relied.  On July 4, 2006, Naselsky requested a meeting with C&W to discuss the valuation approach set forth in the draft Appraisal.

### 3.    McNeil revises the draft appraisal to account for information provided by Naselsky that had not yet been adequately addressed.

In June of 2016, McNeil met with Naselsky.  During their meeting, Naselsky expressed a number of points that he believed McNeil did not adequately consider when valuing the River City project.  These concerns included:

- ***Zoning.***  Naselsky presented Rappoport's concerns regarding total square footage that could be built on the River City parcels when considered in the aggregate, and explained that the aggregate buildable square footage was possible only when the parcels were considered as an assemblage rather than separately.  Thus, the value of the whole was greater than the sum of its parts.

- ***Phased Development.***  Naselsky emphasized that the River City project could be built in phases over a period of decades based on market performance and demand.  Thus, a developer would not need to incur construction costs (and their associated risks) all at once.

- ***Size of Development.***  Naselsky emphasized that the River City site was the largest contiguous parcel of undeveloped land in Center City Philadelphia, and was the only site that could host a project of such magnitude.  McNeil acknowledged that, although he was aware of that fact before meeting with Naselsky, the draft Appraisal "did not put as much emphasis on" this factor as it deserved.  (*See* 6-27-16 McNeil Dep., at 58:24.)

10

- ***Infrastructure.*** Naselsky indicated that, unlike many large-scale developments, the transportation, utility, and other infrastructure components necessary to support the project were already in place and directly adjacent to the property. The property sits only a few blocks from the intersection of the two major interstate highways running through Philadelphia and 30th Street Station (the city's major train station), and already has connections to water, sewer, and high-voltage electric lines. Thus, significant infrastructure expenses would be unnecessary compared to other projects of similar size.

- ***Private Sale.*** Naselsky explained that the River City Property was being transferred in a privately negotiated sale without exposure to the market, and that the sale price was therefore not indicative of market value.

At that meeting, McNeil again asked Naselsky to provide a copy of the contract of sale applicable to the Property. Naselsky told McNeil that the Property was subject to a contract of sale for $50 million, and represented that he would send a copy to C&W. But Naselsky never did so. Nor did he disclose the existence of $32.5 million R&F Penn Contract or the pending height limitation.

In actuality, there *was* a $50 million contract of sale in existence for the property. That contract, dated June 28, 2006, was executed by JFK (which Zeghibe controlled) and World Acquisition (which Chawla owned and controlled). Plaintiffs seek to characterize this contract as a sham designed to artificially inflate the sales value of the River City Property. That characterization, however, is a fiction unsupported by the evidence. Throughout the late spring and early summer, Chawla engaged in extensive efforts to find a buyer for the River City Property. By June 28, 2006 (the date of the $50 million contract), he had already received two offers—one for $100 million and a second for $125 million, though neither of them advanced to closing. Zeghibe was becoming uncomfortable with his exposure fronting development and marketing costs for the project. He had initially entered the R&F Penn Contract to maintain the Property's use as parking lots, and Chawla's aggressive sales efforts seemed to Zeghibe an increasingly unnecessary risk when compared to the stable income (more than $1 million

11

annually) that the Property generated from surface parking.  Chawla therefore offered to purchase the Property from Zeghibe for $50 million in the event that no other buyer was found. In essence, the $50 million agreement between JFK and World Acquisition gave Zeghibe the security to continue the development and marketing effort.

C&W delivered a revised version of the draft Appraisal to Naselsky on July 20, 2006. The revised draft contained multiple changes based on new information that Naselsky presented to McNeil during their early July meeting.  The revised draft valued the Property at $77 million. As to the $50 million contract, the revised draft Appraisal noted that: "Our estimated As Is Market Value ($77,000,000) is significantly higher (54%, $27,000,000) than the reported cost of acquisition. ($50,000,000).  This relationship is, however, considered to be reasonable since the pending conveyance is not occurring consistent with the recognized definition of Market Value…."  (Ex. CW-43, Revised Draft Appraisal, at BERGER-CW-00000253.)  In other words, the reported sale price of $50 million was not as high as it may have been because the sale was not exposed to the market and the possibility of a higher sale amount.  Again, at no point did Naselsky provide C&W with a copy of the R&F Penn Contract, the $50 million contract between JFK and World Acquisition, or notice of the pending height limitation.

C&W made no further revisions after the revised draft was sent to Naselsky as the final Appraisal on July 20, 2006 with an "as of" date of August 1, 2006.  Nonetheless, C&W did not issue its signed Appraisal until November 2006 because JFK failed to pay C&W in a timely manner.  On November 16, 2006, after JFK remitted payment, C&W sent the final, signed Appraisal to Naselsky, who in the interim had moved his practice from Cozen to Blank Rome.

Importantly, neither McNeil nor McNamara knew that Chawla was marketing the Property, and at no point had McNeil, McNamara, or any other representative of C&W met

12

Weinstein, the Plaintiffs, or Berger.  In fact, C&W never even knew that any of those individuals or entities existed.  From retention in late May until delivery of the final copy of the Appraisal, C&W dealt only with its client's lawyer (and, initially, once with Rappaport), and believed that the purpose of the Appraisal was for the internal use of the Client as is stated in the Appraisal.

**B.      Weinstein recruits Plaintiffs to invest with him in purchasing the property from JFK—and then absconds with their money.**

**1.      Weinstein agrees to buy the River City Property from JFK.**

Weinstein, the individual responsible for Plaintiffs' losses, entered the scene well after C&W prepared what became the final version of the Appraisal.  In approximately September 2006, Chawla became acquainted with Weinstein as a potential purchaser for the River City Property following JFK's purchase from R&F Penn, and, on September 26, 2006, Weinstein, Chawla, and Zeghibe signed a deal for Weinstein to purchase the property.  That deal, set forth in a document entitled "Nominee Agreement," provided that Weinstein would purchase the River City Property from JFK for between $62.5 million and $70 million, depending on the amount of square footage that was ultimately approved to be built.[6]  Weinstein was required to post a $12 million non-refundable deposit, which would be used to fund the acquisition of the Property from R&F Penn.  The balance of the $32.5 million needed to close the R&F Penn deal would be financed by a commercial lender.

Following the JFK/R&F Penn closing, title to the River City Property would be placed with a subsidiary of JFK, a special purpose entity known as JFK BLVD Acquisition Partners LP ("JFK Partners").  Weinstein then had two years to deliver the balance of the purchase price (*i.e.*,

---

[6] Weinstein and JFK entered two purchase agreements ("the Weinstein purchase") styled as "nominee agreements," one on September 26, 2006 and a second on December 19, 2006, which superseded the first.  In the second agreement, the parties changed the corporate entities involved in the deal, but the material terms of the sale remained the same.

$62.5 to $70 million, less the $12 million deposit) to JFK, at which point control of JFK Partners (and thus title to the River City Property) would pass to Weinstein. JFK has acknowledged that structuring the deal in this manner was a tax-avoidance strategy. By placing title to the property with JFK Partners, real estate transfer taxes would be assessed on the sale from R&F Penn but not on the sale to Weinstein, since ownership of JFK Partners rather than legal title to the Property would be transferred. The underlying purpose, however, was to transfer title to the River City Property from R&F Penn to JFK, and then to transfer title again from JFK to Weinstein. It was, in other words, two successive sale transactions.

Weinstein then set out in search of a "partner" to join in the purchase of the River City Property from JFK. Through connections in the ultra-orthodox Jewish community, Weinstein solicited Berger, who in turn recruited the Plaintiffs to provide capital for his deal. What no one at the time knew was that Weinstein was at the center of a large scale real estate Ponzi scheme which preyed on members of that community—in short—a religious affinity fraud.

> ## 2. Weinstein lures Plaintiffs into giving him millions of dollars without a formal contract and with minimal documentation showing how the money was to be spent.

Weinstein's efforts, however, did not unfold as a normal commercial transaction might. Both Weinstein and Berger are members of highly conservative sects of Orthodox Judaism (often known as "ultra-Orthodox" sects), and Weinstein preyed on their shared religious identity to instill trust that he would carry out the acquisition of the River City Property and confidence in the deal's success. As Berger has testified, "[i]n the Orthodox Jewish community in which [he] do[es] business, successful relationships are founded upon trust and confidence. A businessman's word is his bond[,] and reputation is vitally important." (*See* Ex. CW-330 Berger Decl., ¶ 5.) Because ultra-Orthodox Jewish communities are highly insular and regulated by

14

their own social norms and enforcement mechanisms, business dealings can be transacted with comparatively little formality when compared with dealings in the secular world.  Reputation, rabbinical endorsements, and standing in the community confer a level of trust and access to social capital not present in ordinary commercial settings.  In particular, charitable giving is a significant social marker of trustworthiness.  The community encourages large numbers of working-age men to pursue full-time religious study to the exclusion of full-time employment, and the community thus depends on charitable giving by its wealthy individuals to support its members and sustain its religious identity.  Weinstein took advantage of these community norms to encourage Plaintiffs (and dozens of other victims) to send him millions of dollars without written agreements or documentation showing how he was spending the money.

Berger first met Weinstein on November 16, 2006 during a meeting at Berger's home arranged by Chaim Zev Leifer, a mutual acquaintance of both men.  Leifer is a descendant of several of the founding rabbis of ultra-Orthodoxy, a position that conferred upon him special standing and respect in ultra-Orthodox communities.  In addition, Berger and Leifer had previously attended Talmudic studies in London under the instruction of Rabbi Yitzchok Kleinman, a respected rabbinical figure in current ultra-Orthrodox circles, who was also a religious leader in Weinstein's home community of Lakewood, New Jersey.  Berger provided charitable support for Kleinman during the time that he taught in London.

During the November meeting, Weinstein described the River City project to Berger and invited him to the United States to see the Property.  Berger accepted that invitation, and, on December 6, 2006, he attended a meeting in Rappoport's office along with Weinstein, Leifer, and Heskel Kish, a fellow follower of ultra-Orthodox Judaism and an employee of Leifer.  No one from C&W was present during that meeting.  During the meeting, Rappoport and Chawla

gave a detailed presentation of the project, including a fly-through animation showing the completed high-rise complex.  Following the meeting, Berger noticed a model of a separate property in Rappoport's office.  Weinstein claimed to also be participating in the development of that property, known as 2040 Market, which involved purchasing a vacant structure on Market Street in Philadelphia and constructing a new residential tower over the existing building.  After going their separate ways, Kish, acting on Weinstein's instructions, sent a three-page fax to Berger's hotel outlining the details of both the River City Property and 2040 Market Street.  The fax represented that Berger could "purchase" both properties and indicated that the closing for River City would occur on December 18, 2006.  (Ex. CW-144, Fax from Kish to Berger (Dec. 6, 2006).)  With regard to River City, Berger has testified repeatedly that he would be purchasing an 80% ownership stake in the Property, and that Weinstein would hold the remaining 20%.  They were partners in the purchase.

On December 8, 2006, one of Chawla's employees emailed the C&W Appraisal to Kish, who provided it to Weinstein, Leifer, and Berger.  C&W did not know about the transfer to Kish, to Leifer, or to Berger, and certainly never authorized any of those disclosures.  Those transfers violated the express provisions of C&W's engagement letter with JFK, which prohibited the sharing of the Appraisal and provided that only JFK's "professionals, investors, and potential lenders" could consider the Appraisal without further permission.  (Ex. CW-30, Executed Engagement Letter.)  Neither Weinstein, Leifer, Kish, nor Berger, let alone any of the Plaintiff entities was a JFK professional, JFK investor or a JFK potential lender. Thus, none of these individuals were entitled to receive the Appraisal.  Indeed, the engagement letter and the Terms and Conditions document setting forth these limitations are physically attached to the Appraisal.

Nonetheless, Kish gave the Appraisal to Berger, who claims to have both read it "cover to cover" and relied upon it in encouraging the Plaintiffs to send funds to Weinstein.

The evidence, however, tells a contrary story.  Despite having read the Appraisal in early December, neither Berger nor any of the Plaintiffs sought C&W's permission to consider it or contacted C&W to discuss the Appraisal or its valuation at any time.  Berger did, however, request that Leifer and Kish conduct research during the ensuing weeks into Weinstein's background and trustworthiness within the ultra-Orthodox Jewish community.  Berger has testified that both Leifer and Kish were "up all night" speaking with individuals who could vouch for Weinstein's character, (*see* MSJ Ex. CW-7, 4-14-2010 Berger Dep., at 78:5-11), and that they reported that Weinstein was very charitable and had an excellent reputation.  Berger also received unsolicited calls from Rabbi Kleinman, who, at Leifer's and Weinstein's prompting, contacted Berger to encourage him to move forward with the River City transaction with Weinstein.  Still, by mid-December, Berger had not acted.

Then, just before midnight on December 17, 2006—the eve of the closing on the R&F Penn/JFK purchase—Leifer hand-delivered a hand-written letter to Berger's home, pleading with Berger to proceed with Weinstein's deal.  The letter, written in rabbinic Hebrew and laden with scriptural allusion and religious idiom, again reiterates Leifer's own reputation and standing in the community, vouches for Weinstein's trustworthiness, and suggests divine provenance for the deal.  Hours later—the day of the closing on JFK's purchase from R&F Penn—former Plaintiff Kilbride Investments Limited ("Kilbride"), at Berger's request, sent $12 million to the title company for that transaction, thus satisfying Weinstein's obligation to provide a non-refundable deposit and securing Weinstein's right to purchase the Property from JFK.  Although Kilbride provided those funds, Berger never sent a copy of the Appraisal to Kilbride.  The Court therefore

17

granted summary judgment to C&W with regard to the Kilbride transfer, holding that Kilbride could not have relied on an Appraisal that its decision-makers never saw.[7] Those funds are not at issue in this case.

Two days later, Plaintiff Busystore Limited ("Busystore") transferred $9.5 million directly to Weinstein for the purpose of purchasing the 2040 Market property. Busystore does not seek to recover those funds in this lawsuit, which is limited to the River City Property.

> **3.    After January 2007, Plaintiffs continued to send funds to Weinstein, even though they did not know of the purpose for which he was requesting the money.**

Approximately two weeks after the Kilbride transfer, Weinstein returned to the well. On January 1, 2007, Weinstein and Berger met, again at Berger's home, and Weinstein requested additional funds. Plaintiffs' Amended Pretrial Memorandum concedes that Berger asked why additional funds were necessary and that Weinstein represented that he "need[ed] more funds to complete the closing of both properties [*i.e.*, both River City and 2040 Market Street]." (Pltfs' Am. Pretrial Memo. (ECF 233), at 20.) Berger himself, however, has testified that the only reason Weinstein gave for requesting additional funds during the January visit was the need to pay off a "still existing $23 million mortgage" on the 2040 Market property. (Ex. CW-330 (Berger Decl.) ¶ 26.) By Berger's own admission, then, Weinstein was not requesting funds in connection with the River City Property, which is the only property that C&W appraised. As such there is no evidence to support the claim that the funds Plaintiffs sent were for the River City Property.

