IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BERISH BERGER, et al.,** | ) |
| **Plaintiffs,** | ) |
| v. | ) CIVIL ACTION NO. 2:13-cv-05195 |
| **CUSHMAN & WAKEFIELD, et. al.,** | ) |
| **Defendants and Third-Party Plaintiffs,** | ) |
| v. | ) |
| **JFK BLVD ACQUISITION GP, LLC, et al.** | ) |
| **Third-Party Defendants** | ) |

**THIRD-PARTY DEFENDANT'S, JFK BLVD ACQUISITION GP, LLC, PRETRIAL MEMORANDUM**

Third-party defendant, JFK BLVD Acquisition GP, LLC, (hereafter "JFK LLC"), submits its Pretrial Memorandum summarizing its defenses to the third-party complaint (the "Third-Party Action") brought against it by third-party plaintiff, Cushman & Wakefield of Pennsylvania, Inc., (hereafter "Third-Party Plaintiff" or "Cushman"), states as follows:[1]

**I.  STATEMENT OF THE NATURE OF THE THIRD-PARTY ACTION AGAINST AND DEFENSES OF JFK LLC**

Cushman's third-party indemnification claims against JFK LLC derive from the Berger Parties'[2] fraud claims against Cozen O'Conner, P.C., ("Cozen"), Blank Rome LLP, ("Blank

---

[1] JFK LLC hereby adopts and incorporates the lists of trial exhibits submitted by the other parties to this lawsuit and will refer only to the Cushman exhibit numbers ("CW-___") when trial exhibits are referred to herein.

[2] The "Berger Parties" refers to all original plaintiffs in this matter.

Rome" and together with Cozen, the "Lawyer Defendants"), and Third-Party Plaintiff Cushman (Cushman and the Lawyer Defendants are collectively referred to as the "Original Defendants"). The Berger action against the Original Defendants is itself an outgrowth of similar claims made by the Berger Parties in their prior lawsuits against a slew of defendants; some of whom (and in particular JFK LLC) were represented by the Lawyer Defendants, and all of whom they claimed defrauded or otherwise tortuously harmed them in the same real estate transactions that have been at issue since the first of the Berger actions was filed in March of 2007.[3]

Between Berger II and Berger III, the following parties were sued: i) JFK BLVD Acquisition Partners, L.P.; ii) 2040 Market Associates, LP; iii) World Acquisition Partners Corporation; iv) Ravinder Chawla; v) Eli Weinstein; vi) Pine Projects LLC; vii) Mark Sahaya;[4] viii) Richard Zeghibe; ix) Patriot Parking Inc.; x) James Rappaport; xi) DDI Architects P.C.; xii) Daroff Design, Inc.; and xiii) Jatinder Chawla.[5] Of the thirteen named defendants in the Prior Berger Actions, the Berger Parties obtained judgments against only five, those being Eli Weinstein and his business entity Pine Projects LLC, Ravinder Chawla and his business entity World Acquisition Partners Corporation, and Mark Sahaya.

---

[3] The prior Berger Party matters before this Court are: *Berish Berger v. Eli Weinstein, et al.,* USDC, EDPa, No. 07-0994 ("Berger I" which was terminated by dismissal on 08/26/2008), *Berish Berger, et al., v. Eli Weinstein, et al.,* USDC, EDPa, No. 08-4059 ("Berger II"), and *Berish Berger, et al., v. Richard Zeghibe, et al.,* USDC, EDPa, No. 08-5861 ("Berger III"). Berger II and Berger III were consolidated and will be referred to herein as the "Prior Berger Actions." The jury hearing the Prior Berger Actions, specifically found (on July 30, 2010) that Berger and Weinstein were partners regarding the matters litigated in the Berger (a true and correct copy of the Verdict Sheet filed on 08/02/2010 is identified as trial exhibit CW-336, and the partnership finding is located on page 8 at Question Eleven (A).

[4] Those parties named in (i) – (vii) are the Berger II Defendants.

[5] Those parties named in (viii) – (xiii) are the Berger III Defendants.

