**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KILBRIDE LIMITED IN LIQUIDATION, BUSYSTORE LIMITED IN LIQUIDATION, and BERGFELD CO. LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., BLANK ROME LLP and COZEN O'CONNOR, P.C.,<br><br>Defendants. | Case No. **13-CV-5195 (JD)** |
| CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>JFK BLVD. ACQUISITION GP LLC, CHAIM ZEV LEIFER, and HESKEL KISH,<br><br>Third-Party Defendants. | |

**AGREED STATEMENT TO BE READ TO JURY**

Plaintiffs have sued Defendant Cushman & Wakefield of Pennsylvania, Inc ("C&W") for fraudulent misrepresentation.  Plaintiffs are two companies organized under the laws of the United Kingdom, Bergfeld Co., Limited and Busystore Limited in Liquidation.  Their corporate representative is Mr. Berish Berger; who as a director and part owner, acted for them throughout the relevant events.  Defendant C&W is a global real estate services firm.

At the center of the case is a piece of Philadelphia real estate known as River City.  In early 2006, two men, Ravinder Chawla and Richard Zeghibe, developed a plan to purchase the River City site for $32.5 million from an entity called R&F Penn.  A special purpose entity, JFK BLVD Acquisition GP, LLC ("JFK"), was created to take title to the property.  An architect, James Rappoport, designed a development for the site and River City was ultimately marketed as a 12-million-square-foot mixed-use development, featuring multiple skyscrapers.

By the fall of 2006, Zeghibe and Chawla contracted to sell their interest in the site to Eli Weinstein for a base price of $62.5 million.  Thereafter, Mr. Berger was solicited to participate in the transaction.  Weinstein arranged for a meeting with Berger in London, during which Weinstein discussed the River City Project and Berger's potential participation.  On December 6, 2006, Berger attended a meeting at architect Rappoport's office, attended by Weinstein, Chawla, Rappoport and others where Rappoport gave a detailed presentation about the project.

On December 8, 2006, Berger was provided with an appraisal report prepared by C&W valuing the River City property at $77 million.  On December 18, 2006, Berger arranged for $12 million to be sent for the River City deal.  Two days later, he arranged for one of his real estate companies to send $9.5 million to Weinstein for a separate Philadelphia property, 2040 Market St. Neither of those transfers are at issue against C&W today.  On January 8, 2007, at Weinstein's request, Berger caused $10 million of Plaintiff Busystore's funds to be transferred to Weinstein's

1

entity, Pine Projects.  On January 18, 2007, at Weinstein's request, Mr. Berger caused $5 million of Plaintiff Bergfeld's funds to be wired to Pine Projects.  It is these three transfers (totaling $15 million) that are at issue against C&W.  Plaintiffs never received an ownership interest in River City and the funds were never recovered.

Weinstein and Chawla have, among others, already been found liable to the Plaintiffs for fraud and conspiracy to defraud respectively.  In this case, Plaintiffs claim that the C&W Appraisal contained fraudulent misrepresentations by falsely stating that there were no building height restrictions on the property and also materially departing from Uniform Standards of Professional Appraisal Practice (known as USPAP), all which led to an inflated value of the property.  Plaintiffs claim that in reliance on the appraisal, Mr. Berger caused his affiliated entities to invest millions of dollars and received nothing in return, investments that would never have been made but for the C&W Appraisal.

To succeed on their fraud claim against C&W, Plaintiffs must prove that C&W made (1) a representation; (2) which is material to the transaction at hand; (3) falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

C&W maintains that its appraisal was not a fraudulent misrepresentation and has nothing to do with the case.  C&W maintains that Plaintiffs' losses are attributable solely to Weinstein, who stole all of their money, [as part of a larger real estate Ponzi fraud scheme].[1]  C&W maintains

---

[1]     The Parties disagree as to this characterization.  Whether evidence of Weinstein's other crimes are admissible is currently the subject of a pending Motion *in Limine*.  Moreover, Plaintiffs contend the language is inflammatory.  C&W contends the language should be included if the Court denies the Motion *in Limine* on this point.

that it prepared the Appraisal solely for JFK, not for Plaintiffs, and did not even know of Weinstein, Berger, or of Plaintiffs' existence. C&W maintains that its Appraisal was prepared for internal review by JFK, the purchaser from R&F Penn and not for subsequent purchasers *from* JFK including Plaintiffs.  C&W maintains that Berger formed a partnership with Weinstein to purchase the River City Property from JFK.  Although Berger now maintains that he thought he was an investor, C&W maintains Berger was lied to and defrauded by Weinstein and was not entitled to consider or rely on the Appraisal.  In the end, C&W asserts that nothing about the Appraisal could have caused Plaintiffs' damages.  C&W contends that the funds transferred were stolen by Weinstein, and a jury in prior litigation has already found him liable to Plaintiffs for fraud.  But for Weinstein, C&W maintains that Plaintiffs would have their Property or their funds.

C&W's engagement letter between with JFK contains a provision stating that JFK will indemnify any damages from sharing the Appraisal with anyone who was not entitled to receive it.  To prevail on a claim for indemnification under contract, C&W must demonstrate that a contract existed between itself and JFK, that JFK breached the contract, and that C&W sustained damages as a result of the breach.  If C&W is found liable, it maintains then JFK is must cover any damages against it.

JFK denies liability on the claim for indemnification.

Dated:  January 31, 2020

/s/ Mary Kay Brown
Mary Kay Brown, Esquire
BROWN MCGARRY NIMEROFF LLC
*Attorneys for Plaintiffs, Busystore Limited in Liquidation and Bergfeld Co. Limited*

Dated:  January 31, 2020

/s/ Nathan Heller
Nathan Heller, Esquire
DLA PIPER LLP
*Attorneys for Defendant, Cushman & Wakefield of Pennsylvania, Inc.*

Dated:  January 31, 2020

/s/ Andrew Teitelman
Andrew Teitelman, Esquire
LAW OFFICES OF ANDREW TEITELMAN P.C.
*Attorneys for Third-Party Defendant JFK BLVD Acquisition GP, LLC*