---

[7] Kilbride is owned by a family trust formed under Gibraltar law by Berger's father for the benefit of Berger and Berger's extended family. Berger is not the trustee or a decision-maker for either the trust or for Kilbride. Thus, the Court held that Berger's receipt of the Appraisal was not sufficient to establish that Kilbride relied on it.

Further, by January 1 Berger knew that the closings on both the River City Property and 2040 Market should have already occurred.  By his own admission Berger has decades of experience in the real estate industry and refers to himself as a sophisticated real estate investor who is unquestionably familiar with real estate closing procedures.  Even so, he never asked Weinstein for proof of the acquisitions, for documentation showing the supposedly higher-than-expected closing costs, or to explain how the transactions had closed without the closing costs being fully funded.  He never requested the closing documentation for either deal.  Thus, even if Berger had relied on the Appraisal when he requested that Kilbride provide financing for the River City Property, it was no longer reasonable for him (on behalf of the remaining Plaintiffs) to do so in January 2007, when Weinstein represented that he needed additional funds to pay off a mortgage on 2040 Market and failed to provide any specificity surrounding the costs described during the January 1 meeting.

Nonetheless, Berger chose to continue trusting Weinstein.  Over the next few weeks, at Berger's request, three entities sent a total of $15 million directly to Pine Projects, Weinstein's company.  The details of transfers are as follows:

| Date | Entity | Amount |
|------|--------|--------|
| January 8, 2007 | Ardenlink Limited | $6 million |
| January 8, 2007 | Towerstates Limited | $4 million |
| January 18, 2007 | Bergfeld Co. Limited | $5 million |

Although former Plaintiffs Ardenlink and Towerstates initiated two of those transfers, the Court has already concluded that funds sent by those entities were actually the property of Plaintiff Busystore, and that Busystore is therefore the proper plaintiff for purposes of this suit.

C&W engaged a forensic accountant, who evaluated the bank accounts maintained by Pine Projects and confirmed that Weinstein did not spend any of Busystore's or Bergfeld's

money on River City-related costs.  Accordingly, both because (1) the funds transferred after January 1, 2007 resulted from Berger's sole reliance on Weinstein and (2) there is no evidence that any portion of Busystore's or Bergfeld's funds was directed for or to the River City Property, C&W cannot be held liable for any of the $15 million that Busystore or Bergfeld transferred to Weinstein in January 2007.

### C.    Weinstein's fraud on Berger comes to light, and the Plaintiffs initiate litigation.

#### 1.    Plaintiffs pursue the legitimate cause of their losses:  Eli Weinstein.

In late January 2007, Plaintiffs grew suspicious that Weinstein had received more than $36 million but had failed to deliver any evidence that either the River City or 2040 Market deals had closed successfully.  Berger thus demanded an in-person meeting with Weinstein to review the terms of the two transactions and present documentation of successful closings on both.  Two such meetings were held in late January 2007, but Weinstein failed to produce documentation to satisfy Plaintiffs' concerns.

Following those meetings, Weinstein requested another in-person meeting to attempt to mediate their dispute.  That meeting was held between Berger and Weinstein on February 13, 2007.  Again, it failed to produce any resolution.  On February 19, 2007, Plaintiffs demanded return of all funds sent to Weinstein.  No refund came.  On June 20, 2007, JFK placed Weinstein in default of his obligations under the Nominee Agreement after he failed to make certain required payments toward the purchase of the Property from JFK.[8]

---

[8] Plaintiffs' Amended Pretrial Memorandum discusses at length Chawla's and Zeghibe's efforts to refinance the mortgage on the River City Property and the appraisal that C&W prepared in connection with that refinance.  None of those facts have any bearing on the fraudulent misrepresentation claims against C&W, which is premised solely on the Appraisal that Berger actually received and on which Plaintiffs claim to have relied.

On February 9, 2007, Berger filed a *lis pendens* against the River City Property, and, on March 13 2007, Berger instituted litigation in his individual capacity in this Court against Weinstein and Chawla.  Other individuals and entities involved in both the River City and 2040 Market transactions were later added to that lawsuit.  That lawsuit was resolved against Berger, who lacked standing to pursue the claims on behalf of any of the entities involved.

During 2008, Berger (after receiving assignments from the entities) commenced two additional lawsuits (which were consolidated) against Weinstein, Chawla, Zeghibe, Rappoport, and additional individuals and entities involved in the transactions.  In total, Plaintiffs sued 17 separate individuals and entities whom they claimed were liable for their losses.  That consolidated case proceeded to trial in July 2010, and the jury found only Weinstein and Pine Projects liable for fraud, and Chawla and World Acquisition liable for conspiracy.  The jury awarded $33 million in compensatory damages on those claims.

C&W was not a party to any of the preceding actions.  In fact, Plaintiffs affirmatively requested C&W's assistance in the consolidated action, and they represented that they "[were] not planning to seek any redress whatsoever from C&W in [their] Philadelphia fraud case."  (*See* CWX-127, E-mail from R. Seltzer to B. Corcoran (Apr. 22, 2008).)  Based on those representations, C&W allowed Plaintiffs to interview McNeil and McNamara without anyone else present, and arranged for McNeil to testify on Plaintiffs' behalf at trial.

### 2.    In an effort to find a deep pocket, Plaintiffs retool their case and shift focus to parties that did not wrong them.

Despite Plaintiffs' victory at trial, they claim that they have been unable to collect on their judgment.  Weinstein was indicted and found guilty on federal fraud charges, having defrauded more than a dozen victims of more than $223 million.  He is still in prison.  Chawla

recently declared bankruptcy, though he has since reached a settlement with Plaintiffs totaling $6.5 million.

Thus, in 2012, Plaintiffs commenced the present litigation.  In the operative pleading, the Amended Complaint, they assert a claim of fraudulent misrepresentation against C&W[9] specifically that (1) the Appraisal does not disclose a pending local ordinance that allegedly limited the height of potential construction on the Property; (2) the $77 million valuation was incorrect; and (3) the Appraisal did not comply with the applicable professional standards, the Uniform Standards of Professional Appraisal Practice.  Importantly, Plaintiffs do not, nor can they, claim that C&W acted intentionally to defraud them at any point.  They have never made a claim of conspiracy against C&W.

### D.     None of Plaintiffs' theories of fraud against C&W will ultimately succeed.

At trial, Plaintiffs will be barred from recovery on their fraudulent misrepresentation claim against C&W for the following reasons:

***Absence of Causation.***  As the facts of record establish, Plaintiffs' losses are attributable entirely to Weinstein's failure to satisfy his obligations under the Nominee Agreement and his theft of the funds that Busystore and Bergfeld sent in January 2007.  Without that theft  the River City acquisition would have been completed, and Plaintiffs would have received exactly what they contracted for:  title to the River City Property at the agreed-upon price of between $62.5 and $70 million, with Plaintiffs holding an 80% ownership interest and Weinstein holding the remaining 20%.  Indeed, at trial in the underlying case, Weinstein testified that he and Berger

---

[9] The Amended Complaint additionally stated claims for conspiracy and aiding and abetting conspiracy against Cozen and Blank Rome LLP.  Cozen and Blank Rome have both reached settlements with Plaintiffs.

maintained a real estate partnership for multiple deals, and the jury found that such a partnership existed.

*Lack of Reasonable Reliance on the Appraisal by Plaintiffs.* To prove fraud under Pennsylvania law, a plaintiff must demonstrate both that the defendant intended to induce the plaintiff to rely on a false representation and that the plaintiff reasonably relied on that representation. *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136 n.8 (3d Cir. 2005); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Here, Plaintiffs can show neither. There is no evidence that C&W intended to induce any Plaintiff to take any action. Indeed, to the contrary, C&W's engagement letter prohibited anyone other than JFK's "professionals, investors, and potential lenders" to rely on the Appraisal without C&W's express permission. Plaintiffs do not fall into any of those categories.

To circumvent that reality, Plaintiffs claim that they were part of what they call a "consortium" with Chawla and Zeghibe that was purchasing the River City Property from R&F Penn. (*See* Pltfs' Am. Pretrial Memo. (ECF 233), at 17.) They suggest that, because they were members of that purported consortium, they were *investors in JFK* entitled to rely on the Appraisal rather than *buyers from JFK* who were not. That argument, however, is belied by Plaintiffs' own admission. Most recently, in their Amended Pretrial Memorandum, they state that "Zeghibe and Chawla contracted *to sell* the site to Eli Weinstein for a base price of $62.5 million and, potentially, as much as $70 million." (*See* Pltfs' Am. Pretrial Memo. (ECF 233), at 2 (emphasis added).) If Plaintiffs were the *buyers* from Zeghibe and Chawla, they could not have been *investors* who would hold title alongside them. Berger's testimony regarding the 80/20 arrangement between him and Weinstein further confirms that fact. (*See* MSJ Ex. CW-8, 5-18-2016 Busystore Dep., at 84:23-85:10; MSJ Ex. CW-13, 7-22-2010 Berger Direct Tr. at

36:1-9.)  Together, Plaintiffs and Weinstein would have owned the entire Property outright.  There would have been no remaining ownership interest that another member of the supposed consortium could have held.  Notably, no other party in either this litigation or the prior cases has ever mentioned a buying consortium of the type Plaintiffs now propose, and it was not mentioned on a single occasion at the prior trial in the underlying action.  Plaintiffs themselves have not even identified who the other members of the consortium would have or could have been.  The reason for Plaintiffs lack of specificity is simple:  no consortium existed.  Therefore, Berger was not entitled to consider the Appraisal, let alone rely on it.

C&W could not have foreseen that Plaintiffs would receive the Appraisal much less rely on it.  Both the engagement letter and the Appraisal itself prohibited JFK from sharing the Appraisal without C&W's permission.  In fact, in late December 2006, Chawla disclosed the valuation in a public news article, which McNamara forwarded to C&W's legal department out of a concern that JFK had breached the engagement letter.  When Naselsky later contacted McNamara in connection with a subsequent sale after the Weinstein purchase fell through, McNamara initially refused to discuss further involvement by C&W due to that breach.

Nor could Plaintiffs reasonably have believed they were entitled to rely on the Appraisal.  The document states on its face that individuals other than JFK's "professionals, investors, and potential lenders" were not entitled to rely on it without C&W's permission.  Plaintiffs therefore cannot prove either that C&W intended to induce their reliance or that they reasonably relied on the Appraisal.  Without those essential elements, their fraud claim will fail at trial.

***C&W Was Under No Duty to Disclose the Pending Height Limitation.***  Assuming that Plaintiffs were entitled to rely on the Appraisal (which they were not), Plaintiffs suggest that C&W was under a duty to disclose a pending height ordinance that was signed into law in

24

January 2007 and limited the height of structures that could be built on two of the River City Parcels.  That is incorrect both as a matter of law and as a matter of fact.

To apply such a duty, Plaintiffs rely on a Pennsylvania practice called "the pending ordinance doctrine."  That doctrine allows a municipality to give a pending zoning ordinance the force of law if the municipality has given public notice of its intent to consider the ordinance and held a public hearing on the bill.  *Hill v. Zoning Hearing Bd. of Chestnuthill Twp.*, 626 A.2d 510, 512-13 (Pa. 1993).  Here, the facts are undisputed, and the Court should determine the applicability of the pending ordinance doctrine as a matter of law.  Although the height ordinance was originally introduced on April 20, 2006, it did not originally apply to any of the River City parcels.  On May 25, 2006, the ordinance was amended during a City Council meeting to include two of those parcels.  However, because the amendment occurred on the floor, no pre-hearing notice of the change (as required by the doctrine) was given.  It was not until November 8, 2006 that the City Council gave public notice of its intent to consider the amended bill, and the bill was not brought before the Council until November 28, 2016.  Thus, the earliest date that the bill could have been given effect under the pending ordinance doctrine was more than two weeks after C&W transmitted the final Appraisal to Naselsky and more than three months after C&W completed substantive work on the project.

Additionally, the evidence shows that C&W acted reasonably with regard to its zoning analysis and that other individuals (namely Naselsky) who had actual knowledge of the pending height limitation withheld its existence from C&W.  McNeil consulted the publicly available version of the Philadelphia Code to determine the zoning applicable to the River City Property, and he reviewed, confirmed, and relied on the detailed zoning analysis prepared by Rappoport. Both Rappoport (an architect) and Naselsky (a real estate lawyer), reviewed the original and

revised drafts of the Appraisal, and neither of them ever called the height ordinance to McNeil's attention—even though they knew of its existence in August 2006, several months before C&W issued the signed version of the Appraisal.  There is no legislative tracking service that McNeil could have used to discover the pending ordinance, nor was there any way he could have learned of the bill short of visiting City Hall on a daily basis and asking for all legislative developments since the prior day.  The law does not impose such an onerous duty on appraisers, who are only required to conduct an investigation that is reasonable under the circumstances and are entitled to rely on the work of other subject-matter experts such as architects and real estate attorneys. Here, McNeil  reasonably carried out his duty to investigate zoning issues, and Plaintiffs cannot establish a claim a fraud against C&W based on his failure to learn of the pending height limitation when Rappoport and Naselsky—the very professionals who specialized in zoning matters—did not call it to C&W's attention.

Most significantly, there is not a shred of evidence that a height ordinance would have scuttled the project if imposed. Therefore Plaintiffs' claim that this somehow resulted in Plaintiffs losses is a red herring.