Otherwise, the jury in the Prior Berger Actions found in favor of all remaining defendants including, especially as it pertains to the instant third-party action, JFK BLVD Acquisition Partners, L.P., (hereafter "JFK BLVD LP"). This is fatal to Cushman's claims against JFK LLC because, at all times material thereto, JFK LLC, was the *general partner* of JFK BLVD LP.[6] The jury, in finding against the Berger Parties and in favor of JFK BLVD LP and its constituents, *including* JFK LLC and its members/managers, Richard Zeghibe ("Zeghibe") and Jatinder Chawla ("J. Chawla"), *determined that those entities and the persons comprising them had not defrauded or in any other way caused any harm to the Berger Parties*.[7]

## II. STATEMENT OF FACTS RELEVANT TO THE CUSHMAN INDEMNIFICATION ACTION

Cushman relies upon the May 18, 2006 engagement letter it authored for "JFK BLVD Acquisition GP, **LLP**," but sent to Charles M. Naselsky (then a lawyer with Original Defendant Cozen), to establish a basis for its indemnification claims against JFK BLVD Acquisition GP,

---

[6] On February 28, 2007, *after* the events alleged in Cushman's Third-Party Complaint transpired, JFK LLC became a member of JFK Mezz LLC, the new sole limited partner of JFK BLVD LP. This restructuring of JFK BLVD LP was required by UBS Real Estate Securities Inc. ("UBS"), who refinanced the River City project, leaving JFK LLC with just under a **0.5% limited partnership interest** in JFK BLVD LP and also removed JFK LLC as the general partner.

[7] Recognizing this, Cushman chose not to name either Zeghibe or J. Chawla individually in its Third-Party Action, even though it was well aware (as a result of the Prior Berger Actions and discovery in the current matter) that Zeghibe and J. Chawla are the only members and managers of JFK LLC; and that JFK LLC itself held only a 0.01% interest in JFK BLVD LP on December 21, 2006 (and at all times material to the allegations made in Cushman's Third-Party Action), when it acquired the parcels referred to in the various pleadings in this and the Prior Berger Actions as "River City" (consisting of 2001 John F. Kennedy Boulevard, Philadelphia, Pennsylvania (Tract "A"); 2101 John F. Kennedy Boulevard Philadelphia, Pennsylvania, (Tract "B"); 2201 John F. Kennedy Boulevard, Philadelphia, Pennsylvania (Tract "C"); 2301 John F. Kennedy Boulevard Philadelphia, Pennsylvania, (Tract "D"); 60 North 23rd Street Philadelphia, Pennsylvania, (Tract "E")).

3

**LLC**.[8] The Cushman Engagement Letter was also executed by Naselsky <u>and not</u> a member, manager or officer of JFK LLC.

The Cushman Engagement Letter is comprised of two parts, the first being the letter itself with the terms specific to Cushman's engagement with its "CLIENT",[9] executed by Naselsky for the CLIENT and by Gerald B. McNamara for Cushman; and the second part being the unsigned boilerplate "CONDITIONS OF ENGAGEMENT" which was apparently sent with the letter. The following excerpts from the Cushman Engagement Letter are pertinent to the Third-Party Action:

<u>From the singed letter portion of the Cushman Engagement Letter</u>

Dear Mr. Naselsky:

Thank you for requesting our proposal for appraisal services. This proposal letter will become, upon your acceptance, our letter of engagement to provide the services outlined herein.

**TERMS OF ENGAGEMENT**

| **The Parties To This Agreement:** | Cushman & Wakefield of Pennsylvania, Inc. and JFK ACQUISITION GP, LLP (herein at times referred to as "Client"). |
|---|---|

\* \* \*

| **Intended Users:** | The appraisal will be prepared for JFK ACQUISITION GP, LLP and is intended only for its specified use. Client, together with its professionals, investors and potential lenders may consider the appraisal without further permission. It may not be distributed to or relied upon by other persons or entities without written permission of Cushman & Wakefield of Pennsylvania, Inc. |
|---|---|

---

[8] The engagement letter between Cushman and JFK LLC, dated May 18, 2006, (the "Cushman Engagement Letter"), is attached to Cushman's Third-Party Complaint as its Exhibit A (see Docket No. 51), and is also identified as trial exhibit CW-22.

[9] The Cushman Engagement Letter does not name Third-Party Defendant, JFK BLVD Acquisition GP, **LLC**, instead naming "JFK Acquisition GP, **LLP**" as the contracting party. This incorrect nomenclature is made by Cushman throughout the documents it produced regarding the River City project and the Third-Party Complaint itself.