***The Alleged Defects in the Appraisal Lack Merit.***  Plaintiffs Pretrial Memorandum identifies seven alleged defects in C&W's Appraisal, all of which C&W disputes and none of which give rise to liability for fraudulent misrepresentation.  C&W's position on those claims is briefly summarized in the chart below:

| *Plaintiffs' Allegation* | *C&W's Defense* |
| --- | --- |

| Plaintiffs' Allegation | C&W's Defense |
|---|---|
| C&W's Appraisal falsely reported that the River City Property was under contract of sale for $50 million. | The $50 million contract was a legitimate transaction between Chawla and Zeghibe. C&W did not act recklessly because it repeatedly requested the contract of sale from Naselsky, who failed to provide it. There was no alternative source from which C&W could reasonably have obtained the contract, and the Appraisal discloses that C&W never received a copy of the contract. |
| C&W's Appraisal is dated June 23, 2006 when it was actually issued five months later. | Although the date on the final Appraisal was not the date that the Appraisal was actually transmitted to JFK, Plaintiffs do not claim to have been misled by the date of the report. Moreover, the effective date of the Appraisal's valuation is specified as August 1, 2006. That is the operative date for purpose of judging the Appraisal's accuracy. |
| C&W inflated the value of the property by $20 million after being told that JFK, Chawla, Rappoport, and Naselsky were dissatisfied with the original valuation of $57 million. | The change between the draft value from $57 million and the actual reported value of $77 million was the result of legitimate aspects of the Property that Naselsky called to McNeil's attention as not being adequately considered in the draft appraisal. McNeil also prepared the draft appraisal using a conservative initial figure to allow JFK to provide feedback and additional information regard the project. There is no evidence that C&W was told that Chawla, Rappaport and Naselsky were "dissatisfied" with the original valuation. |
| The C&W appraisal incorrectly reported that the Property was not subject to any height restrictions. | As discussed above, C&W's statement regarding the lack of a height restriction was true when made. |
| C&W falsely reported the impact of the rail encumbrance, which allegedly made the River City Project unbuildable. | The Appraisal discussed the railroad right-of-way and explained that it *added value* by interconnecting the parcels into a single, continuous assemblage, which allowed for certain square footage zoning bonuses that would not have been available to any of the parcels individaully. C&W has never suggested that the River City Project was unbuildable due to the right-of-way. |

| Plaintiffs' Allegation | C&W's Defense |
|---|---|
| C&W's market analysis failed to account for the length of time necessary to absorb all condominium inventory that would be created by the project. | C&W's Appraisal analyzed performance of the condominium market over time, and conducted a market analysis that took into account the ability of the project to be built in stages over time. |
| The C&W Appraisal failed to comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"). | The Appraisal complied with USPAP at all times. |

**E.     If C&W is held liable, then JFK will be liable for indemnification, and Leifer and Kish will be liable for contribution.**

C&W anticipates that a jury will return a complete defense verdict in its favor.  However, if C&W is held liable, then JFK, Leifer, and Kish will each be liable to it.  C&W has brought a claim for indemnification against JFK and claims for contribution against Leifer and Kish.

The indemnification claim against JFK derives from C&W's engagement letter with JFK, which provides that "[i]n the event the Client provides a copy of this appraisal to, or permits reliance thereon by, any person or entity not authorized by C&W in writing to use or rely thereon, Client hereby agrees to indemnify and hold C&W … harmless from and against all damages … incurred in investigating and defending any claim arising from … the use of, or reliance upon, the appraisal by any such unauthorized person or entity."  (*See* Ex. CW-30, Executed Engagement Letter, at 5 ¶ 5.)  JFK's transmission of the Appraisal to Kish (and ultimately to Plaintiffs) constitutes a breach of the engagement letter and triggers the indemnification provision of the JFK/C&W agreement.

The contribution claims against Leifer and Kish arise from their participation in connection with the fraud perpetrated by Weinstein.  If C&W is held liable, then Leifer and Kish share responsibility for Plaintiffs' losses because they occupied the best position from which to discover Weinstein's fraud and failed to do so.  Indeed, Berger expressly requested that they

28

conduct due diligence on Weinstein's background for the Plaintiffs' benefit, and they failed to discover Weinstein's true intentions.  If C&W is liable for fraud, then Leifer and Kish are likewise liable for recklessly extolling Weinstein's trustworthiness when they were in a position to discover otherwise.  Neither Leifer nor Kish have appeared in this action and are currently in default.  C&W anticipates requesting a default judgment against them in advance of trial.

## III.   MONETARY DAMAGES CLAIMED

In the event that C&W is found liable on Plaintiffs' fraud claim, it will seek full recovery of those amounts on its indemnification and contribution claims against JFK, Leifer, and Kish.

Plaintiffs' pretrial memorandum demands prejudgment interest and punitive damages on any jury award.  C&W disputes that either of those items of damages are recoverable in this case, as prejudgment interest is not authorized under applicable law and Plaintiffs' Amended Complaint does not contain a demand for punitive damages.

## IV.   WITNESS LIST

C&W anticipates that it may call the following individuals and entities as witnesses at trial.  C&W reserves the right to call any individual listed by any other party, and to call additional individuals not listed for purposes of rebuttal.

### A.   Liability Witnesses

Anthony Argiropoulos
Epstein Becker & Green
150 College Road West, Suite 301
Princeton, NJ 08540

Berish Berger
c/o Brown McGarry Nimeroff LLC
Two Commerce Square, Suite 3420
Philadelphia, PA 19103

Getzel Berger
c/o Brown McGarry Nimeroff LLC
Two Commerce Square, Suite 3420

Philadelphia, PA 19103

Pessie Berger
c/o Brown McGarry Nimeroff LLC
Two Commerce Square, Suite 3420
Philadelphia, PA 19103

Alan Casnoff
P+A Associates
Philadelphia Navy Yard, Building M-7
1321 Intrepid Ave, 2nd Floor
Philadelphia, PA 19112

Ravinder Chawla
1425 Huntington Road
Abington, PA 19001

Cushman & Wakefield of Pennsylvania, Inc.
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Sheldon Eisenberger
Robinson Brog Leinwand Green Geneovese
& Gluck P.C.
875 Third Avenue
New York, NY 10022

JFK BLVD Acquisition GP, LLC
380 Red Lion Road, Suite 202
Huntingdon Valley, PA 19006

Heskel Kish
106 Lealand Road
London N15 6JT

Marc Jonas
Eastburn and Gray PC
470 Norristown Road, Suite 102
Blue Bell, PA 19422

Peter Kelsen
c/o Blank Rome LLP
One Logan Square
130 N. 18th St.
Philadelphia, PA 19103

William Kerr
High Swartz LLP
40 East Airy Street
Norristown, PA 19404

Paula Konikoff
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Peter Korpacz
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Chaim Zev Leifer
16 Portland Avenue
London N16 6ET

Jeffrey Leonard
Cozen O'Connor, P.C.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

James Levy
Hassans International Law Firm
57/63 Line Wall Road
Gibraltar, GX11 1AA

Daniel McNeil
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Gerald McNamara
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Charles Naselsky
617 West 141st Street, Apt. 21
New York, NY 10031

James Rappoport
Daroff Design, Inc.
2121 Market Street
Philadelphia, PA 19103

Chaim Saiman
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Arjan Singh
380 Red Lion Road, Suite 202
Huntingdon Valley, PA 19006

Craig Steinley
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Andrew Teitelman
Law Offices of Andrew Teitelman P.C.
380 Red Lion Road, Suite 103

Huntingdon Valley, PA 19006

Eli Weinstein
FCI Elkton
8730 Scroggs Road
Lisbon, OH 44432

Richard Zeghibe
Patriot Parking
2215 Walnut Street
Philadelphia, PA 19103

### B.   Damages Witnesses

Cushman & Wakefield of Pennsylvania, Inc.
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Ravinder Chawla
1425 Huntington Road
Abington, PA 19001

David Glusman
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Heskel Kish
106 Lealand Road

London N15 6JT

Chaim Zev Leifer
16 Portland Avenue
London N16 6ET

Gerald McNamara
c/o DLA Piper LLP (US)
1650 Market Street, Suite 4900
Philadelphia, PA 19103

Andrew Teitelman
Law Offices of Andrew Teitelman P.C.
380 Red Lion Road, Suite 103
Huntingdon Valley, PA 19006

## V.   EXHIBIT LIST

C&W's list of trial exhibits is attached as Appendix A.  C&W reserves the right

supplement its exhibit list, to use any trial exhibit listed by any other party, and to use additional

materials not listed for purposes of rebuttal.

## VI.   ESTIMATED LENGTH OF TRIAL

C&W estimates that it will require 3-5 days to present its defense to Plaintiffs' claims and

its case-in-chief against JFK, Leifer, and Kish.

**VII.    SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS, AMENDMENTS TO PLEADINGS, AND OTHER MATTERS**

Leifer and Kish are presently in default on C&W's third-party claims against them. C&W anticipates moving for default judgment against Leifer and Kish following trial.

In addition, Plaintiffs have previously reached settlements totaling REDACTED , as follows:

- Rappoport and Daroff Design          REDACTED
- Chawla                                REDACTED
- Blank Rome                            REDACTED
- Cozen                                 REDACTED

In the event that C&W is found liable, it will request an offset of the portion of those settlement amounts attributable to the losses that Plaintiffs allegedly suffered with regard to the January 2007 transfers.  Put differently, Plaintiffs cannot recover from both C&W and a settling defendant for the same $15 million that Plaintiffs transferred to Weinstein in January 2007.

**VIII.   EVIDENTIARY OBJECTIONS**

C&W's objections to exhibits designated by all other parties on the basis of authenticity or grounds other than relevance are set forth in Appendix B, attached hereto.

**IX.    ADMISSIBILITY OF LAY OPINION TESTIMONY**

At present, C&W is unaware of any lay opinion testimony to be offered by any party. C&W reserves the right to supplement this Pretrial Memorandum and to object to such testimony in the effect that any party seeks to offer it at a later time.

Dated:  November 1, 2019                    Respectfully Submitted By:

_/s/ Jayne A. Risk_
Jayne A. Risk
_jayne.risk@dlapiper.com_
Nathan P. Heller
_nathan.heller@dlapiper.com_

Justin E. Kerner
*justin.kerner@dlapiper.com*
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Phone:    (215) 656-3300
Fax:        (215) 656-3301

*Attorneys for Defendant/Third-Party Plaintiff*
*Cushman & Wakefield of Pennsylvania, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on November 1, 2019, I caused a copy of the foregoing pretrial memorandum to be served via email on the Counsel listed below.

>Morrison Cohen LLP
>Attn: Brett D. Dockwell and Danielle C. Lesser
>909 Third Avenue
>New York, NY 10022
>bdockwell@morrisoncohen.com
>dlesser@morrisoncohen.com
>
>Brown Stone Nimeroff LLC
>Attn: Mary Kay Brown, Jami Nimeroff, and Raymond McGarry
>Two Commerce Square,
>2001 Market Street
>Philadelphia, PA 19103
>mkbrown@bsnlawyers.com
>jnimeroff@bsnlawyers.com
>rmcgarry@bsnlawyers.com
>
>*Attorneys for Plaintiffs*
>
>Harkins Cunningham LLP
>Attn: John G. Harkins and Dawn M. Sigyarto
>4000 Two Commerce Square
>2001 Market Street
>Philadelphia, PA 19103
>jharkins@harkinscunningham.com
>dsigyarto@harkinscunningham.com
>
>*Attorneys for Defendant Blank Rome LLP*
>
>Klehr Harrison Harvey Branzburg LLP
>Attn: William A. Harvey, Matthew J. Borger, and Paige M. Willan
>1835 Market Street, Suite 1400
>Philadelphia, PA 19103
>wharvey@klehr.com
>mborger@klehr.com
>pwillan@klehr.com
>
>*Attorneys for Defendant Cozen O'Connor, P.C.*

Law Offices of Andrew Teitelman, P.C.
Attn: Andrew Teitelman
380 Red Lion Rd., Ste. 380
Huntingdon Valley, PA 19006
ateitelman@teitelaw.com

*Attorney for Third-Party Defendant JFK BLVD Acquisition GP, LLC*

By: */s/ Jayne A. Risk*
     Jayne A. Risk

APPENDIX A

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-1 | P-104 | 2/6/06 Letter of Intent for JFK BLVD Properties | COZEN002655-002657 |
| CW-2 | P-107 | JFK Purchase Agreement (original) | COZEN000963-995 |
| CW-3 | P-108 | JFK Purchase Agreement (revision) | COZEN001074-001114 |
| CW-4 | P-102 | 3/14/06 Email from Naselsky to M. Steele et al. re: retention of Cozen by Zeghibe | COZEN001265 |
| CW-5 | P-106 | 3/15/06 Cozen New Matter Intake Form | COZEN001267-1279 |
| CW-6 | P-110 | JFK Purchase Agreement (3/29/06 revision) | COZEN001158-1200 |
| CW-7 | P-109 | JFK Purchase Agreement (3/30/06 revision) | COZEN001115-57 |
| CW-8 | P-111 | 3/30/06 email from Kennedy to Danow forwarding draft Purchase Agreement | COZEN000878-000917 |
| CW-9 | P-112 | Cozen JFK Purchase Agreement (revision 3/30/06) | COZEN001202-001247 |
| CW-10 | P-115 | 3/30/06 Email chain re: formation of JFK BLVD Acquisition Partners, LLC | COZEN001262 |
| CW-11 | P-35 | 4/16/06  (updated 6/14/06) Daroff Design Memo re River City Development—outline of as-of-right development | BERGER3000740-46 |
| CW-12 | P-113 | JFK Purchase Agreement (Katsky Korins draft 5/9/06) | COZEN000997-001027 |
| CW-13 | P-118 | 5/12/06 Agreement of Sale between R&F Penn Center Associates, L.P., as seller, and JFK Blvd Acquisition GP, LLC, as buyer, for River City for $32.5 million, with amendments thereto | BERGER3000429-549 |
| CW-14 | P-114 | JFK Purchase Agreement (draft) | COZEN001028-001073 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-15 | D-68 | Formation Documents for JFK BLVD Acquisition GP LLC | BERGER4069448- 91 |
| CW-16 | P-223A | 12/8/06 Email from Naselsky to Chawla forwarding revised org chart for JFK BLVD Acquisition Partners | BR018953-018954 |
| CW-17 | D-80 | 2/9/07 Financial Statement for Richard and Awilda Zeghibe | BERGER3001596-001598 |
| CW-18 | D-81 | Certificate of the Managers of JFK BLVD Acquisition GP, LLC dated 2/28/07 | BERGER4032782-4033121 |
| CW-19 | None | Closing Binder For Loan Between JFK BLVD and Kennedy Funding | BR1000041-340 |
| CW-20 | D-82 | 2006 Partnership Tax Return for JFK BLVD Acquisition GP LLC | BERGER4001343-4001356 |
| CW-21 | D-83 | 2007 Partnership Tax Return for JFK BLVD | BERGER4141711-4141720 |
| CW-22 | P-61 | 5/18/06 C&W Draft Engagement Letter and Enclosure Email | BERGER-CW-00000006-09 |
| CW-23 | P-62 | 5/18/06 Email from Rappoport to McNeil and McNamara, cc Chawla, Craig Snider and Ilkyu Kim re 23rd and JFK, listing documents to be sent by courier to C&W | BERGER4000802-10 |
| CW-24 | P-63 | 5/22/06 Email from McNamara to McNeil regarding Naselsky response C&W Draft Engagement Letter | BERGER-CW-00000010-11 |
| CW-25 | P-120 | Naselsky Comments on C&W Draft Engagement Letter | BERGER-CW-00000029-31 |
| CW-26 | P-119 | 5/25/06 Email from Craig Snider to Naselsky re engagement letter | BERGER4204105 |
| CW-27 | P-64 | 5/26/06 Snider Email Thread Indicating Approval of C&W Draft Engagement Letter with Revisions by Naselsky | BERGER-CW-00000012-13 |