4

From the unsigned Conditions of Engagement[10]

> 4) The appraisal report or our name may not be used in any offering memoranda or other investment material without the prior written consent of C&W, which may be given at the sole discretion of C&W. Any such consent, if given, shall be conditioned upon our receipt of an indemnification agreement from a party satisfactory to us and in a form satisfactory to us. Furthermore, Client agrees to pay the fees of C&W's legal counsel for the review of the material which is the subject of the requested consent. ==If the appraisal is referred to or included in any offering material or prospectus, the appraisal shall be deemed referred to or included for informational purposes only and C&W, its employees and the appraiser have no liability to such recipients. C&W disclaims any and all liability to any party other than the party which retained C&W to prepare the appraisal.==

> 5) In the event the Client provides a copy of this appraisal to, or permits reliance thereon by, any person or entity not authorized by C&W in writing to use or rely thereon, Client hereby agrees to indemnify and hold C&W, its affiliates and the respective shareholders, directors, officers and employees, harmless from and against all damages, expenses, claims and costs, including attorney's fees, incurred in investigating and defending any claim arising from or in any way connected to the use of, or reliance upon, the appraisal by any such unauthorized person or entity.

By its very language the Cushman Engagement Letter permits the "Client" to share the appraisal with its "…professionals, investors and potential lenders…" who "…may consider the appraisal without further permission." (Emphasis supplied). As applied to the claims made against JFK LLC, *if* it is found to be the "Client," it would be permitted to show the Cushman appraisal to its investors, such as Weinstein and, by extension, the Berger (found by the jury in the underlying Berger Matters to be Weinstein's partner) and the entities affiliated with him that he brought into the transactions, amongst others.[11]

Not only was JFK LLC expressly permitted to show the Cushman Appraisal to its investors based on the Cushman Engagement Letter, within the Cushman Appraisal itself is the following proviso reiterating this right:[12]

---

[10] The yellow highlighted emphasis is supplied.

[11] The subject appraisal from Cushman, dated June 23, 2006 (the "Cushman Appraisal"), is identified as trial exhibit CW-35.

[12] See Exhibit CW-35.

5

> This report was prepared for **Cozen O'Connor, P.C.** on behalf of its client **J.F.K. Acquisition G.P., L.L.C.** and is intended only for their specified use. The client together with its professionals, investors and potential lenders may consider the appraisal without further permission. It may not be distributed to or relied upon by any other persons or entities without the written permission of Cushman & Wakefield of Pennsylvania, Inc.

This proviso appears at the top of the second page of the Cushman Appraisal *before* the valuation opinion which is further down on the same page. Even if the Berger Parties had relied on the Cushman Appraisal, they would have, by necessity, been aware of this use limitation.[13]

Although glossed over in the Third-Party Complaint, the very nature of the agreement between the Berger Parties, through their partner Weinstein,[14] with JFK BLVD LP, through its

---

[13] See Trial Transcript, Prior Berger Actions, USDC, EDPA Case No. 08-05861, at Docket No. 306, p. 40, where Berish Berger testifies that:

```
                            Berger - Direct                    40
 1   Q    How were you familiar with Cushman and Wakefield?
 2   A    Cushman and Wakefield are an international brokerage
 3        appraisal firm.  They're all over the world.  They've got
 4        very big operations in London.  I have dealt with them many
 5        times.  They are probably the top three, four real estate
 6        brokerage firms in the world.
 7   Q    Of what significance was it to you to receive Cushman and
 8        Wakefield's appraisal of the River City property?
 9   A    Was very significant.
10   Q    Why?
11   A    Because they seem to -- they confirmed everything that I
12        was shown at the -- at the presentation, they confirmed in
13        their documents.
14   Q    What did you do with the Cushman and Wakefield report
15        when you received it?
16   A    I went through from cover-to-cover.
17   Q    How long did that take you?
18   A    I think a half a day.  Half a working day.
```

[14] The <u>operative agreement</u> between the Berger Parties, through Weinstein, and JFK BLVD LP, of which JFK LLC was then the sole general partner holding a 0.01% partnership interest, is dated December 19, 2006, and is entitled "Nominee Agreement." See trial Exhibit CW-176.

general partner JFK LLC, is that of an <u>investment</u>. The Nominee Agreement specifically names JFK BLVD LP, through its general partner JFK LLC, to act as the "agent" for the "Owner,"[15] as follows:

> THIS NOMINEE AGREEMENT (the "Nomination") made the 19th day of December, 2006, by and between JFK BLVD ACQUISITION PARTNERS, L.P., a Pennsylvania limited partnership ("Nominee"), and ELI WEINSTEIN and permitted assigns as defined hereinafter, ("Owner").
>
> PREAMBLE
>
> Nominee, as agent for Owner, is taking ownership of certain property located in the City of Philadelphia, Commonwealth of Pennsylvania, pursuant to the assignment of a certain Agreement of Sale dated May 12, 2006, as amended (the "Contract"), between R. & F PENN CENTER ASSOCIATES, L.P., (the "Contract Seller") and JFK BLVD ACQUISITION GP, LLC, a Delaware limited liability company and Nominee's general partner (the "Contract Buyer"), commonly known as: 2001 John F. Kennedy Boulevard, Philadelphia, Pennsylvania (Tract "A"); 2101 John F Kennedy Boulevard Philadelphia, Pennsylvania, (Tract "B"); 2201 John F. Kennedy Boulevard, Philadelphia, Pennsylvania (Tract "C"); 2301 John F. Kennedy Boulevard Philadelphia, Pennsylvania, (Tract "D"); 60 North 23rd Street Philadelphia, Pennsylvania, (Tract "E") (collectively the "Property").<sup>1</sup>

The Nominee Agreement provides that <u>only</u> upon Owner complying with its terms (which did not happen), the "…full legal and equitable ownership in the Nominee <u>and its general partner</u> shall be conveyed over to Owner…" (Emphasis supplied).[16] Therefore, Weinstein and *his* investors, the Berger Parties, were nothing more than "<u>investors</u>" in JFK BLVD LP and its general partner, JFK LLC, who defaulted on their investment obligations under the Nominee Agreement and forfeited their right to claim ownership of JFK BLVD LP and JFK LLC. This is also what the jury found when it rendered its verdict in favor of JFK BLVD LP, and Zeghibe and J. Chawla (the sole members and managers of JFK LLC), and against the Berger Parties in the

---

[15] The "Owner" is defined as "ELI WEINSTEIN and permitted assigns as defined hereinafter."

[16] See Section 3 of Exhibit CW-176.

Prior Berger Actions - and went on to award $900,000.00 in damages against Weinstein (and by extension the Berger Parties as his partners) in favor of JFK BLVD LP.[17]

Cushman also recognizes, but chooses to ignore the significance of, the nature of the Nominee Agreement when it alleges in the Third-Party Complaint that:[18]

> 22. The representations made to Berger by Weinstein, Leifer, and Kish regarding the River City deal were riddled with falsehoods and material omissions. Weinstein had not secured any acquisition financing, much less financing in the amount of $50 million. Neither Weinstein, Leifer, nor Kish ever disclosed that the purported "sale" of River City to the Berger-Weinstein partnership was the product of a "flip," in which the sellers were charging more than double the price that they were paying for the property on the same day. ==The group also did not disclose the key terms of the Nominee Agreement, under which Weinstein and Berger would not actually own River City after the sale closed, and would never own it unless additional financial obligations were satisfied.==

The singular claim made in this matter by Cushman against JFK LLC is for "Contractual Indemnification,"[19] relying exclusively on the boilerplate indemnification provision reproduced in full at page 4 hereof. Then, despite the avalanche of evidence available to it from the Prior Berger Actions, including testimony from Berger himself regarding the Cushman appraisal, Cushman simply, and without any reference or support at all, alleges that:[20]

---

[17] See Exhibit CW-336.

[18] See Cushman Third-Party Complaint, Docket No. 51, at its paragraph 22 (yellow highlighted emphasis supplied).

[19] See Cushman Third-Party Complaint, Docket No. 51, at its Count II.

[20] See Cushman Third-Party Complaint, Docket No. 51 at its paragraph 34. The reference to "Chawla" is intended to be Ravinder Chawla, not J. Chawla.

8

> 34. In December 2006, at the direction of Chawla, JFK GP provided a copy of the appraisal to several unauthorized users, including Weinstein, Leifer, and Kish. Through Kish, the group subsequently provided a copy to Berger, who was also not authorized to use or rely on the appraisal, but who now claims to have so relied to his and the other plaintiffs' detriment.

However, since Weinstein and the Berger Parties, directly and/or through any intermediaries they may have engaged such as Leifer and/or Kish, were nothing more than investors in JFK BLVD LP and its general partner JFK LLC, so any release of the Cushman appraisal to them or their reliance thereon is not nor could it have been a violation of the Cushman Engagement Letter in any event. As a result, Cushman's claim for indemnification against JFK LLC must fail.