A-2

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-28 | P-65 | 6/5/06 Email Thread Relaying Naselsky Comments on Draft Engagement Letter to McNamara | BERGER-CW-00000025-31 |
| CW-29 | P-121 | 6/7/06 Naselsky Letter to McNamara Enclosing Signed Engagement Letter | BERGER4000616 |
| CW-30 | P-66 | 6/7/06 Email from McNamara to McNeil, forwarding an executed engagement letter from Naselsky (w/ conditions of engagement attached) | BERGER-CW-00000058-62 |
| CW-31 | P-67 | McNeil Working File | BERGER4000478-4000977 |
| CW-32 | D-65 | C&W Background Information re JFK Properties | BERGER4000609 |
| CW-33 | P-91 | 6/23/06 Email from McNamara to Naselsky Re: Completion of Draft Appraisal | BERGER-CW-00000068 |
| CW-34 | None | 6/23/06 Email from McNamara to McNeil forwarding instruction to deliver draft appraisal to Naselsky | BERGER-CW-00000069-70 |
| CW-35 | P-71 | 6/23/06 Draft Appraisal | BERGER-CW-00000093-00000234 |
| CW-36 | P-122 | 6/23/06 Email chain between Zeghibe, Naselsky and Chawla re JFK appraisal | BERGER4204305-06 |
| CW-37 | P-123 | 6/24/06 Email string from Chawla to Zeghibe and Naselsky, cc to Lilienfield, re comments to C&W's draft River City appraisal report | BERGER3003429 |
| CW-38 | P-126 | 6/27/06 Email chain between Rappoport, Chawla, and Zeghibe re JFK appraisal | BERGER4200789-91 |
| CW-39 | None | 6/27/06 Email from Rappoport to Chawla regarding aspects of River City Property not represented in Draft Appraisal | BERGER4011393-94 |
| CW-40 | P-68 | 7/4/06 Naselsky Email Thread Requesting Meeting with McNamara | BERGER-CW-00000071-72 |

A-3

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-41 | P-72 | 7/5/06 Email from McNamara to McNeil Regarding Development Value | BERGER-CW-00000073-74 |
| CW-42 | P-129 | 7/5/06 Email string from McNamara to Naselsky, cc to Steele, re Naselsky's request to meet to discuss the draft appraisal report (advising that McNamara will be on the vacation the next week) | BERGER-CW-00000075-76 |
| CW-43 | P-73 | 7/20/06 Email from McNeil to Naselsky, attaching a revised draft C&W 2006 draft appraisal report - $77M (changes/modifications in bold) | BERGER-CW-00000235-365 |
| CW-44 | None | 9/20/06 Email from W. Martin to A. Teitelman, cc to Argiropoulos, forwarding suggested edits to the Contingent Promissory Note between WAPC and Weinstein (w/attachment) | BR009106-08 |
| CW-45 | P-75 | 10/16/06 Email from McNamara to Snider Regarding Non-Payment of Invoice | BERGER4206187-88 |
| CW-46 | P-76 | 10/30/06 Email from McNeil to Singh regarding Exposure Time | BERGER-CW-00000370 |
| CW-47 | P-77 | 10/30/06 Email from McNeil to McNamara Forwarding Singh Email re: Exposure Time | BERGER-CW-00000371 |
| CW-48 | P-79 | 11/16/06 Email from McNeil to Baer Re: Replacement of Photographs and Charts in Final Appraisal | BERGER-CW-00000655-791 |
| CW-49 | P-94 | 11/16/06 Email Chain re Delivery of JFK Final Appraisal to Naselsky | BERGER-CW-00000792-794 |
| CW-50 | P-78 | 11/16/06 Email from McNeil to O. Baer, attaching a copy of the final 2006 C&W appraisal - $77M | BERGER-CW-00000372-518 |
| CW-51 | P-93 | Final C&W appraisal report for JFK GP—addressed to Naselsky at Cozen - $77M (dated 6/23/06; transmitted 11/16/06) | BERGER4210692-837 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-52 | P-200 | 11/17/06 Email chain re JFK final appraisal and $77 million appraised value | BR008119-22 |
| CW-53 | P-201 | 11/17/06 Email from Baer to Naselsky re C&W's FP-inal Appraisal (request for the Cover page to be re-addressed to Naselsky at Blank Rome) | BR007938-41 |
| CW-54 | P-80 | 11/23/06 final C&W appraisal report for JFK GP- addressed to Naselsky at Blank Rome - $77M | BR000866-1012 |
| CW-55 | None | 2/8/07 Email from McNamara to Naselsky regarding disclosure of appraisal report | BERGER-CW-00000082-83 |
| CW-56 | D-66 | 5/15/06 Email from Rappoport to Chawla forwarding draft memo re River City Development | BERGER4000782-4000790 |
| CW-57 | None | 7/10/06 Letter from Chawla to Jack Koppel re C&K LLC's offer letter to purchase River City Property | BERGER4198133-34 |
| CW-58 | D-72 | 7/11/06 Letter from Chawla to Jack Koppel re Gindy's offer letter to purchase River City Property | BERGER3004779-80 |
| CW-59 | P-38 | 7/26/06 Nominee Agreement between JFK GP LLC and JFK Philadelphia LLC | BR009620-009634 |
| CW-60 | None | 7/26/06 Email from Teitelman to Zeghibe re C&K LLC's offer letter to purchase River City Property | BERGER4051418-22 |
| CW-61 | None | 7/26/06 Email from Rappoport to Naselsky et al. Enclosing Revised Zoning Analysis | BERGER4026267-77 |
| CW-62 | None | 8/4/06 First Amendment to Nominee Agreement between JFK GP LLC and JFK Philadelphia LLC | BR009616-19 |
| CW-63 | P-132 | 8/11/06 Draft Agreement of Sale between JFK GP LLC and WAP | BR009901-33 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-64 | None | 8/11/06 Email from Naselsky to J. Kennedy enclosing Agreement of Sale between JFK GP LLC and WAP | BR009869 |
| CW-65 | D-84 | 10/20/06 Email from Teitelman to Chawla forwarding JFK Nominee Agreement | BERGER4046331-341 |
| CW-66 | P-140 | 11/13/06 email from A. Singh to Weiner and Wolfer of KFI, cc to Chawla, Naselsky and Teitelman, attaching executed 6/30/06 nominee agreementNone$55 million (D-70) | BERGER4036329-40 |
| CW-67 | P-82 | 11/18/06 Email from McNamara to Urguhart-Bradley quoting from GlobeSt.com article re River City | BERGER-CW-0000079-80 |
| CW-68 | D-76 | 12/21/06 Term Sheet for River City to Rosdev Developers | BERGER3001694 |
| CW-69 | None | 12/21/06 Email Chawla to Weinstein et al. Forwarding Globe St. Article | BERGER4202143-4202144 |
| CW-70 | D-71 | 7/9/07 Purchase Agreement between JFK Partners LP and Phila JFK ARC, LP | BERGER3003991-4007 |
| CW-71 | D-77 | 1/13/08 Letter from Robert Ambrosi to Chawla re proposed joint venture between ARC Properties and JFK | BERGER3002954-55 |
| CW-72 | D-78 | 4/10/08 Letter of Intent from JFK Partners to ARC Properties | None |
| CW-73 | P-133A | 12/17/09 Letter from Louis Lipsky to Daniel Boglioli, Esq. attaching 6/28/07 Agreement of Sale between JFK GP LLC and WAP | BERGER3001076-1110 |
| CW-74 | D-79 | Defendant Chawla's 12/24/09 Responses and Objections to Plaintiffs' First Set of Financial Interrogatories (Berger II) | BERGER3002008-28 |
| CW-75 | None | 5/14/10 Sketches and Calculations Prepared by James Rappoport re River City | BERGER3006081-125 |
| CW-76 | P-158 | Undated Reinstatement of Nominee Agreement between JFK GP LLC, Zeghibe and JFK Philadelphia LLC | BERGER4198536-39 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-77 | Excerpt of D-114 | JLL Offering Memorandum | BERGER-ARH-0001-0183 |
| CW-78 | None | Bill No. 060292, introduced 4/20/06, by Councilmember Clarke | BR012808-9 |
| CW-79 | None | 5/11/06 City Council Notice re: Bill No. 060292 | BR005921 |
| CW-80 | None | 5/11/06 Journal of the City Council of Philadelphia | BERGER5000243-71 |
| CW-81 | None | Bill No. 060292-A (as amended on floor 5/25/06) | BR012176-8 |
| CW-82 | None | 6/8/06 Council of the City of Philadelphia meeting minutes | None |
| CW-83 | None | 6/8/06 Journal of the City Council of Philadelphia | BERGER5000272-337 |
| CW-84 | None | 6/26/06 Email from Rappoport to Naselsky regarding retention of various development professionals | BERGER4011386-87 |
| CW-85 | None | 7/21/06 Email from Rappoport to C. Wright, B. Hathaway, cc to Chawla and Zeghibe, re: Philadelphia River City zoning and planning | BERGER4024816-7 |
| CW-86 | None | 8/9/06 Email string between Naselsky and Rappoport re• filing with L&I | BR012244-5 |
| CW-87 | None | 8/10/06 Email from Chawla to CBRE, Naselsky, Zeghibe, A. Singh and T. Singh re: financing based upon $50 million contract price | BR009935 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-88 | P-147 | 8/11/06 Memorandum from Naselsky to Amengual, cc to Zeghibe re River City properties (requesting a letter of authorization for JFK GP to file an application with L&I) | BR012227- 8 |
| CW-89 | None | 8/21/06 Letter from Rappoport to Citizens of Philadelphia and Mayor Street | BERGER4026481-2 |
| CW-90 | P-36 | 8/21/06 Email string from Naselsky to Kerr, forwarding an email from Rappoport re comments to the proposed overlay | BR012905-6 |
| CW-91 | P-150 | 8/23/06 Email from Naselsky to Amengual, Schwartz, cc to Chawla and Zeghibe re impact of height control ordinance, attaching Rappoport's 8/23/06-dated square foot analysis of parcels D and E) | BR012158-61 and attached plot plan with no bates number |
| CW-92 | P-39 | 8/23/06 Email from Naselsky to Rappoport, with copies to Kerr, Chawla and Zeghibe, re information needed for the comfort letter | BR012936 |
| CW-93 | P-40 | 8/23/06 Email from Naselsky to Ken, forwarding multiple documents re Rappoport's master plan | BR012911-30 |
| CW-94 | None | 8/24/06 Email string between Rappoport and Naselsky re Rappoport's zoning analysis for River City | BR013000-16 |
| CW-95 | P-162 | 8/24/06 Email chain between Rappoport, Chawla and Naselsky re comfort letter (showing 12 MM SF with height limitation) | BR009348-009363 |
| CW-96 | P-165 | 8/25/06 email from Chawla to Naselsky and Krawiecki outlining deal points for JFK | BR009337 |
| CW-97 | P-167 | 8/29/06 email from Sahaya to Chawla outlining verbal agreements at meeting re JFK and 2040 Market | BERGER3000923-24 |

A-8

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-98 | P-169 | 8/31/06 email string between Chawla and Naselsky re JFK and 2040 opinion/comfort letter | BR009309-10 |
| CW-99 | P-47 | 9/2/06 Email from Naselsky to Kerr, forwarding a table and narrative from Rappoport providing a zoning gross floor area summary per parcel | BR013039-42 |
| CW-100 | P-152 | 9/7/06 email from Rappoport to Naselsky re River City (inc. filing with L&I by 9/15/06), with Naselsky's notes | BR000567-69 |
| CW-101 | P-49 | 9/8/06 Draft Memo from Naselsky to Kerr re River City | BR012055-60 |
| CW-102 | None | 9/12/06 Email from Chawla to A. Singh, forwarding an email string between P. Levy and Rappoport re: the Parkway Height Controls | BERGER4201640-2 |
| CW-103 | None | 9/12/06 Email string between Rappoport and M. Soffer (Director, Development Planning Division) re: River City | BERGER40250151-8 |
| CW-104 | P-45 | 9/12/06 Email string between Rappoport and Naselsky re filing zoning/permit application before the clock restarts for Mayoral action | BR009236 |
| CW-105 | None | 9/13/06 Email from Naselsky to Rappoport, cc to Kerr, Chawla and Zeghibe, attaching mark-up to Rappoport's transmittal letter to L&I and zoning application | BR013101-09 |
| CW-106 | None | 9/14/06 Application for Zoning/Use Registration Permit (Application No. 29743, stamped 9/15/06 @ 9:22 a.m.) | BR000434 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-107 | None | Application for City of Philadelphia Zoning/Use Registration Permit dated 9/14/06 | BR006164-6212 |
| CW-108 | None | 9/14/06 Council of the City of Philadelphia Resolution (No. 060662) | None |
| CW-109 | None | 9/14/06 City of Philadelphia Communication re: Bill No. 060292-A | BERGER5000338 |
| CW-110 | None | 9/14/06 City of Philadelphia Resolution No. 060662 re: Bill No. 060292-A | BERGER5000339 |
| CW-111 | None | 9/15/06 Email string between Rappoport and Naselsky re: Parkway Height Control Ordinance | BR011894-5 |
| CW-112 | None | 9/18/06  Email from Naselsky to Amengual, cc to Chawla and Zeghibe, re: Third Amendment to the 5/12/06 Agreement of Sale | BERGER4205584-5 |
| CW-113 | None | 9/22/06 Email from Naselsky to Chawla, cc to Zeghibe and Teitelman, attaching the River City zoning memo | BR011320-6 |
| CW-114 | P-51 | 9/25/06 Email from Rappoport to Naselsky forwarding draft 9/8/06 memo | BR011825-31 |
| CW-115 | P-52 | 9/25/06 email from Naselsky to Rappoport forwarding his edits to draft 9/8/06 memo | BR009039-46 |
| CW-116 | None | 9/28/06 Email string between Naselsky and Amengual re: Default of the 5/12/06 Agreement of Sale and Parkway Height Control Ordinance | BR011651-3 |
| CW-117 | P-53 | 10/5/06 email from Laura Spina forwarding corrected 5-18-06 PCPC minutes to Kerr | BR013187-203 |