### III. MONETARY DAMAGES

The only claim by Cushman against JFK LLC is for indemnification. The indemnification claim is not ripe as Cushman has not yet been found to be liable to Plaintiffs. Substantively, JFK LLC concurs with Cushman that it is not, as a matter of fact and law, liable to Plaintiffs in this matter. However, if Cushman is somehow found by a jury to be liable to Plaintiffs, given the indisputable facts of this case, JFK LLC cannot reasonably be required to provide indemnify that liability.

### IV. WITNESS LIST

All potential witnesses JFK LLC may call have been listed by Cushman in its Amended Pre-Trial Memorandum (see Witness List at Docket No. 263 at pp. 29 – 31), which is incorporated herein and adopted hereby. Amongst the witnesses set forth in the Witness List that JFK LLC anticipates calling in its case in chief are:

Ravinder Chawla, Richard Zeghibe, Charles Naselsky, Anthony Argiropoulos, Berish Berger, and Eli Weinstein

JFK LLC reserves the right to call any witness listed by any other party and to call additional witnesses not listed in rebuttal.

## V.  EXHIBIT LIST

JFK LLC hereby adopts and incorporates the Exhibit List set forth by Cushman in its Amended Pre-Trial Memorandum (see Exhibit List at Docket No. 263 at p. 31 and Appendix A). JFK LLC reserves the right to supplement its exhibit list, to use any exhibit listed another party and to use additional exhibits not listed for rebuttal if necessary.

## VI.  ESTIMATED LENGTH OF TRIAL

JFK LLC will require one day to present its case in chief in defense of the third-party claim against it by Cushman.

## VII.  LEGAL ISSUES, STIPULATIONS, AMENDMENTS TO PLEADINGS AND OTHER MATTERS

### A.  Lack of Subject Matter Jurisdiction over Cushman's Indemnification Claim

The court does not have subject matter jurisdiction over Cushman's contractual indemnification claim against JFK LLC, as it is neither ripe, nor sustainable if it were ripe, as Cushman is attempting to obtain indemnification for its own alleged fraudulent acts – a protection that neither contractual nor common law indemnification permits.[21] See, e.g., *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977); and *Marlee Elecs. Corp. v. Eclectic Technologies Corp.,* 1993 U.S. Dist. LEXIS 1123.

---

[21] The Berger Parties allegations against Cushman as set forth in its Amended Complaint against the Original Defendants all sound in fraud as Count I, the only count naming Cushman, is entitled "Fraudulent Misrepresentation against C&W."

10

### B. Cushman's Claim for Contractual Indemnification is Factually Deficient and <u>Unprovable</u>

The indisputable facts applicable to Cushman's contractual indemnification claim against JFK LLC, summarized above and as derived from the evidence in this matter, including the Cushman Engagement Letter (see trial exhibit CW-22 through CW-25) as well as the other documents recited hereinabove, require the court to dismiss the Third-Party Action as to JFK LLC. By its very terms, the Cushman Engagement Letter permitted JFK LLC to share the Cushman Appraisal with its investors, which included Weinstein and the Berger Parties.

Moreover, Cushman's is seeking to be indemnified for its own fraudulent conduct, for which indemnification is not available either contractually or at common law. See, e.g., *Harmelin v. Man Fin., Inc*., 2007 U.S. Dist. LEXIS 73842 (EDPa), holding that:

> Pennsylvania law is clear that there is no common law right to indemnification if the party seeking indemnification is even partially at fault. "*Under Pennsylvania law, it is well-established that indemnification for a party's own negligence will not be inferred and <u>must be stated expressly, clearly, and unequivocally in an indemnity clause</u>*." *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir. 2001). "*The law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, <u>they must do so in clear and equivalent language</u>*." *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 7, 588 A.2d 1 (1990). "The common law right of indemnity is not a fault-sharing mechanism between one who was predominantly responsible for any injury and one whose negligence was relatively minor. Rather, it is a fault-shifting mechanism, operative only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the action that occasioned the loss. *If, however, the party seeking indemnification is actively negligent or is guilty of an independent act of negligence that also is the cause of the underlying injuries, indemnity is not available as a matter of law*." *Foulke v. Dugan*, 212 F.R.D. 265, 270 (E.D. Pa. 2002) (citing *Consolidated Rail v. Youngstown Steel Door Co.*, 695 F. Supp. 1577, 1581 (E.D. Pa. 1988)).