A-10

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-118 | None | 10/6/06 email chain between Rappoport, Chawla and Naselsky re meeting with SEPTA and L&I enforcement of the 125 foot ordinance | BERGER3001660-61 |
| CW-119 | P-184 | 10/6/06 Email from Naselsky to Rappoport re L&I | BR011577-8 |
| CW-120 | P-185 | 10/6/06 email from Noonan to Naselsky re height ordinance | BR008834 |
| CW-121 | P-187 | 10/11/06 email from Naselsky to Grasso re status of height ordinance | BR011550-51 |
| CW-122 | P-59 | 11/6/06 Blank Rome Zoning Memo (Final) | BR011321-326 |
| CW-123 | P-204 | 11/20/06 email from Rappoport to Chawla, Zeghibe and Naselsky forwarding notes for discussion as River City was placed on agenda of meeting with the mayor and governor | BR007925-027 |
| CW-124 | P-202 | 11/20/06 Email from Naselsky to Chawla and Zeghibe, cc to Teitelman, re overlay bill, potential carve out for River City | BR018932 |
| CW-125 | P-222 | 11/22/06 Email chain with Levy, Sklaroff, Kelsen, Kerr and Chawla re height ordinance | BR007253-55 |
| CW-126 | P-208 | 11/22/06 Email string from Chawla to Teitelman and Wright, cc to Zeghibe and H. Chawla, forwarding an email from Naselsky re overlay bill | BERGER3000004-5 |
| CW-127 | P-210 | 11/22/06 Email string from Chawla to Teitelman, Wright, and A. Singh forwarding an email from Naselsky re proposed changes to the Parkway Height Controls (w/ least impact) | BERGER3001724-27 |
| CW-128 | None | Bill No. 060292-A (as Amended in Committee 11/28/06) | BERGER5000663-4 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-129 | P-22 | 11/28/06 Email from Naselsky to Chawla and Zeghibe, with a copy to Teitelman and Rappoport, forwarding an earlier email Naselsky sent to Zeghibe re the Benjamin Franklin Parkway Overlay Ordinance | BR011260-62 |
| CW-130 | None | 11/30/06 Email exchange between Rappoport and Naselsky re: discussions with the zoning department examiner re: the zoning application | BR007627-8 |
| CW-131 | None | 12/1/06 Email from Chawla to Teitelman and Wright, forwarding earlier emails from Rappoport and M. Cobb re: Bill No. 060292-A | BERGER3010660-2 |
| CW-132 | None | 12/6/06 Email from Chawla to Zeghibe and Teitelman, forwarding an earlier email from Rappoport to W. Carter re: Councilman Clarke's Parkway height restriction ordinance | BERGER4049924-5 |
| CW-133 | P-220 | 12/7/06 email from Rappoport to Chawla and Naselsky forwarding letter from Clarke re height ordinance | BERGER4144582-83 |
| CW-134 | P-98 | 12/14/06 Daily News article titled "River City Stirs A Fuss" | None |
| CW-135 | None | 12/14/06 Council of the City of Philadelphia meeting minutes | None |
| CW-136 | P-209 | 12/22/06 Email chain discussing attached letter from Karen Daroff to Ed Rendell's assistant re height ordinance | BERGER3001722-23 |
| CW-137 | None | 1/18/07 Email string between Chawla and Rappoport re: River City square footage | BERGER3004854-5 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-138 | None | Bill No. 060292-A, signed by the Mayor on 1/23/07 | None |
| CW-139 | D-86 | Certified Translation of 6/5/06 Contract of Agreement between Guttman and Berger for ten buildings in Philadelphia | BERGER5000730-32 |
| CW-140 | D-87 | Certified Translation of 6/26/06 Contract of Agreement between Yitzchak, Guttman and Berger for 315 N. 12th St. in Philadelphia | BERGER5000733-37 |
| CW-141 | P-38 | 7/26/06 Nominee Agreement between JFK GP and Zeghibe, as nominee, and JFK Philadelphia LLC, as owner, regarding the purchase of River City for the transaction price of $67 5 million (executed by JFK GP & Zeghibe) | BR009620-34 |
| CW-142 | D-32 | Philadelphia River City brochure from WAP/Daroff Designs (8/29/06) (black and white) | BERGER3000318-349 |
| CW-143 | D-107 | 8/29/06 Daroff Design booklet titled: World Acquisition Partners Corporation presents Philadelphia River City (color) | None |
| CW-144 | D-33 | Fax from Weinstein to Heskel Kish for Berger re 2040 Market and River City projects showing fax header | BERGER3000281-83 |
| CW-145 | P-180 | 9/20/06 Email chain between Argiropoulos, Teitelman and Naselsky re River City | BR011853-55 |
| CW-146 | P-182 | 9/20/06 Email chain between Naselsky, Chawla and Teitelman re River City | BR009080-82 |
| CW-147 | None | 9/20/06 Email from W. Martin to A. Teitelman, cc to Argiropoulos, forwarding suggested edits to the Contingent Promissory Note between WAPC and Weinstein (w/attachment) | BERGER4213067-74 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-148 | None | 9/21/06 Email from Argiropoulos to Sahaya, forwarding an email to Teitelman, Chawla, Zeghibe, A. Singh, Weinstein, and R. Neumann re: deposit monies for River City | BERGER4194042-45 |
| CW-149 | P-181 | 9/21/06 Email chain between Naselsky, Teitelman and Argiropoulos re River City | BR009073-76 |
| CW-150 | P-177 | 9/26/06 Nominee Agreement between WAP and Weinstein | BERGER4188683-700 |
| CW-151 | D-2 | 9/26/06 Nominee Agreement between WAPC, as nominee, and Weinstein, as owner, to take ownership of River City for the transaction price of up to $70 million | BERGER3008715-28 |
| CW-152 | D-3 | 9/26/06 Contingent Promissory Note and Security Agreement between WAPC, as holder, and Weinstein, as obligor | BERGER3002557-60 |
| CW-153 | None | 10/5/06 Email from Chawla to Zeghibe enclosing Weinstein financial materials | BERGER3003655-67 |
| CW-154 | P-191 | 10/21/06 Email chain between Naselsky and Chawla re nomination agreement | BR008660-61 |
| CW-155 | P-192 | 10/23/06 email from Hilary Sacks to Naselsky forwarding summary of R&F Penn Center and JFK Group Agreement of Sale | BR006144-48 |
| CW-156 | None | 10/25/06 email from Teitelman to Naselsky, cc Chawla, A. Singh re nominee agreement (attaching 6/30/06 Nominee Agreement) | BR008585-97 |
| CW-157 | P-193 | Undated Draft summary of R&F Penn Center and JFK Group Agreement of Sale | BR000509-12 |
| CW-158 | P-194 | Undated Draft charts regarding nominees | BR000497-508 |
| CW-159 | D-73 | 11/3/06 fax from Krawiecki (CBRE) to Singh attaching Weinstein's resume | BERGER3003671-374 |
| CW-160 | None | 11/4/06 Email from Chawla to Zeghibe re: Weinstein's resume | BERGER3000570-71 |

A-14

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-161 | P-199 | 11/16/06 draft commitment from Kennedy Funding to Chawla for $45 million | BR000625-645 |
| CW-162 | None | 11/22/06 Commitment from KFI to WAPC re: $35 million financing request | BERGER4140493-507 |
| CW-163 | None | North Fork Bank statement re Pine Projects LLC (11/30/06- 12/31/07) | BERGER4044256-70 |
| CW-164 | None | 12/1/06 Email from Naselsky to KFI, cc to Chawla, Zeghibe and Teitelman, re: Naselsky's role | BR011204-5 |
| CW-165 | None | 12/8/06 Email from Chawla to Weinstein forwarding email from Singh to Kish with Appraisal Excerpts | BERGER3001184-92 |
| CW-166 | None | 12/8/06 Email from Chawla to Weinstein forwarding email from Singh to Kish with Complete Appraisal | BERGER3005820-969 |
| CW-167 | P-228 | 12/12/06 Email from Teitelman to Martin and Argiropoulos, cc to Chawla, Zeghibe, Naselsky, A. Singh, T. Singh, B.Perini, Graff, Neumann, Sahaya re Settlement Notice - JFK (Philadelphia River City)—closing will take place on 12/18/06 at Blank Rome | BR007294-95 |
| CW-168 | P-227 | 12/13/06 Email chain between Teitelman, Argiropoulos and Naselsky re settlement on River City | BR014189-93 |
| CW-169 | D-7 | 12/15/06 email chain from Argiropoulos to Teitelman and Chawla requesting confirmation of $20 million wire from Weinstein to Montgomery Abstract | BERGER3008666 |
| CW-170 | D-8 | 12/15/06 Email from Teitelman to multiple recipients, including Kennedy Funding, Inc. ("KFI"), regarding Weinstein wire confirmation, attaching a letter from Weinstein to Chawla, confirming Weinstein's wire of $13.5 million for JFK | BERGER3008685-86 |

A-15

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-171 | None | 12/16/06 Email exchange from J. Weiner to Teitelman, cc to Chawla, R. Krawiecki, T. Singh, A. Singh, B. Perini, re: confirmation from Fox Rothschild of wire for River City from Weinstein | BERGER4034590-92 |
| CW-172 | D-34 | 12/17/06 Letter from Chaim Leifer to Berger (written in Hebrew) | BERGER4209759-60 |
| CW-173 | D-40 | 12/18/06 Letter from Kilbride to ABN AMRO Bank re: $12 million debit to Montgomery Abstract Corp. Settlement Trust Account | BERGER3005976-79 |
| CW-174 | None | 12/18/06 Email from Chawla to Zeghibe containing confirmation of $12 million wire | BERGER3003712-13 |
| CW-175 | P-233 | 12/19/06 Email chain between Singh, Naselsky and Teitelman forwarding the confirmation from ABN Amro Bank of the $12 million wire | BERGER4034514-17 |
| CW-176 | D-6 | 12/19/06 Nominee Agreement between JFK BLVD Acquisition Partners, LP, as nominee, and Weinstein, as owner, to take ownership of River City for the transaction price of up to $70 million | BERGER3008737-50 |
| CW-177 | D-75 | 12/19/06 Assignment of Agreement of Sale between JFK BLVD Acquisition GP, LLC (as assignor) and JFK BLVD Acquisition Partners, L.P. (as assignee) re: 5/12/06 Agreement of Sale as amended | BERGER3002554-55 |
| CW-178 | None | 12/19/06 Email from Teitelman to Argiropoulos and Martin, cc to Chawla, Zeghibe, Krawiecki, A. Singh, T Singh and Weinstein, re: Revised Nominee Agreement | BERGER3000638 |
| CW-179 | None | 12/19/06 letter agreement from JFK GP to R&F Penn to adjourn the closing date to 12/20/06 | BR016339 |

A-16

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-180 | D-11 | 12/20/06 letter from Argiropoulos to Kennedy Funding re $12 million wired by Weinstein | BERGER1009267 |
| CW-181 | D-9 | 12/20/06 Email from Argiropoulos to Teitelman, Martin and Weinstein, with copies to Chawla, CBRE Melody, WAPC, and assurance abstract re: River City/ Weinstein's escrowed funds | BERGER4213895 |
| CW-182 | P-130 | 12/20/06 Settlement Statement re JFK GP's purchase of River City from R&F Penn | BR017215-16 |
| CW-183 | None | 12/20/06 letter from Argiropoulos to KFI, incorporating KFI's comments and adding a waiver to KFI on behalf of Weinstein re: River City Project | BERGER1009264-66 |
| CW-184 | P-270 | North Fork Bank statement re Pine Projects LLC (12/31/06- 01/31/07) | BERGER4044271-88 |
| CW-185 | None | 1/2/07 Email from Teitelman to Chawla and Zeghibe, cc to C. Wright, Rosenberg, Herskowitz, J.Morris, attaching draft Agreement of Sale between JFK LP and Rosdev | BERGER3004982-5007 |
| CW-186 | D-52 | 1/8/07 Ardenlink Customer Order Form to Barclays International Payment Service, requesting wire to Pine Projects in the amount of $6 million | BERGER3002941 |
| CW-187 | D-57 | 1/8/07 Towerstates Customer Order Form to Barclays International Payment Service, requesting wire to Pine Projects in the amount of $4 million | BERGER1008506 |
| CW-188 | None | 1/12/07 through 2/4/07 text messages from E. Weinstein to B. Berger | BERGER4212723 |
| CW-189 | D-62 | 1/18/07 Bergfeld Customer Order Form to Barclays International Payment Service, requesting wire to Pine Projects in the amount of $5 million | BERGER1008504 |

A-17

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-190 | D-14 | 1/29/07 fax from Argiropoulos to Berger memorializing discussion with Weinstein | BERGER3005079-80 |
| CW-191 | D-90 | 1/29/07 faxed correspondence from Argiropoulos to G. Berger re Philadelphia transactions, attaching nominee agreement, contingent promissory note, additional closing costs and closing statement | BERGER3002513-50 |
| CW-192 | None | 1/31/07 Email from Argiropoulos to Weinstein, confirming the terms of Weinstein's agreement with Berger | BERGER1008232 |
| CW-193 | None | 2/1/07 Letter from Weinstein to Berger re: Weinstein's commitment to Berger | BERGER3003958 |
| CW-194 | D-27 | 2/7/07 email from Argiropoulos to Weinstein forwarding notice from Montgomery Abstract that the escrow agreement is null and void as check was returned | BERGER4113614 |
| CW-195 | None | 2/2/07 Email from Argiropoulos to Eisenberger, cc to Weinstein, attaching draft operating agreement | BERGER3002607-32 |
| CW-196 | None | 2/2/07 Email from Argiropoulos to Weinstein re: status | BERGER4211968 |
| CW-197 | None | 2/6/07 email from Kish to Weinstein requesting information about JFK | BERGER4129182 |
| CW-198 | D-26 | 2/6/07 Letter from Argiropoulos to Sheldon Eisenberger re: Weinstein and Berger (termination of any and all business relationships) | BERGER3008198-200 |
| CW-199 | None | 2/7/07 Email string between Argiropoulos and Eisenberger, cc to Weinstein, re: agreement between Weinstein and Berger/settlement | BERGER3008186-88 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-200 | None | 2/8/07 Email between Argiropoulos and Weinstein forwarding an email exchange between Argiropoulos and Eisenberger re: agreement between Weinstein and Berger/settlement | BERGER4113633-36 |
| CW-201 | None | 2/12/07 Letter from Eisenberger to Argiropoulos re: Berger and Weinstein | BERGER3003959-60 |
| CW-202 | None | 2/16/07 Email from Ormonde to Weinstein, cc to Bellet, Eisenberger and Argiropoulos, re: Berger and Weinstein | BERGER4211974-5 |
| CW-203 | None | 2/19/07 Email from Ormonde to Eisenberger and Bellet, forwarding an email to Argiropoulos in response to Argiropoulos' 2/16/07 email | BERGER1008226 |
| CW-204 | None | 2/19/07 Email from Ormonde to Weinstein, cc to Eisenberger, attaching a Letter from Berger to Weinstein re: Acceptance of Termination | BERGER4212275-6 |
| CW-205 | None | 2/19/07 Letter from Eisenberger to Argiropoulos, attaching a Letter from Berger to Weinstein re: Acceptance of Termination | BERGER3002707-9 |
| CW-206 | None | 2/19/07 Letter from Berger to Weinstein requesting return of funds | BERGER3000711 |
| CW-207 | None | 2/28/07 North Fork Bank Statement for Acct # 5484001291 for the period of 1/31/07 to 2/28/07 | BERGER4044289-303 |
| CW-208 | None | 3/13/07 Email string from Argiropoulos to Weinstein, forwarding an email exchange between Argiropoulos and Eisenberger re: Weinstein and Berger | BERGER4113748-50 |
| CW-209 | None | 3/25/07 Email from Kish to Weinstein | BERGER4129183-85 |
| CW-210 | None | 3/31/07 North Fork Bank Statement for Acct # 5484001291 for the period of 2/28/07 to 3/31/07 | BERGER4044304-21 |