*Id.* at *14-16. (Emphasis supplied).

As applied to Cushman's Third-Party Action, the contractual indemnification provision relied upon by Cushman states <u>only</u> that:

11

> 5) In the event the Client provides a copy of this appraisal to, or permits reliance thereon by, any person or entity not authorized by C&W in writing to use or rely thereon, Client hereby agrees to indemnify and hold C&W, its affiliates and the respective shareholders, directors, officers and employees, harmless from and against all damages, expenses, claims and costs, including attorney's fees, incurred in investigating and defending any claim arising from or in any way connected to the use of, or reliance upon, the appraisal by any such unauthorized person or entity.

Nothing contained in this provision purports to include "*expressly, clearly, and unequivocally*" indemnification for negligence claims made against Cushman generally, let alone the intentional tort of fraud for which Cushman is now seeking indemnification from JFK LLC. [22]

### VIII.   EVIDENTIARY OBJECTIONS

JFK LLC has no objection to the exhibits designated by the other parties hereto other than reserving its right to object based on relevance during the trial.

### IX.   ADMISSIBILITY OF LAY OPINION TESTIMONY

JFK LLC does not believe there will be any lay opinion testimony offered by any party to this case but reserves its right to object if a party seeks to present such testimony.

Dated:   November 27, 2019                Respectfully Submitted,

  /s/Andrew Teitelman_____
Andrew Teitelman
LAW OFFICES OF ANDREW TEITELMAN P.C.
380 Red Lion Road, Suite 103
Huntingdon Valley, PA  19006
Ph:    (267) 255-6864  Fax:  (215) 434-7491
Email: ateitelman@teitelaw.com.com
*Attorneys for Third-Party Defendant JFK BLVD Acquisition GP, LLC.*

---

[22] See also *Invensys Inc. v. Am. Mfg. Corp.*, 2005 U.S. Dist. LEXIS 3961 (EDPa), where this court dismissed a contractual indemnification claim under circumstances similar to the present matter, holding that: ""the mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification." (Cite omitted)…*Accordingly, the Court finds that Plaintiff's claim for breach of contract arising from Defendant's failure to indemnify Plaintiff in the asbestos lawsuits is premature*." (Emphasis supplied).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Pretrial Memorandum of JFK BLVD ACQUISITION GP, LLC., was served on this 27th day of November, 2019, on the following persons *via* email and filing with the Court using the CM/ECF system, as set forth below:

Morrison Cohen LLP
Attn: Brett D. Dockwell and Danielle C. Lesser
909 Third Avenue
New York, NY 10022
bdockwell@morrisoncohen.com
dlesser@morrisoncohen.com

Brown McGarry Nimeroff LLC
Attn: Mary Kay Brown, Jami Nimeroff, and Raymond McGarry
Two Commerce Square,
2001 Market Street
Philadelphia, PA 19103
mkbrown@bsnlawyers.com
jnimeroff@bsnlawyers.com
rmcgarry@bsnlawyers.com

*Attorneys for Plaintiffs*

Klehr Harrison Harvey Branzburg LLP
Attn: William A. Harvey, Matthew J. Borger, and Paige M. Willan
1835 Market Street, 14th Street
Philadelphia, PA 19103
wharvey@klehr.com
mborger@klehr.com
pwillan@@klehr.com

*Attorneys for Defendant Cozen O'Connor, P.C.*

Harkins Cunningham LLP
Attn: John G. Harkins, Eleanor Morris Illoway, and Dawn M. Sigyarto
4000 Two Commerce Street
2001 Market Street
Philadelphia, PA 19103
jharkins@harkinscunningham.com
emi@harkinscunningham.com
dsigyarto@harkinscunningham.com

*Attorneys for Defendant Blank Rome LLP*

DLA PIPER LLP (US)
Attn: Jayne A. Risk, Brian M. Robinson and Justin E. Kerner
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Phone: (215) 656-3300
Fax: (215) 656-3301
jayne.risk@dlapiper.com
brian.robinson@dlapiper.com
justin.kerner@dlapiper.com

*Attorneys for Defendant/Third-Party Plaintiff Cushman & Wakefield of Pennsylvania, Inc.*

 

       /s/ Andrew Teitelman
       Andrew Teitelman