A-19

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-211 | D-31 | 3/31/07 North Fork Bank Statement re: Pine Projects LLC | (BERGER3000060 |
| CW-212 | None | 4/30/07 North Fork Bank Statement for Acct # 5484001291 for the period of 3/31/07 to 4/30/07 | BERGER4044322-39 |
| CW-213 | None | 5/15/07 Letter from Teitelman to Weinstein/Pine Projects and Argiropoulos re: Notice of Default re: 12/19/06 Nominee Agreement | BERGER3009360-2 |
| CW-214 | None | 5/31/07 North Fork Bank Statement for Acct # 5484001291 for the period of 4/30/07 to 5/31/07 | BERGER4044340-59 |
| CW-215 | None | 6/20/07 Letter from Teitelman to Weinstein/Pine Projects and Argiropoulos re: Notice of Default re: 12/19/06 Nominee Agreement | BERGER4003606-08 |
| CW-216 | None | 6/30/07 North Fork Bank Statement for Acct # 5484001291 for the period of 5/31/07 to 6/30/07 | BERGER4044360-75 |
| CW-217 | D-15 | 8/15/07 Email string from Teitelman, re: Berger v. Weinstein, attaching Fake Checks Pine Projects Weinstein | BERGER3008173-84 |
| CW-218 | D-63 | 9/30/07 Bergfeld statement, including debit to Pine Projects on 1/19/07 in the amount of £2,546,862.27 | BERGER4210550-51 |
| CW-219 | D-46 | 12/31/07 Busystore Limited statement listing debits on 1/8/07 paid by Towerstates and Ardenlink for Busystore to Pine Projects | BERGER4210553 |
| CW-220 | D-39 | 4/22/08 Email chain between Richard Seltzer, Brian Corcoran and Martin Kilkeary re Seltzer's assertion he does not intend to seek redress from C&W and asking for help | None |
| CW-221 | None | Animation of River City Development | BERGER4004855-B |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-222 | MSJ Ex. CW-12 | Fly-thru of River City Development | BERGER4004855-C |
| CW-223 | P-268 | Translation of Leifer Letter by Chaim Saiman–Appendix A to Saiman Expert Report | None |
| CW-224 | D-38 | Summary of JFK Project Costs/Equity | BERGER3004662-63 |
| CW-225 | None | Kilbride Wire Transfer Confirmation | BERGER4212734-37 |
| CW-226 | D-45 | Busystore Wire Transfer Authorization | BERGER3002935 |
| CW-227 | None | Busystore Payment Debit Advice | BERGER4212726-27 |
| CW-228 | None | Ardenlink Wire Transfer Confirmation | BERGER4212732-33 |
| CW-229 | D-57 | Towerstates Wire Transfer Authorization | BERGER100850 |
| CW-230 | None | Towerstates Wire Transfer Debit Advice | BERGER4212730-31 |
| CW-231 | None | Bergfeld Wire Transfer Debit Advice | BERGER4212728-29 |
| CW-232 | D-49 | Hepplewhite & Co. Accounting Memorandum | BERGER0000324 |
| CW-233 | D-92 (first two pages rec'd from ct rptr) | Photos of arrest of Weinstein and Amended Complaint in Berger v. 287 Webster Realty Associates LLC | None |
| CW-234 |  | Daroff Designs Power Point Presentation of River City (ppt) | BERGER4004855-A |
| CW-235 | D-28 | Undated 3-page handwritten fax from Weinstein to Heskel Kish, attention Berish Berger, re: 2040 Market (p.2) and River City (p.3) | BERGER3008217-19 |
| CW-236 | None | Enforcement Docket, No. 2010-10557 (Bucks County C.C.P. | None |
| CW-237 | None | Enforcement Docket, No. 2015-05601 (Bucks County C.C.P.) | None |
| CW-238 | None | Enforcement Docket, No. 2010-29905 (Montgomery County C.C.P.) | None |

A-21

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-239 | None | Enforcement Docket, No. 2010-013265 (Delaware County C.C.P.) | None |
| CW-240 | MSJ Ex. CW-52 | Approval of Tower Roils Spring Garden, PHILA. INQUIRER Article Dated 3/23/06 by Joseph A. Slobodzian and Jennifer Lin | None |
| CW-241 | None | Legislative File of Bill 060292-A (4/20/06 – 1/23/07) | BERGER5000214 |
| CW-242 | None | 4/20/06 Council of the City of Philadelphia meeting minutes | None |
| CW-243 | MSJ Ex. CW-94 | 4/28/06 Public Hearing Notice on Bill 060292 | BR005913 |
| CW-244 | None | 5/10/06 minutes of Council of the City of Philadelphia, Committee on Rules | None |
| CW-245 | None | 5/25/06 Council of the City of Philadelphia meeting minutes | None |
| CW-246 | None | 9/14/06 Council of the City of Philadelphia meeting minutes | None |
| CW-247 | MSJ Ex. CW-58 | 11/8/06 Public Hearing Notice on Bill 060292 | BR005923 |
| CW-248 | None | 11/28/06 Council of the City of Philadelphia, Committee on Rules meeting minutes | No Bates Stamps |
| CW-249 | None | Certified Copy of Bill 060292 | None |
| CW-250 | MSJ Ex. CW-54 | Legislative History for Bill 060292-A | None |
| CW-251 | None | Journal of the City Council of Philadelphia | BERGER5000221-344 |
| CW-252 | P-268 | Expert Report of Chaim Saiman | None |
| CW-253 | P-267 | Curriculum Vitae of Chaim Saiman, Esq. | None |
| CW-254 | P-269 | Curriculum Vitae of David Glusman | None |
| CW-255 | P-275 | Expert Report of Peter Korpacz | None |
| CW-256 | P-275 | Curriculum Vitae of Peter Korpacz | None |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-257 | P-276 | First Amended Supplement to Expert Report of Peter Korpacz | None |
| CW-258 | None | Second Amended Supplement to Expert Report of Peter Korpacz | None |
| CW-259 | None | John Robert White, "George Washington Bridge Approach: A Case Study" (1966) | None |
| CW-260 | None | Knight Frank and Newmark Grubb Knight Frank, "Global Cities: The 2016 Report" | None |
| CW-261 | None | Pages From Website for the World Trade Center | None |
| CW-262 | None | Pages From Website for Hudson Yards | None |
| CW-263 | None | Pages From Website for Peachtree Center | None |
| CW-264 | P-274 | Expert Report of Paula Konikoff and Craig Steinley | None |
| CW-265 | P-274 | Curriculum Vitae of Paula Konikoff | None |
| CW-266 | P-274 | Curriculum Vitae of Craig Steinley | None |
| CW-267 | D-95 | 2016-2017 Uniform Standards of Professional Appraisal Practice | None |
| CW-268 | None | Pennsylvania Real Estate Certification Act, P.L. 404, No 98, As Amended | None |
| CW-269 | MSJ Ex. CW-75 | The Appraisal of Real Estate, 14th Edition, Appraisal Institute, Chicago, IL, 2013 | None |
| CW-270 | None | Appraising the Appraisal: The Art of Appraisal Review, 3rd Edition, Appraisal Institute, Chicago, IL 2010 | None |
| CW-271 | MSJ Ex. CW-78 | The Dictionary of Real Estate Appraisal, 6th Edition, Appraisal Institute, Chicago, IL 2015 | None |
| CW-272 | None | Getting Real about Urbanism, the Urban Land Institute, 2008 | None |

A-23

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-273 | None | Market Analysis for Real Estate, 2nd Edition, Appraisal Institute, Chicago, IL, 2014 | None |
| CW-274 | D-98 | Review Theory and Procedures, Appraisal Institute, Chicago, IL 2015 | None |
| CW-275 | None | Sorenson, R., The Art of Reviewing Appraisals, The Appraisal Journal, July 1991, The Appraisal Institute, Chicago, IL | None |
| CW-276 | None | Review Theory — General, Appraisal Institute, Chicago, IL, 2013 | None |
| CW-277 | None | Appraisal Institute Regulation Number 5: Use of Appraisal Institute Logo, Membership Designations and Emblems, Appraisal Institute, Chicago, IL, 2013 | None |
| CW-278 | None | Who's On Board 2014 - Mobility Attitudes Survey, Prepared for TransitCenter by Resource Systems Group (RSG) | None |
| CW-279 | None | Pages From Website - https://www.cnu.orgJresources/what-new-urbanism | None |
| CW-280 | None | First Amended Complaint from Wolinetz v. Weinstein, No. 08-cv-5046 (D.N.J. 5/20/09) | None |
| CW-281 | None | Berger's Opp'n to Chawla's MIL re: Affinity Fraud (Berger III, dated 7/8/10) | None |
| CW-282 | None | 10/5/16 Expert Report of Marc Jonas | None |
| CW-283 | P-269 | 10/7/16 Expert Opinion of David H. Glusman | None |
| CW-284 | P-266 | 10/21/16 Expert Opinion of Alan E. Casnoff of P+A Associates | None |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-285 | None | Indictment in *U.S.A. v. Weinstein*, D.N.J., Case No.: 11-CR-701 (10/27/11) | None |
| CW-286 | None | Certified Copy of Weinstein's Plea Agreement, Case 11-701 (D.N.J. 1/3/13) | None |
| CW-287 | None | Certified Copy of Weinstein's Sentencing Hearing Transcript, Case 11-701 (D.N.J. 2/20/14) | None |
| CW-288 | None | Certified Copy of Weinstein's Sentencing Hearing Transcript, Case 11-701 (D.N.J. 2/24/14) | None |
| CW-289 | None | Certified Copy of Weinstein's Sentencing Hearing Transcript, Case 11-701 (D.N.J. 2/25/14) | None |
| CW-290 | None | Certified Copy of Weinstein's Redacted Criminal Indictment, Case 11-701 (D.N.J. 2/25/14) | None |
| CW-291 | None | Certified Copy of Weinstein's Judgment In a Criminal Case, Case 11-701 (D.N.J. 2/26/14) | None |
| CW-292 | None | Certified Copy of Weinstein's Judgment and Preliminary Order of Forfeiture, Case No. 11-701 (D.N.J. 2/26/14) | None |
| CW-293 | None | Certified Copy of Weinstein's Amended Judgment, Case 11-701 (D.N.J. 3/12/14) | None |
| CW-294 | None | Certified Copy of Weinstein's Revised Judgment and Preliminary Order of Forfeiture, Case 11-701 (D.N.J. 3/12/14) | None |
| CW-295 | None | Certified Copy of Weinstein's Sentencing Hearing Minutes, Case 14-219 (D.N.J. 3/15/14) | None |
| CW-296 | None | Indictment in *U.S.A. v. Weinstein*, D.N.J., Case No.: 14-CR-219 (filed 4/17/14) | None |

A-25

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-297 | None | Certified Copy of Weinstein's Final Order of Forfeiture, Case 11-701 (D.N.J. 7/21/14) | None |
| CW-298 | None | Certified Copy of Weinstein's Amended Final Order of Forfeiture, Case 11-701 (D.N.J. 7/21/14) | None |
| CW-299 | None | Certified Copy of Weinstein's Plea Agreement, Case 14-219 D.N.J. 9/3/14) | None |
| CW-300 | None | Certified Copy of Weinstein's Judgment in a Criminal Case, Case 14-219 (D.N.J. 12/16/14) | None |
| CW-301 | None | Certified Copy of Weinstein Consent Judgment and Order of Forfeiture, Case 14-219 (D.N.J. 1/22/15) | None |
| CW-302 | None | Certified Copy of Weinstein Amended Judgment, Case 14-219 (D.N.J. 9/25/15) | None |
| CW-303 | MSJ Ex. CW-14 | Lis Pendens Complaint (Phila. Ct. Com. Pl.) | BERGER3003962-982 |
| CW-304 | None | Answer to First Amended Complaint Berger I (ECF 85) | None |
| CW-305 | None | Answer to First Amended Complaint Berger I (ECF 86) | None |
| CW-306 | None | Answer to First Amended Complaint Berger I (ECF 89) | None |
| CW-307 | None | Amended Answer to First Amended Complaint Berger I (ECF 110) | None |
| CW-308 | None | Answer to Crossclaim Berger I (ECF 116) | None |
| CW-309 | None | Answer to Crossclaim Berger I (ECF 117) | None |
| CW-310 | None | Plaintiff's Answer to Counterclaim (ECF 118) | None |
| CW-311 | None | Plaintiff's Answer to Counterclaim (ECF 119) | None |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-312 | None | Plaintiff's Answer to Counterclaim (ECF 123) | None |
| CW-313 | None | Answer to Crossclaim Berger I (ECF 136) | None |
| CW-314 | None | Answer to Counterclaims to Crossclaims Berger I (ECF 146) | None |
| CW-315 | None | Answer to Amended Complaint Berger I (ECF 220) | None |
| CW-316 | None | Answer to Amended Complaint Berger I (ECF 221) | None |
| CW-317 | None | Order Consolidating Cases Berger III (ECF No. 78) | None |
| CW-318 | None | Motion in Limine of the Chawla and Zeghibe Defendants to Exclude Evidence Regarding Religious Affinity Fraud (ECF 195) | BERGER0016366-386 |
| CW-319 | Ex. A to Br. in Opp'n to Mot. to Exclude Saiman Test. | Plaintiffs' Response to Motion in Limine Regarding Religious Affinity Fraud (ECF 209) | BERGER0017754-789 |
| CW-320 | Ex. B. to Br. in Opp'n to Mot. to Exclude Saiman Test. | Transcript of Oral Argument on Motions in Limine | BERGER2000000-51 |
| CW-321 | None | Complaint Berger IV | None |
| CW-322 | None | Blank Rome Answer Berger IV | None |
| CW-323 | None | Cozen Answer Berger IV | None |
| CW-324 | None | Cushman & Wakefield Answer to Amended Complaint Berger IV | None |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-325 | None | Blank Rome Amended Answer Berger IV | None |
| CW-326 | None | Cozen Amended Answer Berger IV | None |
| CW-327 | None | Third Party Complaint Berger IV | None |
| CW-328 | None | *Berish Berger v. Eli Weinstein and Ravinder Chawla*, Complaint, E.D. Pa., Civ. A. No. 07-0994 (filed 3/12/07) | BERGER4097879-94 |
| CW-329 | None | *Berish Berger v. Eli Weinstein, Ravinder Chawla, Anthony Argiropoulos, 2040 Market Associates, LP, JFK Blvd Acquisition Partners, L.P., UBS Real Estate Securities, Inc., Mark Sahaya, a/k/a Mark Stephens d/b/a Mark Stephens Co., Pine Projects LLC and Montgomery Abstract*, Amended Complaint, E.D. Pa., Civ. A. No. 07-0994 (amended 5/21/07) | BERGER4097976-8025 |
| CW-330 | None | 7/20/07 Declaration of Berger in Support of plaintiffs' Motion for Preliminary Injunction in *Berger I* | BERGER4170119-35 |
| CW-331 | None | 7/23/07 Deposition Transcript of Haim Levy | BERGER1004723-738 |
| CW-332 | None | 5/14/08 NTA Forensics Expert Technical Report and Findings (full report) | BERGER4210434-537 |
| CW-333 | None | *Berish Berger, Kilbride Investments Limited, Busystore Limited, Towerstates Limited, Bergfeld Co. Limited and Ardenlink Limited v. Eli Weinstein, Ravinder Chawla, Mark Sahaya, 2040 Market Associates, LP, JFK Blvd Acquisition Partners, L.P., Pine Projects LLC and World Acquisition Partners Corporation*, Complaint, E.D. Pa., Civ. A. No. 08-4059 (filed 8/20/08) | BERGER0018083-117 |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-334 | None | *Berish Berger, Kilbride Investments Limited, Busystore Limited, Towerstates Limited, Bergfeld Co. Limited and Ardenlink Limited v. Richard Zeghibe, Patriot Parking, Inc., James Rappoport, DDI Architects, P.C., Daroff Design, Inc., Daroff Design Inc. + DDI Architects, P.C. and Jatinder Chawla*, Complaint, E.D. Pa., Civ. A. No. 08-5861 (filed 12/18/08) | None |
| CW-335 | None | 7/30/10 Confidential Settlement Agreement, General Release and Joint Tortfeasor Release between plaintiffs and Rappoport/Daroff Designs | BERGER5000718-28 |
| CW-336 | D-29 | 7/30/10 Transcript of Jury Verdict | BERGER2001376-391 |
| CW-337 | None | *Berish Berger, Kilbride Investments Limited, Busystore Limited in Liquidation, Towerstates Limited, Bergfeld Co. Limited & Ardenlink Limited v. Cushman and Wakefield of Pennsylvania, Inc., Blank Rome LLP and Cozen O'Connor, P.C.*, Amended Complaint, S.D.N.Y., Civ. A. No. 12-09224 (filed 2/25/13) | No Bates Number |
| CW-338 | None | Plaintiff's 11/11/14 Response to Cozen's First Request for Production of Documents | None |
| CW-339 | None | Blank Rome's 2/6/15 Answers to Plaintiff's Request for Production of Documents | None |
| CW-340 | None | C&W's 3/7/15 Responses to Plaintiffs' First Request for Production of Documents | None |
| CW-341 | None | Cozen's 10/12/15 Answers to Plaintiffs' Interrogatories | None |
| CW-342 | None | C&W's 7/29/16 Responses to Plaintiff's Third Request for Production | None |
| CW-343 | None | Plaintiff's 7/29/16 Supplemental Responses to Cozen's Request for Production | None |

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-344 | None | Plaintiff Kilbride's 8/1/16 Response to Cozen's Second Request for Production | None |
| CW-345 | None | Plaintiff's 8/1/16 Response to Cozen's Second Request for Production | None |
| CW-346 | D-110 | Undated Declaration of Chaim Zev Leifer (filed on behalf of Berger in connection with *Berger I*, Civ. A. No. 07-0994) | BERGER0019815-21 |
| CW-347 | D-37 | NTA Forensics Busystore Limited text messages from Weinstein and Heskel Kish to Berger | BERGER4027850-53 |
| CW-348 | D-36 | Undated Handwritten Bases for Investment | BERGER3010934 |
| CW-349 | None | Verdict Sheet | None |
| CW-350 | None | Plaintiffs' Responses and Objections to Cozen's First Set of Interrogatories | None |
| CW-351 | None | Plaintiff Berger's Responses and Objections to Blank Rome LLP's Requests for Admissions (8/8/16) | None |
| CW-352 | None | Plaintiff Berger's Responses and Objections to Cozen's Requests for Admissions (8/1/16) | None |
| CW-353 | None | Plaintiff Ardenlink's Responses and Objections to Blank Rome's Requests for Admissions (8/8/16) | None |
| CW-354 | None | Plaintiff Bergfeld's Responses and Objections to Blank Rome's Requests for Admissions (8/8/16) | None |
| CW-355 | None | Plaintiff Busystore's Responses and Objections to Blank Rome's Requests for Admissions (8/8/16) | None |
| CW-356 | None | Plaintiff Kilbride's Responses and Objections to Blank Rome's Requests for Admissions (8/8/16) | None |
| CW-357 | None | Plaintiff Towerstate's Responses and Objections to Blank Rome's Requests for Admissions (8/8/16) | None |

A-30

| C&W Ex. No. | Cross-Reference | Document Description | Bates Number |
|---|---|---|---|
| CW-358 | None | 9/19/16 Deposition Transcript of Pessie Berger | None |
| CW-359 | None | 10/27/16 Deposition Transcript of Getzel Berger | None |
| CW-360 | None | 9/4/07 Deposition Transcript of Eli Weinstein | None |
| CW-361 | None | 12/3/07 Deposition Transcript of Eli Weinstein | None |
| CW-362 | None | 5/16/08 Deposition Transcript of Eli Weinstein | None |
| CW-363 | None | 7/26/10 and 7/28/10 Trial Testimony of Eli Weinstein | None |
| CW-364 | None | 1/10/17 and 1 Deposition transcripts of Chaim Zev Leifer Deposition | None |
| CW-365 | None | Documents Produced by SEPTA | SEPTA00001-16 |

**APPENDIX B**

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| **Plaintiffs' Ex. No.** | **Cross-Reference** | **Date** | **Document Description** | **Bates Number** | **Objection** |
| PLAINTIFFS-012 | N/A | Various | World Acquisition Partners Ledgers | BERGER4164281-BERGER4164533 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-017 | P-092 | 00/00/00 | Cushman & Wakefield Workfile for 23rd St. & JFK - USB | BERGER4000978-BERGER4001222 | Fed. R. Evid. 403 |
| PLAINTIFFS-030 | PSJX-093 | 00/00/00 | Email from J. Wolfer to R. Chawla re JFK, with imbedded emails | BERGER4037058-BERGER4037059 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-037 | N/A | 00/00/00 | Defendants' Answer and New Matter to Plaintiffs' Complaint in *Daroff Design, Inc., et al. v. World Acquisition Partners Corporation, et al.* | BERGER3001741-BERGER3001819 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-041 | N/A | 00/00/00 | Check NorthFork Bank | BERGER3000050 | Fed. R. Evid. 403, 802, 901, 1002 |
| PLAINTIFFS-042 | N/A | 00/00/00 | Check Commerce Bank | BERGER3000051 | Fed. R. Evid. 403, 802, 901, 1002 |
| PLAINTIFFS-043 | N/A | 00/00/00 | Check Commerce Bank | BERGER3000052 | Fed. R. Evid. 403, 802, 901, 1002 |
| PLAINTIFFS-044 | N/A | 00/00/00 | Check | BERGER3000057-BERGER3000058 | Fed. R. Evid. 403, 802, 901, 1002 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-050 | N/A | Various | Commerce Bank Checks 02/28/07 $311; 06/15/07 $311 | BERGER3010951 | Fed. R. Evid. 901 |
| PLAINTIFFS-051 | P-60 | 1/22/2004 | 2004 C&W Appraisal of Three River City Parcels | BERGER4001251-330 | Fed. R. Evid. 403 |
| PLAINTIFFS-055 | N/A | 12/14/2005 | Email from T. Singh to W. Martin, et al. no subject, with attachment | BERGER3000041 - BERGER3000042 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-058 | N/A | 3/3/2006 | Agreement of Sale and Purchase | BERGER3000814 - BERGER3000849 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-062 | P-116 | 4/14/2006 | C. Naselsky handwritten notes re 23rd Street | BR000623 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-063 | PSJX-063 | 4/15/2006 | Email from R. Chawla to M. Sahaya re FW: 2040 Market Street, with imbedded emails | BERGER1010999 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-067 | P-117 | 4/17/2006 | C. Naselsky handwritten notes | BR000624 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-077 | PSJX-102 | 5/12/2006 | Email to J. Rappoport to Harish re FW: Re Ordinance, with imbedded emails | BERGER4025128 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| **Plaintiffs' Ex. No.** | **Cross-Reference** | **Date** | **Document Description** | **Bates Number** | **Objection** |
| PLAINTIFFS-086 | PSJX-056 | 5/26/2006 | Email from C. Snider to C. Naselsky, et al. re JFK escrow deposit:  Urgent | BERGER4204111 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-087 | PSJX-057 | 5/30/2006 | Email from C. Naselsky to C. Snider re 23rd and JFK | BERGER4204124-BERGER4204125 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-088 | N/A | 5/31/2006 | Partnership Interests Agreement of Sale and Purchase | BERGER3000651 – BERGER3000686 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-090 | PSJX-014 | 6/2/2006 | Settlement Statement for 2040 Market Street a/k/a 2026-58 Market Street, Philadelphia, PA 19103 | COZEN009399-COZEN009400 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-101 | N/A | 6/21/2006 | Email from J. Rappoport to R. Chawla re River City, with imbedded emails | BERGER4011321-BERGER4011324 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-102 | N/A | 6/23/2006 | Email from R. Chawla to G. Lilienfield re FW: Jfk appraisal, with imbedded emails | BERGER4208004-BERGER4208005 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-108 | P-122 | 6/23/2006 | Email from R. Zeghibe to R. Chawla, et al. re Jfk Appraisal, with imbedded emails | BERGER4204305-BERGER4204306 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-110 | N/A | 6/29/2006 | Email from R. Chawla to R. Zeghibe, et al. re JFK Appraisal, with imbedded email | BERGER3003429 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-118 | N/A | 6/29/2006 | Email from A. Singh to C. Naselsky re JFK | BERGER4204333 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-119 | N/A | 6/30/2006 | Email from R. Chawla to C. Naselsky re JFK Appraisal | BERGER4208020 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-120 | P-127 | 6/30/2006 | Email from A. Singh to R. Zeghibe, et al. re Philadelphia River City | BERGER4191142 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-126 | PSJX-068 | 7/9/2006 | Email from R. Chawla to C. Naselsky re Philadelphia River City, with imbedded emails | BERGER4201090-BERGER4201091 | Fed. R. Evid. 802, 901 |

B-4

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| **Plaintiffs' Ex. No.** | **Cross-Reference** | **Date** | **Document Description** | **Bates Number** | **Objection** |
| PLAINTIFFS-131 | PSJX-114 | 7/11/2006 | Email R. Chawla to Jackfinance re Philadelphia River City, with imbedded emails | BERGER4201092-BERGER4201094 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-132 | N/A | 7/13/2006 | Email from A. Singh to C. Naselsky re JFK, with attachment | BERGER4204599-BERGER4204600 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-133 | N/A | 7/15/2006 | Email from R. Chawla to C. Naselsky, et al. re: #2663857-v1-PHILADELPHIA-matrix_of_JFK_Due_Diligence_expenses.xls | BERGER4208048 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-136 | PSJX-160 | 7/21/2006 | RAM Associates letter to Weinstein re Air Rights @ 2040 Market Street, Philadelphia, PA | BERGER4211655 | Fed. R. Evid. 403, 802, 901, 1002 |
| PLAINTIFFS-145 | N/A | 8/4/2006 | Email from R. Chawla to A. Teitelman re FW: 1980.pdf, with imbedded emails, with attachment | BERGER3001825-BERGER3001828 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-146 | P-145 | 8/7/2006 | Email from R. Chawla to C. Naselsky, with imbedded emails, with attachment | BR009968-BR009971 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-147 | N/A | 8/7/2006 | Email from R. Chawla to J. Rappoport, et al. re FW: 1980.pdf, with imbedded emails | BERGER3001829-BERGER3001830 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-149 | N/A | 8/7/2006 | Email from J. Rappoport to R. Chawla re FW:  1980.pdf | BERGER3000941 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-151 | N/A | 8/9/2006 | Email from R. Amengual to C. Naselsky re R&F Penn Center Associates, L.P. with JFK Blvd Acquisition GP, LLC, with imbedded emails | BR009948-BR009950 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-152 | N/A | 8/9/2006 | Email from R. Chawla to J. Rappoport re River City, with imbedded email | BR009960-BR009961 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-153 | N/A | 8/11/2006 | Email from R. Zeghibe to C. Naselsky re JFK Zononing (sic) Letter | BR0018909 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-155 | N/A | 8/11/2006 | Email from C. Naselsky to R. Zeghibe re JFK Zononing (sic) Letter, with imbedded emails | BR018951 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-159 | N/A | 8/15/2006 | Letter from S. Stein to A. Teitelman re Reinstatement of Nominee Agreement among JFK Blvd Acquisition GP, LLC, as Nominee and Richard Zeghibe, as Nominee, and JFK Philadelphia LLC, as Owner | BR009639 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-163 | P-036 | 8/21/2006 | Email from C. Naselsky to W. Kerr re FW: FW: 1980.pdf, with imbedded emails | BR012905-BR012906 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-185 | N/A | 8/30/2006 | Email from J. Rappoport to C. Naselsky re Parcels D&E, with imbedded emails | BERGER4192341-BERGER4192342 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-186 | N/A | 8/31/2006 | Email from J. Rappoport to C. Naselsky re River City, with imbedded emails | BR009304-BR009306 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-187 | P-169 | 8/31/2006 | Email from R. Chawla to C. Naselsky re JFK and 2040, with imbedded emails | BR009309-BR009310 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-188 | PSJX-037 | 8/31/2006 | Email from R. Chawla to C. Naselsky re JFK and 2040, with imbedded emails | BR009302-BR009303 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-189 | PSJX-044 | 8/31/2006 | Email from R. Chawla to J. Rappoport, et al. re River City, with imbedded email | BERGER4021225 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-190 | PSJX-085 | 8/31/2006 | Email from C. Naselsky to R. Chawla re JFK and 2040 | BR012092 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-192 | N/A | 9/2/2006 | Email from C. Naselsky to W. Kerr re Philadelphia River City – Zoning Calculations | BR013043 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-194 | P-048 | 9/7/2006 | Email from W. Kerr to C. Naselsky re JFK, with imbedded emails | BR013051-BR013053 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-195 | P-152 | 9/7/2006 | Email from J. Rappoport to C. Naselsky re River City, with handwritten notes | BR000567-BR000569 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-196 | P-173 | 9/7/2006 | Email from R. Chawla to C. Naselsky | BR018905 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-202 | N/A | 9/12/2006 | Email from J. Rappoport to J. Noonan, et al. re FW Parkway area height controls, with attachment | BERGER3000293 – BERGER3000294 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-210 | N/A | 9/20/2006 | Email from C. Naselsky to R. Chawla re FW: Suggested edits to JFK Blvd. Nominee Agreement | BR009087-BR009105 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-211 | N/A | 9/20/2006 | Email from R. Chawla to C. Naselsky re FW: JFK/Edits to the Contingent Judgment Promissory Note, with imbedded emails, with attachment | BR009106-BR009115 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-213 | N/A | 9/21/2006 | Email from R. Amengual to C. Naselsky with imbedded emails | BR009067 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-215 | PSJX-053 | 9/21/2006 | Email from A. Teitelman to W. Martin re Revised Nominee Agreement | BERGER1011916 | Fed. R. Evid. 403, 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-217 | N/A | 9/25/2006 | Email from C. Naselsky to W. Kerr re JFK and 2040, with imbedded emails | BR011835-BR011836 | Fed. R. Evid. 403, 901 |
| PLAINTIFFS-219 | P-176 | 9/25/2006 | Email from J. Rappoport to R. Chawla, with imbedded emails | BR009053 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-221 | PSJX-075 | 9/26/2006 | Email from M. Sahaya to R. Chawla re [no subject] | BERGER3000914 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-222 | N/A | 9/28/2006 | Email from C. Naselsky to R. Zeghibe, et al. re Jfk | BR018941 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-223 | N/A | 10/4/2006 | Purchase Agreement between I. Chawla, J. Chawla, the Zeghibe Family Trust, the Partners of 2040 Market Associates, LP and Eli Weinstein | BERGER3003004-BERGER3003019 | Fed. R. Evid. 403 |
| PLAINTIFFS-224 | N/A | 10/5/2006 | Email from C. Naselsky to R. Chawla re SELLER EXECUTED AGREEMENTS & RELATED DOCUMENTS FOR 2040 MARKET AND OPTION FOR 11501 ROOS BLVD, with imbedded emails | BR011583-BR011587 | Fed. R. Evid. 403,  802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS<br>(OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-228 | N/A | 10/9/2006 | Email from A. Singh to C. Naselsky re FW: Fully Executed Fourth Amendment to Agreement of Sale on JFK.pdf, with imbedded emails, with attachments | BR008763-BR008796 | Fed. R. Evid. 403,  802, 901 |
| PLAINTIFFS-229 | P-186 | 10/10/2006 | Email from D. Grasso to C. Naselsky re FW: Height Ordinance status | BR008737 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-230 | PSJX-061 | 10/10/2006 | Email from R. Chawla to C. Naselsky re JFK, with imbedded emails | BR008760-BR008761 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-232 | N/A | 10/12/2006 | Email from W. Kerr to C. Naselsky re JFK, with imbedded emails | BR013239-BR013240 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-236 | N/A | 10/17/2006 | Email from R. Chawla to C. Naselsky re 2040/JFK, with imbedded emails | BR018899-BR018900 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-237 | PSJX-106 | 10/17/2006 | Email from R. Chawla to C. Naselsky re FW JFK, with imbedded emails | BR008662-BR008663 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-238 | N/A | 10/20/2006 | Email from C. Naselsky to A. Singh re jfk | BR018852 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-253 | P-195 | 10/31/2006 | Email from R. Chawla to C. Naselsky re Appraisal for IRS Building 11501 Roosevelt Blvd, with imbedded emails | BERGER4059407-BERGER4059411 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-263 | PSJX-076 | 11/8/2006 | Agenda Hearing Notice | N/A | Fed. R. Evid. 901 |
| PLAINTIFFS-283 | P-21 | 11/22/2006 | Email from C.Naselsky to K. Daroff re bill | BR011337 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-285 | P-208 | 11/22/2006 | Email from R. Chawla to A. Teitelman, et al. re FW: bill, with imbedded emails | BERGER3000004-BERGER3000005 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-292 | | 11/27/2006 | Email from J. Rappoport to R. Chawla re Councilman Clarke's Ordinance Bill 060292-A, with imbedded emails | BERGER4014230-BEGER401232 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-297 | N/A | 11/27/2006 | Email from J. Rappoport to R. Chawla re Councilman Clarke's Ordinance Bill 060292-A | BERGER3000016-BERGER3000018 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-305 | PSJX-099 | 11/29/2006 | Daily News article "Panel Oks towers on Delaware, favors Parkway height limits" | N/A | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-306 | PSTAX-29 | 11/29/2006 | Email from J. Rappoport to K. Daroff re FW: Overlay, with imbedded emails | BERGER4006984-BERGER4006986 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-329 | P-081 | 12/6/2006 | Email from M. Young to G. McNamara, et al. re 2000-2400 JFK Blvd. | BERGER4001128 | Fed. R. Evid. 802 |
| PLAINTIFFS-342 | PSJX-135 | 12/8/2006 | Email from R. Chawla to M. Sahaya, et al. re FW: Philadelphia River City, with imbedded emails | BERGER4202072 | Fed. R. Evid. 403 |
| PLAINTIFFS-343 | | 12/8/2006 | Email from R. Chawla to M. Sahaya, E. Weinstein, et al. re Philadelphia River City, with attachment | BERGER3000284 – BERGER3000285 | Fed. R. Evid. 403 |
| PLAINTIFFS-355 | | 12/14/2006 | $9,500,000 check to Montgomery Abstract re 2040 Market Street | BERGER3010839 | Fed. R. Evid. 403, 901 |
| PLAINTIFFS-356 | P-090 | 12/14/2006 | *Philadelphia Daily News* article titled "A 1,000-foot colossus by the Schuylkill" | BERGER1011751-BERGER1011752 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-358 | PSJX-137 | 12/14/2006 | Email from C. Naselsky to R. Chawla re FW: Ravi Article | BR010785-BR010788 | Fed. R. Evid. 802 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-360 | | 12/14/2006 | Email from W. Martin to E. Weinstein, R. Neumann, et al. re Emailing: 16235841.htm | BERGER3000400 – BERGER3000403 | Fed. R. Evid. 802 |
| PLAINTIFFS-369 | | 12/20/2006 | Sending a Payment Abroad wire information | BERGER3002953 | Fed. R. Evid. 403 |
| PLAINTIFFS-377 | | 12/20/2006 | $4,663,472.15 Check to World Acquisition Partners Corporation re Pine Projects – JFK Closing | BERGER301670 | Fed. R. Evid. 802, 901, 1002 |
| PLAINTIFFS-397 | N/A | 12/26/2006 | Deed for 2001 John F. Kennedy Boulevard, 2101 John F. Kennedy Boulevard, 2201 John F. Kennedy Boulevard, 2301 John F. Kennedy Boulevard and 60 N. 23rd Street (Recorder # 51598218) | N/A | Fed. R. Evid. 901 |
| PLAINTIFFS-400 | N/A | 1/4/2007 | $7,982,500 check to Mark Stephens Co. re Independence-Gernora 2 yr interest payment on $51,500,00 | BERGER3010838 | Fed. R. Evid. 802, 901, 1002 |
| PLAINTIFFS-401 | N/A | 1/4/2007 | 2040 Market Street Charges Payable By Buyer | BERGER3000237 | Fed. R. Evid. 802, 901 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-416 | PSJX-111 | 1/23/2007 | Email from R. Patterson to J. Rappoport, et al. re Philadelphia River, with imbedded emails | BERGER4197543-BERGER4197545 | Fed. R. Evid. 802 |
| PLAINTIFFS-423 | N/A | 2/1/2007 | Email from D. McNeil to G. McNamara re FW: JFK Appraisal, with imbedded emails | BERGER-CW-00000804 - BERGER-CW-00000805 | Fed. R. Evid. 403 |
| PLAINTIFFS-424 | P-083 | 2/1/2007 | Email from D. McNeil to G. McNamara re Priceless Real Estate – River City | BERGER-CW-00000803 | Fed. R. Evid. 403, 802 |
| PLAINTIFFS-425 | | 2/1/2007 | Email from A. Singh to C. Naselsky re JFK | BERGER4197723 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-427 | | 2/2/2007 | Email from R. Chawla to C. Naselsky re UBS | BERGER4068322 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-428 | | 2/2/2007 | Email from G. McNamara to D. McNeil re JFK Appraisal, with imbedded emails | BERGER-CW-00000956-BERGER-CW-00000957 | Fed. R. Evid. 403 |
| PLAINTIFFS-429 | | 2/5/2007 | Email from G. McNamara to D. McNeil re Priceless Real Estate – River City, with imbedded email | BERGER-CW-00000081 | Fed. R. Evid. 403, 802 |
| PLAINTIFFS-430 | | 2/5/2007 | Email from G. McNamara to D. McNeil re FW: JFK Appraisal, with imbedded emails | BERGER-CW-00000958-BERGER-CW-00000960 | Fed. R. Evid. 403 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-431 | | 2/5/2007 | Email from G. McNamara to C. Naselsky re JFK Appraisal, with imbedded emails | BERGER-CW-00000962-BERGER-CW-00000965 | Fed. R. Evid. 403 |
| PLAINTIFFS-437 | P-242 | 2/6/2007 | Email from from C. Naselsky to P. Soloff re FW: JFK Appraisal, with imbedded emails | BR012249 | Fed. R. Evid. 403 |
| PLAINTIFFS-438 | | 2/6/2007 | Email from C. Kish to E. Weinstein re Re: FW: Status | BERGER3010955 | Fed. R. Evid. 802 |
| PLAINTIFFS-441 | | 2/8/2007 | Email from G. McNamara to D. McNeil re JFK Land, with imbedded emails | BERGER-CW-00000087- BERGER-CW-00000089 | Fed. R. Evid. 403 |
| PLAINTIFFS-442 | P-084 | 2/8/2007 | Email from D. McNeil to G. McNamara re JFK Land, with imbedded emails | BERGER-CW-00000953 - BERGER-CW-00000955 | Fed. R. Evid. 403 |
| PLAINTIFFS-444 | | 2/8/2007 | Email from R. Patterson to J. Rappoport re Philadelphia River City, with imbedded email | BERGER4015900-BERGER4015901 | Fed. R. Evid. 802 |
| PLAINTIFFS-452 | P-085 | 2/20/2007 | Email from G. McNamara to O. Striker | BERGER-CW-00000973 | Fed. R. Evid. 403 |
| PLAINTIFFS-453 | P-086 | 2/20/2007 | Email from G. McNamara to O. Striker re JFK Land, with imbedded emails, with attachment | BERGER-CW-00000975-BERGER-CW-00000981 | Fed. R. Evid. 403 |

B-16

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-454 | P-087 | 2/21/2007 | Email from O. Striker to G. McNamara re JFK Land, with imbedded email, with attachment | BERGER-CW-00001007-BERGER-CW-00001014 | Fed. R. Evid. 403 |
| PLAINTIFFS-455 | P-088 | 2/21/2007 | Email from O. Striker to G. McNamara, et al. re FW: Philadelphia River City, with imbedded email, with attachment | BERGER-CW-00001025-BERGER-CW-00001076 | Fed. R. Evid. 403, 802 |
| PLAINTIFFS-456 | P-095 | 2/21/2007 | Email from G. McNamara to D. McNeil re FW: JFK Land, with imbedded emails, with attachments | BERGER-CW-00000984-BERGER-CW-00000991 | Fed. R. Evid. 403 |
| PLAINTIFFS-458 | | 2/22/2007 | Email from D. McNeil to O. Striker re JFK Land, with imbedded emails, with attachment | BERGER-CW-00001112-BERGER-CW-00001115 | Fed. R. Evid. 403 |
| PLAINTIFFS-461 | P-097 | 2/23/2007 | Email from J. Rappoport to R. Chawla re River city | BERGER4199501 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-464 | P-089 | 2/26/2007 | Email from D. McNeil to O. Striker re JFK Land with imbedded emails, with 2007 Appraisal attached | BERGER-CW-00001120-BERGER-CW-00001274 | Fed. R. Evid. 403; 802 |
| PLAINTIFFS-465 | | 2/26/2007 | Email from R. Chawla to J. Rappoport re CW appraisal for JFK, with imbedded emails | BERGER4016184 | Fed. R. Evid. 403 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-466 | | 3/1/2007 | Email from K. Daroff to J. Rappoport re FW: River City | BERGER3000572 - BERGER3000575 | Fed. R. Evid. 403, 802 |
| PLAINTIFFS-467 | | 3/11/2007 | Email from R. Chawla to E. Weinstein re FW EMAILING: RIVER CITY FINAL APPRAISAL, with attachment | BERGER3000415 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-470 | | 3/11/2007 | Email from R. Chawla to E. Weinstein re FW: Emailing: River City Final Appraisal, with imbedded emails | BERGER1011288 | Fed. R. Evid. 403, 802, 901 |
| PLAINTIFFS-482 | | 6/22/2007 | Email from R. Zeghibe to R. Chawla, et al. re Philadelphia River City | BERGER3003540-BERGER3003543 | Fed. R. Evid. 802 |
| PLAINTIFFS-487 | | 10/25/2007 | Email from T. Singh to M. Sahaya, A. Teitelman, et al. re RE: IRS BLDG | BERGER3000912-BERGER3000913 | Fed. R. Evid. 802 |
| PLAINTIFFS-489 | | 12/17/2007 | Email from R. Chawla to J. Rappoport re Lack of communication and transition issues, with imbedded emails | BERGER3001736-BERGER3001737 | Fed. R. Evid. 802 |
| PLAINTIFFS-491 | PSJX-170 | 3/18/2008 | Voicemail G. Garrison to P. Segal | BERGER3000078 | Fed. R. Evid. 802 |
| PLAINTIFFS-493 | | 5/17/2008 | Email from G. Lilienfeld to R. Chawla re JFK lots, with imbedded emails | BERGER4010727-BERGER4010729 | Fed. R. Evid. 802 |

| C&W OBJECTIONS TO PLAINTIFFS' AMENDED TRIAL EXHIBITS (OTHER THAN RELEVANCE) | | | | | |
|---|---|---|---|---|---|
| Plaintiffs' Ex. No. | Cross-Reference | Date | Document Description | Bates Number | Objection |
| PLAINTIFFS-496 | PSJX-149 | 7/24/2008 | Memo from M. Hepplewhite to B. Berger | BERGER5000729 | Fed. R. Evid. 802 |
| PLAINTIFFS-532 | | 00/00/00 | Excerpts from www.cushwakepennsylvania.com | N/A | Fed. R. Evid. 403 |
| PLAINTIFFS-534 | | 3/1/1988 | City Solicitor's Opinion regarding Bill No. 060292 (and 060292-A) | BERGER3007403-BERGER3007407 | Fed. R. Evid. 802, 901 |
| PLAINTIFFS-537 | | 8/28/2007 | Email from J. Rappoport to A. Teitelman, with imbedded emails | BERGER3001962-BERGER3001964 | Fed. R. Evid. 802 |
| PLAINTIFFS-552 | | 1/7/2019 | Complaint in *Gerald McNamara v. Gurbir S. Grewal*, D.N.J. Civil Action No. 3:19-cv-00173 (the "New Jersey McNamara Action") | N/A | Fed. R. Evid. 403, 802 |
| PLAINTIFFS-553 | | 1/7/2019 | Praecipe to Attach Exhibits to Complaint filed in the New Jersey Action | N/A | Fed. R. Evid. 403, 802 |

B-19